# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MAZ PARTNERS LP,

                    **Plaintiff,**

v.                                        **Case No:   6:19-cv-619-Orl-40LRH**

FIRST CHOICE HEALTHCARE
SOLUTIONS, INC. and CHRISTIAN
ROMANDETTI, SR.,

                    **Defendants.**

---

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF MAZ PARTNERS LP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL, AND ACCOMPANYING MEMORANDUM OF LAW   (Doc. No. 29)** |
| **FILED:** | **May 28, 2019** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part**.

## I.   BACKGROUND.

On March 29, 2019, Plaintiff MAZ Partners LP filed a purported class action complaint against Defendants First Choice Healthcare Solutions, Inc. and Christian Romandetti, Sr., alleging violations of the federal securities laws.  Doc. No. 1.  The proposed "class" consists of:

all persons other than Defendants who purchased or otherwise acquired First Choice common stock from April 1, 2014 through November 14, 2018, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder, against Defendants.

*Id.* ¶ 1.   Plaintiff alleges that Defendant Romandetti, the former CEO and Chairman of the Board of Trustees of First Choice Healthcare, engaged in a "classic pump and dump scheme" that artificially inflated the price of First Choice's stock. *Id.* ¶¶ 3, 19, 78, 94.   Plaintiff also alleges that Defendants issued misleading statements due to material omissions regarding the trading of First Choice's stock. *Id.* ¶ 94.   In November 2018, the Department of Justice filed a criminal indictment against Romandetti and co-conspirators based on the stock manipulation scheme. *Id.* ¶ 56.   The Securities and Exchange Commission also filed an SEC complaint against Romandetti and his co-conspirators. *Id.* ¶ 61.   Thereafter, First Choice Healthcare common stock declined dramatically. *Id.* ¶ 68.

Both Defendants have moved to dismiss the complaint. Doc. Nos. 13, 28.   The motions will not become ripe until June 28, 2019.   Doc. No. 33.   Accordingly, discovery in this matter is stayed pending the Court's ruling on the motions to dismiss.   *See* 15 U.S.C. § 78u-4(b)(3)(B).

In the instant motion, Plaintiff seeks to be appointed the lead plaintiff in this case pursuant to the Private Securities Litigation Reform Act ("PSLRA"). Doc. No. 29.   Plaintiff also asks that the Court approve the law firm of Wolf Popper, LLP, as lead counsel and the law firm of Rice Pugatch Robinson Storfer & Cohen PLLC as liaison counsel on behalf of the class. *Id.* at 3. Defendants have not filed responses to the motion, and the time for doing so has passed.   The matter was referred to the undersigned, and it is ripe for review.

## II.     APPLICABLE LAW.

The PSLRA sets forth the procedures required in class actions alleging violations of the federal securities laws.  *See* 15 U.S.C. § 78u-4.    As relevant here, no later than twenty days after the complaint is filed, the plaintiff must publish notice of the pendency of the action to the purported plaintiff class.  *Id.* § 78u-4(a)(3)(A).  No later than sixty days after publication, any member of the purported class may move to serve as lead plaintiff of the purported class.  *Id.* § 78u-4(a)(3)(A)(i)(II).  No later than ninety days after the published notice of the action, "the court shall consider any motion made by a purported class member in response to the notice . . . and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members [i.e., the 'most adequate plaintiff'] . . . ."  *Id.* § 78u-4(a)(3)(B)(i).  The Court must presume that the most adequate plaintiff is a person that: (1) either filed the complaint or filed a motion in response to the notice; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Federal Rule of Civil Procedure 23.  *Id.* § 78u-4(a)(3)(B)(iii).  "With respect to Rule 23 requirements, a proposed Lead Plaintiff must establish that its claims are typical of the class, and that it would be an adequate representative."  *Molema v. Bio-One Corp.*, No. 6:05-cv-1859-Orl-22DAB, 2006 WL 1733859, at *2 (M.D. Fla. June 20, 2006).

Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).  "The decision to approve counsel selected by the Lead Plaintiff is a matter within the Court's discretion and is by no means automatic."  *Molema*, 2006 WL 1733859, at *2.  "Approval of lead counsel necessarily requires an independent evaluation of, among other considerations, the effectiveness of proposed

class counsel to ensure the protection of the class." *Vincelli v. Nat'l Home Health Care Corp.*, 112 F. Supp. 2d 1309, 1315 (M.D. Fla. 2000).

## III.    ANALYSIS.

### A.    Appointment of Lead Plaintiff.

On March 29, 2019, Plaintiff filed the putative class action complaint. Doc. No. 1. The same day, Plaintiff published a press release on PR Newswire advising members of the purported class that the complaint had been filed, and otherwise providing the notice required by 15 U.S.C. § 78u-4. *See* Doc. No. 29-2, at 2–3. On May 28, 2019, Plaintiff filed a timely motion to serve as a lead plaintiff in this case. Doc. No. 29. No other motions for appointment of lead plaintiff have been filed with the Court, and the deadline for such motions expired on May 28, 2019. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Accordingly, I recommend that the Court find that Plaintiff satisfies the first factor regarding the "most adequate plaintiff" because it filed both the complaint and a motion for appointment as lead plaintiff. *See id.* § 78u-4(a)(3)(B)(iii)(I)(aa).

The second inquiry is whether Plaintiff has the largest financial interest in the relief sought by the class. *See id.* § 78u-4(a)(3)(B)(iii)(I)(bb).   "[T]he PSLRA does not provide a procedure for determining which plaintiff has the largest financial interest in the litigation," but the following factors have been considered in this determination: "(1) the number of shares purchased during the class period; (2) the net number of shares purchased during the class period (i.e., shares purchased during and retained at the end of the class period); (3) the total net funds expended during the class period; and (4) the approximate loss suffered during the class period." *Cole v. Health Mgmt. Assocs., Inc.*, No. 2:07-cv-484-FtM-34SPC, 2008 WL 11334897, at *4 (M.D. Fla. May 14, 2008) (citations and quotations omitted).

Plaintiff has provided information relating to each of these factors. In its motion and

supporting documentation, Plaintiff states that during the class period it purchased 223,959 shares of First Choice common stock at a total price of $249,152.00. Plaintiff sold 1,900 shares during the class period and received proceeds for these sales totaling $2,582.00. This resulted in a total net purchase of 222,059 shares and total net funds expended during the class period of $246,570.00 ($249,152.00 minus $2,582.00). Regarding the approximate loss suffered during the class period, Plaintiff contends that it held onto these 222,059 shares throughout the class period, and at the close of the trading day on November 14, 2018, after the DOJ released its criminal indictment, the stock price dropped to $0.66 per share. Doc. No. 29, at 8, *see also* Doc. No. 29-3 (list of purchases and sales); Doc. No. 29-4 (list of purchases and sales documenting net gains and losses).

Pursuant to the PSLRA, where the plaintiff seeks to establish damages by reference to the market price of a security (which the Plaintiff appears to be seeking in the present case), the award of damages cannot exceed the difference between the purchase price paid and the mean or average trading price during the 90-day period beginning on the date corrective information was revealed to the market. *See* 15 U.S.C. § 78u-4(e)(1). Plaintiff contends that the 90-day period began to run on November 14, 2018, the date the criminal indictment became public, and ended on February 12, 2019. The average trading price during this 90-day period for First Choice common stock was $0.39 per share. Applying this $0.39/share average price to the 222,059 shares in Plaintiff's possession results in a new stock value of $86,603.01 and a net loss to Plaintiff of approximately $159,966.99 (the net purchase price paid of $246,570.00 less the average trading price of $86,603.01).

Plaintiff asserts, therefore, that it possesses the largest financial interest in the relief sought by the purported class. Doc. No. 29, at 8. Based on these representations, and in the absence of any objection or any competing motions for appointment as lead plaintiff, I recommend that the

Court find that Plaintiff satisfies the second criterion of the PSLRA's "most adequate plaintiff" analysis.   *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

The third consideration is whether Plaintiff otherwise satisfies the requirements of Federal Rule of Civil Procedure 23.   *See id.* § 78u-4(a)(3)(B)(iii)(I)(cc).   "[T]he Rule 23 analysis focuses on whether the presumptive lead plaintiff's claims and defenses are typical of the claims of the class and whether the presumptive lead plaintiff will fairly and adequately protect the interests of the class."   *Cole*, 2008 WL 11334897, at *6.   The typicality requirement is satisfied when the named plaintiff's claims "arise from the same event or pattern or practice and are based on the same legal theory as the claims of the class."   *Id.*   In assessing adequacy, the court considers "(1) whether any substantial conflicts of interest exist between the [presumptive lead plaintiff] and the class; and (2) whether the [presumptive lead plaintiff] will adequately prosecute the action."   *Id.* (quoting *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)).

Here, Plaintiff states that its claims are typical of those of the purported class because it alleges that Defendants violated federal securities law by failing to disclose material facts regarding First Choice; Plaintiff purchased First Choice common stock at artificially inflated prices as a result of those omissions; and Plaintiff was damaged upon disclosure of those omissions.   Doc. No. 29, at 9.   Thus, Plaintiff asserts that its claims are based on the same legal theory, and arise from the same events and course of conduct, as the class.   As to adequacy, Plaintiff asserts that its claims are not in conflict with the class, it is not subject to any unique defenses, and its monetary losses will ensure its "vigorous advocacy."   *Id.* at 9–10.   In the absence of objection, I recommend that the Court accept Plaintiff's representations and find that it has satisfied the typicality and adequacy requirements of Rule 23.

Based on the foregoing, I respectfully recommend that the Court appoint Plaintiff MAZ

Partners, LP as lead plaintiff in this case pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(i).

      B.    <u>Appointment of Lead Counsel</u>.

Plaintiff asks the Court to appoint the law firm of Wolf Popper, LLP as lead counsel, and the law firm of Rice Pugatch Robinson Storfer & Cohen PLLC as liaison counsel, on behalf of the class. Doc. No. 29, at 3.[1] As to Wolf Popper LLP, Plaintiff asserts that the law firm "is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as well as other class actions," citing two federal and one state case in support. *Id*. at 11. Plaintiff has also filed a document titled, "Biographical Sketch of Wolf Popper LLP," in support. Doc. No. 29-5. The document provides the firm's background and experience, and a detailed discussion of the cases in which the firm has represented plaintiffs in class action securities litigation throughout the United States. *See id*. The document also includes a detailed recitation of the experience of Attorney Waldman from the firm. *See id*. at 10–12. Based on Plaintiff's representations and attached documentation, and in the absence of objection, I recommend that the Court approve Wolf Popper, LLP as the lead counsel in this case. *See, e.g.*, *Molema*, 2006 WL 1733859, at *3 (adopting recommendation to appoint law firm as lead counsel where "[i]t appear[ed] from the resume of the firm that its attorneys are well-versed in the vagaries of securities class action litigation").

As to the law firm of Rice Pugatch Robinson Storfer & Cohen PLLC, Plaintiff seeks to have the firm appointed as "liaison counsel." Doc. No. 29, at 11–12.[2] However, Plaintiff provides no

---

[1] Chet B. Waldman, Esq., of Wolf Popper, LLP is appearing on behalf of Plaintiff *pro hac vice* in this matter, with Ronald J. Cohen, Esq., of Rice Pugatch Robinson Storfer & Cohen PLLC serving as local counsel. *See* Doc. No. 27. Joshua W. Ruthizer, Esq., of Wolf Popper, LLP, has also appeared on behalf of Plaintiff. *See* Doc. No. 1.

[2] Plaintiff asserts that "Rice Pugatch is a Florida based firm with experience in sophisticated business and financial litigation" and that "Rice Pugatch practices in the areas of creditor rights, bankruptcy, insolvency, business reorganizations, commercial litigation, business and real estate transactions, and labor, employment and employee benefits, and has received numerous accolades and peer recognition. . . ." Doc.

authority for appointing "liaison counsel" under the PSLRA. *See id.* Moreover, "while some courts have approved the selection of multiple law firms, others have refused to do so, noting the danger of lawyers seizing control of the litigation, contrary to Congress's intent, the inherent inefficiencies of too many cooks in the kitchen, and the potential for undue pressure on the lead plaintiff." *Goldberger v. Faro Techs., Inc.*, No. 6:05-cv-1810-Orl-22DAB, 2006 WL 8448587, at *3 (M.D. Fla. Mar. 13, 2006), *report and recommendation adopted sub nom. In re Faro Techs. Sec. Litig.*, 2006 WL 1119201 (M.D. Fla. Apr. 26, 2006); *see also In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 224 (D.N.J. 1999) (denying request to appoint liaison counsel). Although this Court requires that attorneys specially appearing in a matter secure local counsel, *see* Local Rule 2.02, that does not mandate an appointment of "liaison counsel" under the PSLRA. *See, e.g.*, *In re Nice Sys. Sec. Litig.*, 188 F.R.D. at 224 n.13. Accordingly, absent compelling reasons from Plaintiff why it requires "liaison counsel" in this case, I recommend that the Court deny Plaintiff's request to appoint the law firm of Rice Pugatch Robinson Storfer & Cohen PLLC as "liaison counsel." I further recommend that Attorney Ronald J. Cohen of the law firm Rice Pugatch Robinson Storfer & Cohen PLLC remain appointed as local counsel for this case.

## IV.   RECOMMENDATION.

Based on the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1.   **GRANT in part** and **DENY in part** Plaintiff MAZ Partners LP's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel, and Accompanying Memorandum of Law (Doc. No. 29);

---

No. 29, at 11–12. Besides these assertions, the documentation submitted pertinent to this law firm are "About Us" and "Practice Areas" print outs, and a biography for Attorney Cohen, from what appears to be the firm's website. Doc. No. 29-6.

2.   **APPOINT** Plaintiff MAZ Partners LP as lead plaintiff in this case pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(i);

3.   **APPOINT** the law firm of Wolf Popper, LP as lead counsel representing the purported class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v);

4.   **DENY** Plaintiff's request to appoint the law firm of Rice Pugatch Robinson Storfer & Cohen PLLC as "liaison counsel" in this case; and

5.   **DENY** the motion in all other respects.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on June 12, 2019.

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy