UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MAZ PARTNERS LP, Individually and on
Behalf of All Others Similarly Situated,

      Plaintiff,

v.                                                                      Case No. 6:19-cv-00619-PGB-LRH

FIRST CHOICE HEALTHCARE
SOLUTIONS, INC. and CHRISTIAN
ROMANDETTI, SR.,

                                                  **DISPOSITIVE MOTION**

      Defendants.

_____/

**DEFENDANT FIRST CHOICE HEALTHCARE SOLUTIONS, INC.'S
OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS**

Pursuant to 28 U.S.C. § 636, Defendant First Choice Healthcare Solutions, Inc. ("First Choice" or the "Company"), by and through its undersigned counsel, hereby files its Objections to the Magistrate Judge's Report and Recommendation of October 16, 2019 [ECF No. 37] ("Report"), and respectfully requests that the Court dismiss the Complaint [ECF No. 1] filed by MAZ Partners LP ("Plaintiff").

**I.      INTRODUCTION**

First Choice agrees with the Report's assessment that the majority of the Complaint's alleged misrepresentations are not actionable under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); however, it objects to the Report's overall recommendation that this Court deny First Choice's Motion to Dismiss [ECF No. 13]. Given the Report's findings, the Court should, at a minimum, grant the Motion to Dismiss in part, and require Plaintiff to

50530729;4

re-plead its surviving claims and strike the non-surviving allegations from the Complaint. A wholesale adoption of the Report is thus inappropriate.

First Choice also objects to the Report's finding that Plaintiff's claims based on certain alleged misstatements — those relating to the certifications mandated by the Sarbanes-Oxley Act of 2002 ("SOX"), 15 U.S.C. § 7241, and to the risk disclosures in First Choice's filings with the U.S. Securities and Exchange Commission ("SEC") — can survive dismissal. Statements made in SOX certifications are not actionable unless the alleged fraud is related to the financial information being certified — which is not the case here. Moreover, First Choice's risk disclosures about its market volatility were factually correct and do not amount to actionable misstatements. The risk disclosures also cannot support Plaintiff's 10(b) claim as they are protected by the bespeaks caution doctrine.

In addition, the Report should not be adopted, and the Complaint cannot survive dismissal, because Plaintiff did not adequately allege the necessary element of reliance. Report at 34-36. Plaintiff cannot rely on the rebuttable presumption of reliance established by *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the presumption only applies in omissions cases — not cases alleging materially misleading statements, as pled here. Neither can Plaintiff rely on the reliance presumption available under the "fraud on the market" theory — despite not pleading it — because First Choice, a penny stock, did not trade on an efficient market. Plaintiff failed to allege otherwise. Without the benefit of either presumption, the Complaint must plead direct reliance. Yet, the Complaint's bare-bones allegations of reliance are plainly insufficient under any pleading standard.

50530729;4

Finally, the Report's finding that First Choice can be imputed with the scienter attributed to co-defendant Christian Romandetti, Sr. is erroneous. Even if the allegations as pled are true, Romandetti was acting in his own self-interest and there are no allegations that First Choice knew of, or even benefited from, any of his actions.

## II.    THE COMPLAINT'S ALLEGATIONS AND THE REPORT'S FINDINGS

### A.    Plaintiff's Allegations

First Choice is a healthcare services company whose common stock trades on the Over the Counter ("OTC") market. Compl. at ¶ 18. Co-Defendant Romandetti served as First Choice's Chairman of the Board of Directors until December 4, 2018, and as First Choice's President and CEO until November 16, 2018. *Id*. at ¶ 19.

Plaintiff claims Romandetti allegedly engaged Elite Stock Research ("Elite"), who, along with other non-parties to this litigation, purportedly artificially promoted the market price and trading volume of First Choice shares. *Id*. at ¶ 4. Elite allegedly implemented a promotional campaign and engaged in manipulative trades designed to artificially increase the trading volume and market price of First Choice common stock, while co-conspirators allegedly simultaneously dumped their First Choice stock at the inflated price. *Id.* at ¶ 5. Notably, Plaintiff does not allege that this alleged market manipulation benefited the Company in any way. The Complaint asserts only that Romandetti obtained certain "kickbacks" for his role in the scheme. *Id.* at ¶ 6.[1]

---

[1]    On November 14, 2018, the Department of Justice ("DOJ") filed a criminal indictment against Romandetti and alleged co-conspirators and issued a press release the following day. Compl. at ¶ 56. On November 15, 2018, the SEC filed a lawsuit against Romandetti and alleged co-conspirators and issued a press release the same day. *Id.* at ¶ 61. The Company itself was not named in either the DOJ or SEC actions. On November 16, 2018, the Company

3

Plaintiff filed its putative class action Complaint on March 29, 2019, claiming the Company and Romandetti violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder, by making materially misleading statements in First Choice's public filings. *Id.* at ¶¶ 97, 98. The Complaint's various allegations of misstatements can be grouped into the following categories:

(i) alleged false or misleading Form 10-Ks that characterized Romandetti as a key executive (*see id.* at ¶¶ 23, 24, 28, 29, 33, 34, 38, 39, 43, 44);

(ii) alleged false statements about Elite, without mention that Elite was a boiler room operation hired to engage in the alleged market manipulation (*see id.* at ¶ 27);

(iii) alleged false statements about the Company's compliance program and Code of Conduct and Ethics, as well as its Disclosure Policy (*see id.* at ¶¶ 45-55);

(iv) alleged false or misleading SOX certifications, signed by Romandetti (*see id.* at ¶¶ 7, 9, 21, 25, 30, 35, 40, 74, 75, 88); and

(v) alleged false or misleading Form 10-Ks risk disclosures that warned of potential sources of volatility and fluctuation of First Choice stock without mention of the alleged stock manipulation scheme. (*see id.* at ¶¶ 22, 26, 31, 32, 36, 37, 41, 42).

---

filed a Form 8-K with the SEC, disclosing that Romandetti was placed "on indefinite administrative leave" by the Company's Board. *Id*. at ¶ 69. On December 6, 2018, two days after Romandetti's Board service ended, the Company filed a Form 8-K with the SEC, disclosing his resignation from the Company's Board. *Id.* at ¶ 70. On January 2, 2019, the Company filed a Form 8-K with the SEC disclosing that Mr. Romandetti's employment with the Company was terminated as of December 28, 2018.

50530729;4

**B.       Motion to Dismiss and The Magistrate's Report**

First Choice filed its Motion to Dismiss on April 30, 2019.  First Choice argued *inter alia* that (a) none of Complaint's alleged misstatements were actionable and were not plead with sufficient specificity as required under the PSLRA (Motion to Dismiss at 9-14, 17); (b) the statements about First Choice stock's volatility were forward looking statements protected by the bespeaks caution doctrine (*id.* at 14-17); and (c) Plaintiff's allegations of reliance on the misstatements were deficient and Plaintiff could not rely on the fraud on the market theory of reliance because First Choice was not traded on an efficient market (*id.* 19-22).  First Choice also argued that the even if the misstatements were actionable, First Choice could not be imputed with Romandetti's scienter as to the fraudulent misstatements.  *Id*. at 23-24.

The Magistrate issued her Report on October 16, 2019.  The Report correctly determined that the majority of the Complaint's alleged misstatements were not actionable. Indeed, the Court held that statements about Romandetti as a key employee, the retention of Elite, and compliance with First Choice's code of conduct, disclosure policy, and compliance policy were not actionable as a matter of law.  *See* Report 19-20, 26-29.  The Report found that only the Complaint's claims based on alleged misstatements in the SOX certifications and risk statements about First Choice's stock volatility could form an actionable basis for a securities fraud claim.  *See* Report 19-20, 26-29.  Illogically however, the Report recommended that the Motion to Dismiss be denied in full — without suitably addressing its other findings that allegations in significant portions of the Complaint could not support a securities fraud claim. Report at 39.

50530729;4

With respect to the purportedly sufficiently alleged misstatements, the Report found that SOX certifications can support a 10(b) claim even in instances where the fraud does not affect the Company's financial reporting. *Id.* at 22-23. The Report also found that risk statements about the stock's volatility were misleading and not otherwise protected by the bespeaks caution doctrine because the risk disclosures did not specifically forewarn about potential "market manipulation schemes." *Id.* at 25-26.

With regard to reliance, the Report recommended that the Court "defer" its ruling on the issue claiming it is potentially fact-specific. *See id.* at 35. The Report noted that because the Complaint alleged that First Choice failed to disclose certain information, Plaintiff "may be able" to invoke the rebuttable presumption of reliance. *Id.* at 36. The Report also deferred ruling on the unavailability of the fraud-on-the-market theory of reliance because "the question of whether the OTC market is efficient should not be decided on a motion to dismiss." *Id.* at 35 n.18. The Report ultimately found that Plaintiff's boilerplate allegations of direct reliance were sufficient to survive dismissal. *Id.* at 36.

III.    STANDARD OF REVIEW

Upon the issuance of a magistrate judge's report and recommendation and the filing of an objection, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Even in ruling on a motion to dismiss, de novo review requires that the district court make an independent review of the record. *LoConte*

6

*v. Dugger*, 847 F.2d 745, 750 (11th Cir. 1988); *Holt v. Crist*, 233 F. App'x 900, 901 n.1 (11th Cir. 2007).

IV.    **FIRST CHOICE'S OBJECTIONS**

A.    **Even if the Court Agrees with the Report's Proposed Findings, the Court Cannot Adopt the Report's Ultimate Conclusion; Rather, the Court Should Dismiss the Complaint With Leave to Amend or, Alternatively, Strike Certain Allegations.**

As an initial matter, the Court should not wholly deny the Motion to Dismiss, as recommended in the Report. The Report correctly found that the majority of the purported misstatements alleged in the Complaint are not actionable and should not proceed. Based on the Report's findings, the following allegations are no longer at issue in this Action:

| Allegations Regarding: | Complaint Paragraphs: |
| --- | --- |
| First Choice Compliance Program, Code of Ethics, and Disclosure Policy | ¶¶ 8, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 72, 73 |
| Elite Stock Research as Boiler Room | ¶¶ 27, 55 (partial), 64, 65 |
| Romandetti as "Key" Employee | ¶¶ 10, 23, 24 28, 29, 33, 34, 38, 39, 43, 44 |

Under the PSLRA, a Court must ensure that an action's "issues get defined at the earliest stages of litigation" and "squeeze the controversy down to its core." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 698 n.104 (11th Cir. 2010) (Tjoflat, J., concurring in relevant part). In ruling on a motion to dismiss, a court should therefore "parse[] the complaint, detail[] the problems, and pursuant to its inherent power, order[] a repleader." *Id.* at 698. Where issues are confused, the district court should "strike[] [plaintiff's] complaints and instruct[] counsel to replead their case." *Cramer v. State of Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997). Confusing pleadings "exact an intolerable toll on the trial court's docket, lead to

7

50530729;4

unnecessary and unchannelled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources." *Id.*

Here, Count I in the Complaint merely states that Plaintiff's § 10(b) claim is based on "the misleading statements *specified above*," and that Plaintiff "relied on the statements *described above* . . . in purchasing First Choice common stock." Compl. at ¶ 98 (emphasis added). If the Report's findings were adopted, Count I would be premised upon a mix of actionable and non-actionable allegations. Defendants and the Court should not be required to guess which assertions support the alleged elements of the 10(b) claim; akin to strongly disfavored shotgun pleadings.

If the Report were to be adopted, and the Motion to Dismiss denied in full, Defendants will have to respond to all the allegations paragraph-by-paragraph in their Answers. Defendants would be forced to assume, at their own peril, which allegations are no longer at issue in this Action, and which allegations are, thus requiring a detailed response. Furthermore, if the Report is adopted wholesale, the Parties will undoubtedly encounter disputes regarding the appropriate scope of discovery as the litigation proceeds. Unnecessary discovery motion practice will lead to a waste of time and resources for all parties and the Court.[2] The better course, as championed by the Eleventh Circuit, is to dismiss the Complaint with leave to amend, or at a minimum, strike the non-actionable paragraphs from the Complaint. Proceeding

---

[2] For example, discovery regarding First Choice's implementation and operation of its compliance program would not be relevant based on the Report's findings.

8

in this manner would serve to avoid the parties' need to seek further clarification from the Court if the case proceeds.[3]

**B.      SOX Certifications Cannot Support a 10(b) Claim Unrelated to Financial Reporting.**

The Report incorrectly held that the alleged misstatements in First Choice's SOX certifications were actionable.  Report at 22.  Yet, in reaching this conclusion, the Report ignored on point Eleventh Circuit precedent and rejected First Choice's argument that SOX certifications are only actionable to the extent the misstatements pertain to a company's financial reporting.  *Id.* at 22 n.10.

"As several courts have observed, Congress passed the Sarbanes-Oxley Act '[a]fter a series of celebrated accounting debacles,' involving companies such as Worldcom and Enron." *Leshinsky v. Telvent GIT, S.A.*, 873 F. Supp. 2d 582, 598 (S.D.N.Y. 2012) (citing *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 461 U.S. 477, 531 (2010)).  SOX was "designed to improve the quality of and transparency in financial reporting and auditing of public companies."  *Carnero v. Boston Scientific Corp.,* 433 F.3d 1, 9 (1st Cir. 2006).  Therefore, the Act requires chief executive and the chief financial officers of publicly traded companies to certify that periodic reports containing the financial statements fully comply "with the requirements of section 13(a) or 15(d) of the Securities Exchange Act [o]f 1934 ... and that information contained in the periodic report fairly presents, in all material respects, the financial condition and results of operations of the [company]."  *See* 18 U.S.C. § 1350.

---

[3]      As detailed herein, First Choice objects to the two grounds that remain in the case, based on the Report's recommendation.  If the Complaint is dismissed outright, First Choice submits that Plaintiff should be not be given leave to replead to clarify its claims and allegations.

9

The Eleventh Circuit has noted that SOX certifications are limited to an issuer's "periodic reports containing *financial statements*." *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1265-66 (11th Cir. 2006) (citing 18 U.S.C. § 1350). Thus, SOX certifications can only be probative of scienter if the signatory was severely reckless in determining whether the *financial statements* contained material misstatements or omissions. *See id.* SOX certifications therefore only pertain to financial reporting. Otherwise, taken to its logical end — as advanced by Plaintiff and endorsed in the Report — SOX certifications would create a federal securities claim based on *any* allegations of fraud at a publicly traded company. *See id.* at 1266. This interpretation would impermissibly broaden the basis for 10(b) claims such that it would swallow and supplant case law regarding true misstatements. Indeed, plaintiffs would simply point to SOX certifications as the basis for every federal securities claim in lieu of identifying specific misstatements as required under the PSLRA. But "there is nothing in either the 1934 Securities Exchange Act or the Sarbanes-Oxley Act and implementing regulations that authorizes plaintiffs to base a claim for securities fraud on an alleged misstatement in a Sarbanes-Oxley certification." *Anderson v. StoneMor Partners, L.P.*, 296 F. Supp. 3d 693, 701 (E.D. Pa. 2017), *aff'd sub nom. Fan v. StoneMor Partners LP*, 927 F.3d 710 (3d Cir. 2019) (quoting *In re Silicon Storage Tech., Inc., Sec. Litig.*, 2007 WL 760535, at *17 (N.D. Cal. 2007)).[4]

---

[4] *See also Thompson*, 610 F.3d at 682 (Tjoflat, J., concurring in relevant part) (explaining that with regard to misrepresentations based on general statements in SOX certifications the "argument is circular because it contends that the filing was misleading precisely because the filing promised not to be misleading.")

50530729;4

Dismissal on this basis is not a novel concept.  Numerous courts — including courts within the Eleventh Circuit — have held that SOX certifications cannot support 10(b) claims unless they are premised on, or tied to, flawed financial reporting.  *See e.g. In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189, 1231 (N.D. Ga. 2019) ("[s]ince the plaintiff has not alleged that Equifax's financial reports were inaccurate in any way, its claims concerning Smith and Gamble's certification of proper internal controls pursuant to Sarbanes-Oxley fail"); *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 371 (E.D.N.Y. 2013) (finding SOX certifications not actionable where the complaint did not "allege any facts pertaining to the Company's internal structure of financial reporting" or "challenge the Defendants' accounting in any of the SEC filings"); *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 758 (S.D.N.Y. 2017) (holding that SOX certifications were not actionable where the company allegedly hid its involvement in a bribery scheme but the complaint did "not concretely allege that any of [the company's] financial reports were in any way inaccurate"); *Lorusso v. Boulder Brands, Inc.*, 15-CV-00679-MSK-KMT, 2017 WL 4365180, at *14 (D. Colo. Mar. 1, 2017) ("false SOX certifications are not independently actionable") (citations omitted); *In re Molycorp, Inc. Sec. Litig.*, 12-CV-00292-RM-KMT, 2015 WL 1540523, at *28 (D. Colo. Mar. 31, 2015) (same).

Here, the Report mistakenly found that the SOX certifications signed by Romandetti were actionable even though the Complaint's underlying allegations do not attack the Company's internal controls governing financial reporting or the financial reports themselves. Indeed, the Complaint does not allege that the market-manipulation scheme had *any* impact on First Choice's revenue, costs, profits, losses, or other financial metrics.  The SOX certifications are simply not actionable here.

11

50530729;4

The Report relied on distinguishable cases. *See* Report at 22. In *City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404 (D. Del. 2009), the court held that SOX certifications were actionable because the alleged underlying bribery scheme directly impacted how the company generated its revenue, and therefore the SOX statements "did not fairly present a complete picture of [the company's] *financial condition*." *Id.* at 419-420 (emphasis added). Similarly, in *Limantour v. Cray Inc.*, 432 F. Supp. 2d 1129 (W.D. Wash. 2006), the alleged lack of internal controls directly affected "the booking of assets" which had the "effect of increasing income." Indeed, the company in *Cray* disclosed "material weaknesses in [its] internal control over *financial data*." *Id.* at 1138 (emphasis added). The same is true in *Rabkin v. Lion Biotechnologies, Inc.*, 17-CV-02086-SI, 2018 WL 905862, at *2 (N.D. Cal. Feb. 15, 2018). There, the stock promotion scheme allegedly led to a private placement which netted the company $21.6 million in cash. *Rabkin*, 2018 WL 905862 at *2. Thus, the promotional scheme had a direct and substantial impact on the firms' financial condition and reporting, which justified finding the SOX certification actionable. Nothing of the sort is alleged here.[5] The Report's recommendation to allow Plaintiff's securities fraud claim on the basis of SOX certifications should be rejected.

---

[5]     The decision in *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600 (S.D.N.Y. 2017) was wrongfully decided and contrary to this Circuit's decisional law. However, even were the Court to agree with *Banco Bradesco*'s finding that SOX certifications can form the basis for 10(b) claims unconnected to financial reporting, the Court's analysis cannot end there. Instead, like in *Banco Bradesco*, the Court must parse the various SOX statements themselves and analyze whether Plaintiff sufficiently pled that the individual statements are actionable under the PSLRA. In fact, the *Banco Bradesco* court held that the specific SOX statements about fraud relating to "management or other employees who have a significant role in the company's internal control over financial reporting" — the exact same statements at issue here — were not actionable because those statements were limited to disclosures made to the company's "*auditors*." *Banco Bradesco*, 277 F. Supp 3d at 654 (emphasis in original). First

12

C.      **The Risk Disclosures Are Not Actionable.**

        1.      **The Discussion of First Choice Stock's Volatility Did Not Require Disclosure of the Uncharged Market Manipulation Scheme.**

Plaintiff does not allege that First Choice's risk disclosures included any material misstatements, but instead claim that the disclosures were misleading for failing to include the uncharged stock manipulation scheme as a basis for potential volatility in the Company's stock.  However, it is well-established that "companies do not have a duty to disclose uncharged, unadjudicated wrongdoing." *See In re UBS AG Sec. Litig.*, 07 CIV. 11225 RJS, 2012 WL 4471265, at \*31 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,* 752 F.3d 173 (2d Cir. 2014).  This principle would be eviscerated if every company were required to disclose uncharged, unadjudicated conduct as a risk-factor in its SEC filings.

Nevertheless, relying on *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1181 (D. Or. 2015), the Report recommended a finding that Plaintiff's allegations regarding First Choice's risk disclosures state an actionable claim.  Report at 23-24.  Yet, the *Galena* decision is not binding and should not be persuasive here.

The Eleventh Circuit has already addressed the *Galena* decision, and concluded that, despite the Oregon district court case, companies are not always required to disclose alleged stock promotional schemes.  *See In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1274 n.7 (11th Cir. 2016).  In *Galectin*, a publicly traded company paid stock promoters to tout

---

Choice's SOX certifications contain the *exact same* limiting language.  *See* Compl. ¶¶ 21, 25, 30, 35, 40; *see also* First Choice's SOX Certification attached as Composite Exhibit A.  As in *Banco Bradesco*, claims based on those misstatements cannot proceed.

50530729;4

its stock while the company noted in its SEC filings that it did not "manipulate" its stock price. *Id.* at 1265-66. The plaintiff claimed, based on *Galena*, that the discussion of the "stock manipulation" was rendered misleading absent disclosure of the paid promotional arrangement. *Id.* at 1266. The Eleventh Circuit disagreed and found the company was under no obligation to disclose that it paid third-parties to write the flattering articles. *Id.* at 1274. In its discussion, the Eleventh Circuit expressly noted that *Galena* was "non-precedential here" and was not persuasive because *Galena* involved allegations that the company's officers edited, approved, and controlled, the articles prior to publication and that the officers dumped their personal stock as part of the scheme. *Id.* at 1274 n.7. Because similar allegations were not present in *Galectin*, the company did not need to disclose the promotional scheme.

The same is true here. The Complaint does not allege that Romandetti ever dumped his First Choice shares nor does it explain how Romandetti played a hands-on role in the actual promotion of the First Choice stock. Instead, it merely alleges that non-parties Elite and Anthony Vassalo "implemented a large-scale promotional campaign" and "engaged in manipulative trades" so that the non-parties could "dump their First Choice stock at the inflated prices." Compl. at ¶ 5.[6] Romandetti, for his part, was only alleged to have provided the schemers with their shares and received kickbacks. Compl. at ¶¶ 6, 57. Because the Complaint does not allege that Romandetti dumped his shares or actively controlled First Choice's promotion, the *Galena* decision is inapposite. First Choice was under no obligation to disclose the uncharged market-manipulation scheme as a basis for volatility.

---

[6]     The Report expressly recognized that First Choice had informed investors that it was paying Elite to promote First Choice stock. Report at 29.

14

2.      **The Risk Disclosures are Protected by the Bespeaks Caution Doctrine.**

Even if the risk disclosures were misleading (and they were not), they are still not actionable because they are forward looking statements accompanied by cautionary warnings protected by the bespeaks caution doctrine. The Report, however, misinterpreted the doctrine in finding that First Choice's cautionary statements were not "sufficiently specific" in that they did not "forewarn about market manipulation schemes." Report at 25.

The bespeaks caution doctrine is not so myopic. A company is not required to "list *all* factors that might influence the company's financial future," let alone the exact risk that lead to the plaintiff's alleged loss. *Ehlert v. Singer*, 245 F.3d 1313, 1320 (11th Cir. 2001) (emphasis in original). Instead, precautionary forward-looking statements are protected where an "investor has been warned of risks of a significance similar to that actually realized." *Harris v. Ivax Corp.*, 182 F.3d 799, 807 (11th Cir. 1999); *Singer* 245 F. 3d at 132 (requiring warnings to be of a "similar significance" to the risk realized); *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1327 (11th Cir. 2019); *see also* Motion to Dismiss at 15-17.

Here, First Choice's risk disclosures were accompanied by meaningful cautionary statements. Motion to Dismiss at 13-14, 15-17. First Choice warned investors that its stock price may experience "wide fluctuations," including "potential extreme price and volume fluctuations." *See* Exhibit A to Motion to Dismiss [ECF No. 13-1] at 22-23; Exhibit B to Motion to Dismiss [ECF No. 13-2] at 23-24. The relevant 10-K's also noted that the volatility may be unrelated to "operating performance." *Id.* As such, First Choice investors were warned that the stock price may fluctuate based on factors unconnected to the Company's performance — exactly what Plaintiff alleges transpired. Those investors were therefore "sufficiently on

50530729;4

notice of the danger of the investment to make an intelligent decision about it according to [their] own preferences for risk and reward." *Ivax Corp.*, 182 F.3d at 807.  The risk disclosures were not misleading, and thus are not actionable.

### D.     The Report's Reliance Analysis is Flawed.

The Report correctly observed that reliance is a necessary element to Plaintiff's 10(b) claim, but erred in finding that the Complaint's bare-bones allegations of reliance can survive dismissal.  Report at 34-36.  Despite the Report's suggestion otherwise, Plaintiff cannot rely on either potential presumption of reliance — the *Affiliate Ute* presumption or the presumption afforded by the fraud on the market theory.   Further, the Complaint's allegations of direct reliance do not clear even the lowest of pleading hurdles.  The Court can therefore conclusively determine at this stage that reliance was not well pled for Plaintiff (or the purported class).

### 1.     The *Affiliated Ute* Presumption of Reliance is Not Applicable Because Plaintiff Alleged Misstatements Rather than Omissions.

The Report's suggestion that Plaintiff may rely on the presumption of reliance established by *Affiliated Ute*, 406 U.S. at 128, is incorrect.[7]  Report at 35.  The Eleventh Circuit has recognized the "limited reach of the [*Affiliated*] *Ute* presumption," which only applies in cases that primarily allege omissions where a duty to disclose existed.  *Cavalier Carpets, Inc. v. Caylor*, 746 F.2d 749, 756 (11th Cir. 1984).  The allegations here do not qualify.

Plaintiff does not "primarily" allege omissions under the standards of *Affiliated Ute*. Pursuant to Eleventh Circuit precedent, the presumption does <u>not</u> apply where a complaint

---

[7]     In *Affiliated Ute*, the Supreme Court noted that in cases "involving primarily a failure to disclose, dispositive proof of reliance is not a perquisite to discovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of the decision." *Id.* at 153-54.

50530729;4

claims that the defendant "undertook to disclose relevant information now alleged to contain certain misstatements of fact and to fail to contain other facts necessary to make the statements made, in light of the circumstances, not misleading." *Cavalier Carpets*, 746 F.2d at 756 n.22. Such misleading statements "always rest[] upon an affirmative statement of some sort," and therefore do not do not qualify for the *Affiliated Ute* presumption. *Smith v. Ayres*, 845 F.2d 1360, 1363 (5th Cir. 1988) (finding that the presumption in not available under 10b5-(b) claims). In these "mixed" allegations cases, the plaintiff must still adequately allege reliance. *In re Sahlen & Associates, Inc. Sec. Litig.*, 773 F. Supp. 342, 354 (S.D. Fla. 1991).

The Complaint here is a "mixed" allegations case, relying on allegations of misstatements and/or misleading statements — but not omissions. The bulk of the Complaint lists statements in First Choice's filings that were allegedly misleading. The Report agreed; finding that Plaintiff, proceeding under Rule 10b5-(b), therefore must show that the alleged *statements* made by Defendants were misleading in nature. Report at 15. The Report concluded that "First Choice had a duty to disclose the alleged market manipulation scheme based on its alleged *materially misleading statements.*" Report at 30 (emphasis added). Yet misleading statements do not qualify for the *Afiliated Ute* presumption. *Cavalier Carpets*, 746 F.2d at 756 n.22; *Smith*, 845 F.2d at 1363.

The Complaint also fails to allege that First Choice had a "duty to disclose" as required by application of the *Affiliated Ute* presumption. As explained in the Report, "Section 10(b) of the Exchange Act and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information." Report at 29. Rather any possible duty to disclose only stems from other statements made by First Choice — statements upon which Plaintiff must allege reliance.

17

50530729;4

*See Cavalier Carpets*, 746 F.2d at 756 (noting that without a corresponding duty to disclose, there can be no presumption of reliance on any particular omission). The *Affiliated Ute* presumption is plainly not available to Plaintiff.

2.     **The Fraud-On-The-Market Presumption Does Not Apply Because First Choice Stock Was Not Traded on an Efficient Market.**

Plaintiff similarly cannot take advantage of any presumption of reliance afforded under the fraud on the market theory.[8] The presumption only applies when a company's shares were traded in an efficient market. *See* Report at 35 n.17 (citing *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013)). Yet, despite the fact that Plaintiff did not even allege that First Choice shares were traded efficiently[9] — because it could not — the Report found that the issue cannot be determined on the pleadings. Report at 35 n.18. The Court should reject the Report's recommendation and hold that neither Plaintiff nor the class can rely on the fraud on the market theory.

---

[8]     While Plaintiff failed to assert a fraud on the market theory in the Complaint, Plaintiff argued in opposition to the Motion to Dismiss that the theory is applicable here and is available at the class certification stage. [ECF No. 36] at 27-30.

[9]     Plaintiff rightly does not even attempt to plead that First Choice shares were traded efficiently and its claims are subject to dismissal. *See Plichta v. SunPower Corp.*, 790 F. Supp. 2d 1012, 1022 (N.D. Cal. 2011) (dismissing complaint because "under *Iqbal* and *Twombly* plaintiffs must allege a sufficient factual basis for any contention that the debentures were traded on a well-developed and efficient market."); *Hull v. Glob. Digital Sols., Inc.*, No. CV 16-5153(FLW), 2017 WL 6493148, at *16 (D.N.J. Dec. 19, 2017) (granting motion to dismiss where "Plaintiff has not alleged any of the listed-circumstances to establish an efficient market under the PSLRA's pleading regime"); *Detroit St. Partners, Inc. v. Lustig*, No. 17-CV-2992-WJM-STV, 2019 WL 3337094 (D. Colo. July 25, 2019) (dismissing complaint because "[p]laintiffs do *not* allege that the subject securities traded in an efficient market") (emphasis in original); *In re Key Energy Services, Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 873 (S.D. Tex. 2016) (dismissing complain and noting "Lead Plaintiff must allege facts showing . . that Key's stock traded in an efficient market").

18

"[N]umerous courts have held <u>as a matter of law</u> that the OTC market is not efficient." *ScripsAmerica, Inc. v. Ironridge Global LLC*, 119 F. Supp. 3d 1213, 1252 (C.D. Cal. 2015) (emphasis added) (granting motion to dismiss); *Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 485 (S.D.N.Y. 2011), *aff'd sub nom. Alki Partners, L.P. v. Windhorst*, 472 F. App'x 7 (2d Cir. 2012) (granting motion to dismiss and noting that "[p]laintiffs cannot claim that their damages were caused by reliance on an assumption of an efficient market free of manipulation. . . while the NASDAQ is recognized as maintaining an efficient market the Court is unaware of any court holding that the [OTC] meets this same standard.") (citation omitted); *see also* Motion to Dismiss at 20-21 (collecting cases). The Court should make the same determination here. Because First Choice was traded on the OTC market, neither Plaintiff nor the class can rely on the fraud on the market theory as a matter of law.

### 3. Plaintiff's Bare-Bones Reliance Allegations Are Insufficient.

Without any available reliance presumptions, the Complaint can only proceed if Plaintiff has adequately pled direct reliance. It did not. The Complaint's conclusory reliance allegations are insufficient and the Report's findings otherwise should be disregarded.

"The traditional (and most direct) way a plaintiff can demonstrate reliance is by showing that he was aware of a company's statement and engaged in a relevant transaction — *e.g.*, purchasing common stock — based on that *specific misrepresentation*." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011) (emphasis added). Courts therefore require some level of specificity when alleging direct reliance; not just conclusory allegations. *In re Citigroup Auction Rate Sec. Litig.*, 700 F. Supp. 2d 294, 306 (S.D.N.Y. 2009) ("[p]laintiff must therefore plead facts sufficient to demonstrate the basis for his reliance; the Complaint is

19

50530729;4

fatally deficient in this regard. Plaintiff here has offered only conclusory allegations of reliance"); *Reding v. Goldman Sachs & Co.*, 382 F. Supp. 2d 1112, 1125 (E.D. Mo. 2005) ("plaintiffs have not adequately plead actual reliance because they did not allege specific facts showing that they relied upon any particular research report or any particular statement in any particular research report when making a decision to buy any one of the stocks"); *Lopez v. Rica Foods, Inc.*, 06-20710-CIV, 2006 WL 8432716, at *10 (S.D. Fla. Aug. 4, 2006) ("[t]o establish actual reliance Plaintiffs must identify the specific statements that they relied upon to purchase and hold securities, not just allege generally that they 'relied on Rica's false and misleading statements'").

Here, the Complaint claims in conclusory fashion that Plaintiff purchased "First Choice common stock at artificially inflated prices in reliance on Defendants' misleading statements due to omissions of material facts during the Class Period" and that "[u]naware of the falsity of the statements by Defendants, Plaintiff and the other members of the Class relied on the statements described above during the Class Period in purchasing First Choice common stock at prices that were artificially inflated." Compl. at ¶¶ 17, 103. These allegations are plainly insufficient.[10] Plaintiff does not allege it actually read First Choice's SEC filings or explain in any detail which statements it specifically relied upon.

---

[10] The decision in *Skypoint Advisors, LLC. v. 3 Amigos Productions LLC.*, 2:18-cv-00356-JES-MRM, 2019 WL 4600409, at *10 (M.D. Fla. Sept. 23, 2019), which found reliance adequately pled, is completely distinguishable on the facts here. There, the plaintiff specifically alleged it relied on misrepresentations that were made to the plaintiff via direct telephone calls, direct e-mails, and direct text messages. *See* Operative Complaint in *Skypoint*, 2:18-cv-00356 [ECF No. 93] at ¶¶ 20-28. Those circumstance are significantly different than the mere conclusory allegations of reliance in Plaintiff's Complaint. *Id.*

20

The two cases relied upon in the Report are easily distinguished. Report at 36. The court in *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171 (2d Cir. 2001) ruled on a motion for summary judgment and did not address pleading standards. The decision in *Stephenson v. Deutsche Bank AG*, 282 F. Supp. 2d 1032 (D. Minn. 2003), specifically stated it was relying on "the Eighth Circuit's holding that reliance is not an element of a rule 10b-5 claim." *Id.* at 1058. In contrast, within the Eleventh Circuit, "[r]eliance *is* an essential element of a cause of action under Rule 10b-5." *Ross v. Bank S., N.A.*, 885 F.2d 723, 728 (11th Cir. 1989) (en banc) (emphasis added). Furthermore, both cases pre-date the current federal pleading standard established in *Twombly* and *Iqbal* which mandate that Plaintiff plead facts — not mere conclusions or a formulaic recitation — supporting the elements of a cause of action. *See Diaz v. U.S. Century Bank*, 12-21224-CIV, 2012 WL 3597510, at *1 n.1 (S.D. Fla. Aug. 20, 2012) (noting that pre-*Iqbal* decisions regarding pleading are not controlling). The conclusory allegations in the Complaint are wholly insufficient to plead reliance.

### E.     First Choice Did Not Act With Scienter.

Scienter is a necessary element of Plaintiffs § 10(b) claim. There is nothing in the Complaint suggesting that First Choice — or any of its employees other than Romandetti — acted with scienter in making the allegedly misleading statements, or that anyone at First Choice — other than Romandetti — knew of the alleged scheme. Instead, the only scienter allegations against First Choice assert that Romandetti's scienter can be imputed to the Company because he was the CEO. Compl. at ¶ 88. However, the facts here are directly analogous to those in *Fries v. N. Oil & Gas, Inc.*, 285 F. Supp. 3d 706, 717 (S.D.N.Y. 2018)

50530729;4

and, just like in *Fries*, the Court should refuse to impute the scienter of an allegedly bad-acting CEO to the Company.

Like here, the *Fries* case involved a CEO who the SEC claimed had violated securities laws. *Id.* at 712. The court there ultimately determined that the *company* did not have scienter in making any misstatements. *Id.*; Motion to Dismiss at 23-24. The *Fries* court came to that conclusion partly because there were no allegations that anyone at the company knew of the CEO's illegal conduct, and the CEO was fired as soon as the company learned of the SEC's allegations, showing that the company was not complicit in the CEO's scheme. *Fries*, 285 F. Supp. 3d at 721-22.

So too here. The Complaint does not allege that any other First Choice employee knew of the scheme, and First Choice terminated Romandetti after learning of the alleged misconduct. Significantly, the Complaint fails to allege (and the Report does not specify) any particular benefit purportedly received by the Company from the underlying scheme. The Complaint only claims that Romandetti, separate and apart from other First Choice employees, orchestrated a scheme with third-parties to benefit himself. Under these circumstances, Romandetti's scienter should not be imputed to First Choice.

## V. CONCLUSION

Based on the foregoing, this Court should reject the Magistrate's Report and Recommendation and should dismiss Plaintiff's Complaint in full.

In the alternative, at a minimum, the Court should either: (a) require Plaintiff to file an amended Complaint to only include the alleged misstatements that could proceed at this time, or (b) strike the Complaint's allegations that are no longer at issue.

22

50530729;4

Dated: October 30, 2019

Respectfully submitted,

*/s/ Brian P. Miller*
Brian P. Miller, Esq.
**TRIAL COUNSEL**
Florida Bar No. 0980633
Brian.Miller@akerman.com
Samantha J. Kavanaugh
Florida Bar No. 0194662
Samantha.Kavanaugh@akerman.com
Ross E. Linzer
Florida Bar No. 73094
Ross.Linzer@akerman.com
Jonathan D. Lamet
Florida Bar No. 106059
Jonathan.Lamet@akerman.com
**AKERMAN LLP**
Three Brickell City Centre
98 SE 7th Street, Suite 1100
Miami, FL 33130
Phone: 305.374.5600
Fax: 305.374.5095

***Attorneys for Defendant First Choice Healthcare Solutions, Inc.***

23

50530729;4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 30, 2019, I filed the foregoing with the Court via CM/ECF, which will serve a true and correct copy of the foregoing via email service on counsel of record:

Joshua W. Ruthizer
Chet B. Waldman
WOLF POPPER LLP
845 Third Avenue
New York, NY 10022
Tel: 212.759.4600
Fax: 212.486.2093
jruthizer@wolfpopper.com
cwaldman@wolfpopper.com

Fritz J. Scheller
FRITZ SCHELLER, PL
200 E. Robinson Street
Orlando, FL 32801
Tel: 407.792.1285
Fax: 407.513.4146
fscheller@flusalaw.com

*Attorneys for Defendant Christian Romandetti, Sr.*

Ronald Jay Cohen
RICE PUGATCH ROBNISON STORFER &
COHEN PLLC
101 NE Third Avenue
Ft. Lauderdale, FL 33301
Tel: 954.462.8000
Fax: 954.462.4300
rcohen@rprslaw.com

*Attorneys for Plaintiff*

/s/ Brian P. Miller
Attorney

50530729;4