**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MAZ PARTNERS LP,

Plaintiff,

v. Case No: 6:19-cv-619-Orl-40LRH

FIRST CHOICE HEALTHCARE SOLUTIONS, INC. and CHRISTIAN ROMANDETTI, SR.,

Defendants.
_________________________________/

**ORDER**

This cause comes before the Court on Defendants' Motions to Dismiss (Docs. 13, 28). Magistrate Judge Hoffman filed a Report recommending that both motions be denied. (Doc. 37 (the "**Report**")). Defendants filed Objections (Docs. 39, 41). Plaintiff filed a Response (Doc. 44). For the reasons set forth herein, the Report will be adopted and confirmed, Defendant First Choice Healthcare Solutions, Inc.'s, Motion to Dismiss (Doc. 13) will be denied, and Defendant Romandetti's Motion to Dismiss (Doc. 28) will also be denied.

## I. BACKGROUND

The factual and procedural background as set forth in the Report is hereby adopted and made a part of this Order. (*See* Doc. 37, pp. 2–3, 5–11). A summary is outlined below.

Plaintiff MAZ Partners LP ("**MAZ**") filed a purported class action Complaint against First Choice Healthcare Solutions, Inc. ("**First Choice**" or "**FCHS**"), and Christian Romandetti, Sr. (collectively, "**Defendants**"), alleging violations of federal securities laws.

(Doc. 1). The Complaint alleges a "classic pump and dump scheme"[1] that artificially inflated the price of First Choice's common stock. First Choice's former CEO and board chairman, Defendant Romandetti, perpetrated the scheme. The Complaint alleges that Defendants violated section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder (Count I), and it asserts a claim of derivative liability against Romandetti pursuant to Section 20(a) of the Securities Exchange Act (Count II). Both Defendants moved to dismiss the Complaint. (Docs. 13, 28).

The Report recommends that "the Court **DENY** Defendants' Motions to Dismiss." (Doc. 44, p. 39). M.J. Hoffman concluded that "for purposes of the motions to dismiss, MAZ has sufficiently pleaded that Defendants' alleged omission concerning the 'pump and dump' scheme was material" (*Id.* at p. 18) and that:

> the complaint contains adequate allegations demonstrating that [FCHS] had a duty to disclose the alleged market manipulation scheme based on its alleged materially misleading statements. The complaint adequately alleges that some of the statements made by [FCHS] could have been rendered misleading by its failure to disclose the stock manipulation scheme, namely the [Section 302 of the Sarbanes-Oxley Act of 2002 ("**SOX**") (15 U.S.C. §7241)] certifications and the risk disclosures in the SEC filings.

(*Id.* at pp. 30–31). Plaintiff maintains that: (1) Defendant Romandetti certified that he disclosed "[a]ny fraud, whether or not material, that involves management or other employees who have a significant role in the Company's internal control over financial reporting," when he had not actually done so; and (2) the Form 10-Ks filed during the Class Period provided risk disclosures concerning possible reasons for FCHS stock price

---

[1] "A pump and dump scheme involves artificially inflating the price and volume of an owned stock—by promotional or trading activity—to sell the stock at a higher price. Once the overvalued shares are dumped, the price and volume of shares plummet and unsuspecting investors lose their money." *United States v. Curshen*, 567 F. App'x 815, 816 (11th Cir. 2014) (cited as persuasive authority).

volatility, but failed to disclose the ongoing, fraudulent stock-manipulation scheme. (Doc. 1, ¶¶ 21–22, 25–26, 30–32, 35–37, 40–42, 55, 74–75).

M.J. Hoffman also concluded that determinations of reliance were not appropriate on a motion to dismiss and recommended "that the Court defer its determination regarding reliance." (Doc. 37, pp. 34–35). In any event, M.J. Hoffman held that MAZ's reliance allegations "are sufficient" to survive a motion to dismiss. (*Id.* at p. 36).

M.J. Hoffman further concluded that Plaintiff sufficiently alleged Romandetti's scienter and that "imputation of Romandetti's conduct to [FCHS] is proper." (*Id.* at pp 31, 34). Among other things, Plaintiff alleges that Romandetti was the CEO and Chairman of FCHS, signed the Form 10-Ks on FCHS's behalf, and FCHS benefited from the fraud because its stock price increased. (Doc. 1, ¶¶ 19, 21, 25, 30, 35, 40, 67, 74, 88).

## II. STANDARDS OF REVIEW

### A. Review of Report & Recommendation

When a magistrate judge has been designated to decide a matter that is dispositive in nature, the magistrate judge must issue a report to the district judge specifying proposed findings of fact and the recommended disposition. Fed. R. Civ. P. 72(b)(1). Any party who disagrees with the magistrate judge's decision has fourteen days from the date of the decision to seek the district judge's review by filing objections to those specific portions of the decision with which the party disagrees. Fed. R. Civ. P. 72(b)(2). The district judge must then make a *de novo* determination of each issue to which objection is made. Fed. R. Civ. P. 72(b)(3). *De novo* review "require[s] independent consideration of factual issues based on the record." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990) (per curiam). The district judge may then accept, reject, or modify the

magistrate judge's recommendation, receive additional evidence or briefing from the parties, or return the matter to the magistrate judge for further review. Fed. R. Civ. P. 72(b)(3).

**B. Federal Rule of Civil Procedure 12(b)(6)**

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). A pleading must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

**C. Federal Rule of Civil Procedure 9(b)**

"[S]ecurities fraud claims, like other types of fraud claims, have always been subject to Fed. R. Civ. P. 9(b)'s heightened pleading requirements, which require a complaint 'to state with particularity the circumstances constituting fraud.'" *Mizzaro v. Home Depot, Inc*., 544 F.3d 1230, 1237 (11th Cir. 2008). Pursuant to Rule 9(b), a complaint alleging fraud must set forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Tello v. Dean Witter Reynolds, Inc*., 494 F.3d 956, 972 (11th Cir. 2007)

(quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)). "[W]hile mere conclusory allegations of fraud will not satisfy Rule 9(b), allegations which provide a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud are sufficient." *In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 352 (S.D. Fla. 1991) (citations omitted).

### D. Pleading Requirements Under the PSLRA.

The Private Securities Litigation Reform Act ("**PSLRA**") adds yet another level of pleading specificity that goes above and beyond that required by Rule 9(b). Under the PSLRA, a plaintiff must plead with particularity each statement or omission that is alleged to be misleading, the reasons why it is misleading, and the facts on which that belief is formed. 15 U.S.C. § 78u–4(b)(1)(B). The PSLRA also requires that a plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u–4(b)(2). "Thus, in a securities fraud class action, a plaintiff can no longer plead the requisite scienter element generally, as he previously could under Rule 9(b)." *Mizzaro*, 544 F.3d at 1238. In addition, "the complaint must allege facts supporting a strong inference of scienter 'for each defendant with respect to each violation.'" *Id.* (quoting *Phillips v. Scientific–Atlanta, Inc.,* 374 F.3d 1015, 1016 (11th Cir. 2004)). If the pleading requirements of the PSLRA are not met, the court must, on motion from any defendant, dismiss the complaint. 15 U.S.C. § 78u-4(b)(3)(A).

## III. DISCUSSION

Both Defendants raise a series of objections to the Report. The Court will address each argument in turn.

**A. Shotgun Pleading**

The Report concluded that the Complaint does not constitute a "shotgun" pleading. Defendant Romandetti objects. In *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015), the Eleventh Circuit outlined four types of shotgun complaints:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint . . . replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Id.* at 1321–23 (footnotes omitted).

The Complaint does not fall within any of the *Weiland* categories. As the Report recognized, "[t]here are only two counts in the [C]omplaint, and importantly, all of the factual allegations are relevant to both, particularly because Count II [Section 20(a)] relates to derivative liability and cannot be established without a violation under Count I [Section 10(b) and Rule 10b-5]." (Doc. 37, p. 14 n.7). Despite Romandetti's argument to the contrary, it is far from "virtually impossible" for Defendants to ascertain which factual allegations support which claim for relief. (Doc. 41, p. 4) (quoting *Anderson v. Dist. Bd. Of Trs. Cent. Fla. Comm.*, 77 F.3d 364, 366 (11th Cir. 1996)). Accordingly, Romandetti's objection is overruled.

**B. Dismissal with Leave to Amend and/or Striking Allegations**

In Count I the Complaint, Plaintiff contends that Defendants made material misrepresentations in Form 10-Ks, in other SEC filings, and on First Choice's website.

Each of these alleged misrepresentations is premised on Defendants' failure to disclose that Romandetti was allegedly engaged in a "pump and dump" scheme to artificially inflate the price of FCHS common stock. In other words, Plaintiff claims that Defendants' failure to disclose the scheme rendered all of the statements identified in the Complaint materially misleading.

M.J. Hoffman was not entirely convinced. The Report contained a lengthy and well-reasoned analysis of each statement identified in the Complaint. (Doc. 37, pp. 19–29). The Report noted which statements cannot be considered materially misleading and, therefore, cannot form the basis of a securities fraud claim. Nevertheless, the Report concluded that dismissal is unwarranted because the "[C]omplaint adequately alleges that some of the statements made by First could have been rendered misleading by its failure to disclose the stock manipulation scheme, namely the SOX certifications and the risk disclosures in the SEC Filings." (*Id.* at pp. 30–31).

Defendants object that the Report erred by "wholly deny[ing] the motion to dismiss," and instead should have recommended dismissal with leave to amend or striking[2] allegations relating to the unactionable statements. (Doc. 39, pp. 7–9). Defendants argue that "[a] Court must ensure that the action's 'issues get defined at the earliest stages of litigation' and 'squeeze the controversy down to its core.'" (*Id.* at p. 7) (quoting *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 698 n.104 (Tjoflat, J., dissenting)). M.J. Hoffman did precisely that. The Report makes clear that only

---

2 Defendants have not filed a motion to strike.

Defendants' SOX certifications and Form 10-K risk disclosures can support Plaintiff's claims.

Defendants now make the puzzling argument that—despite the Report's fine parsing—they "should not be required to guess which assertions support the alleged elements of the 10(b) claim." (Doc. 39, p. 8). This contention is undermined by FCHS's inclusion of a table that correctly summarizes the Report's conclusions regarding which statements are actionable and which are not. (*See id.* at p. 7).

Although the Report concluded that several of Defendants' statements are not actionable, repleader is unnecessary. First, as discussed, the Report obviates the risk of confusion because the un-actionable allegations are easily identified. In responding to the Complaint, it will be no burden for Defendants to answer that certain paragraphs (or sentences therein) have already been ruled insufficient to support Plaintiff's Section 10(b) claim. Indeed, Defendants have already done so. It will be a far greater burden on the parties'—and the Court's—resources to require repleader and its attendant delays to this litigation.[3] Second, contrary to Defendants' characterizations, the conclusion that certain allegations "cannot form the basis of a securities fraud claim" does not necessarily mean those allegations are "no longer at issue." (*See id.*). Although these allegations do not amount to actionable misrepresentations, they remain relevant to other disputed facts, such as the existence of the alleged "pump and dump" scheme, Romandetti's scienter, and whether Romandetti's actions are imputable to FCHS. Therefore, Defendants' objections are overruled.

---

[3] The Court notes that, pursuant to the PSLRA, discovery is stayed pending the Court's ruling on motions to dismiss. *See* 15 U.S.C. § 78u-4(b)(3)(B).

**C. The Complaint Adequately Alleges a 10(b) Claim**

*1. The SOX Certifications were Materially Misleading*

The Report concluded, "MAZ has sufficiently alleged that the SOX certifications were rendered materially misleading based on the omission regarding the stock manipulation scheme, which could form an actionable basis for a securities fraud claim." (Doc. 37, p. 23). In FCHS's SOX certifications, Defendant Romandetti certified that the Form 10-Ks did "not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made . . . not misleading" and that Romandetti disclosed "any fraud, whether or not material, that involves management or other employees who have a significant role in the Company's internal control over financial reporting." (Doc. 1, ¶ 21). However, Romandetti knew those statements were misleading because he was directly involved in the undisclosed "pump and dump" scheme.

Neither FCHS nor Romandetti disputes that these statements were materially misleading. Instead, they argue that the Report "ignored on point Eleventh Circuit precedent [that] SOX certifications are only actionable to the extent the misstatements pertain to a company's financial reporting." (Doc. 39, p. 9) (citing *Garfield v. NDS Health Corp.*, 466 F.3d 1255 (11th Cir. 2006)). This is a mischaracterization of the *Garfield* opinion. The Eleventh Circuit did not address whether a misrepresentation in a SOX certification must relate to a company's financial statements to be actionable. Instead, the court discussed whether the signing of SOX certifications was sufficient to establish a defendant's scienter. 466 F.3d at 1266. ("[W]e hold that a Sarbanes–Oxley certification is only probative of scienter if the person signing the certification was severely reckless in

certifying the accuracy of the financial statements.”). Accordingly, *Garfield* does not limit liability to SOX certifications containing misstatements or omissions concerning financial reporting.

In declining to adopt FCHS’s argument that SOX certifications pertain only to financial figures, the Report distinguished the two out-of-circuit cases cited by FCHS in its motion to dismiss.[4] In its Objection, FCHS now lists additional decisions to bolster its position. However, as this Court has recognized, “[i]t of course defies logic to claim that the Magistrate Judge erred by failing to consider legal authority which was never offered for [her] consideration, and the undersigned will decline to entertain new arguments which should have been raised to the Magistrate Judge.” *Fla. Action Comm., Inc. v. Seminole Cty.*, No. 6:15-cv-1525, 2016 U.S. Dist. LEXIS 143735, at *9 n.3 (M.D. Fla. Oct. 18, 2016).[5]

MAZ sufficiently alleges that Defendants’ SOX certifications were rendered materially misleading by the omissions regarding the stock manipulation scheme. In the absence of clear precedent to the contrary, the Court agrees that this can form an actionable basis for a securities fraud claim.

---

[4] The Court agrees with M.J. Hoffman’s reasoning.

[5] In any event, the Court believes the newly raised decisions are also distinguishable. For example, in *In re Equifax Inc. Securities Litigation*, 357 F. Supp. 3d 1189, 1231 (N.D. Ga. 2019)—the only in-circuit decisions cited by FCHS—the court concluded that a “reasonable investor would not take assurances of internal controls to detect improprieties in accounting and bookkeeping to guarantee that there were systems in place to deal with cybersecurity breaches.” *Id.* at 1230–31. Here, a reasonable investor *would* take Romandetti’s assurances that he had disclosed “any fraud” to include the undisclosed “pump and dump” scheme.

*2. The Risk Disclosures were Materially Misleading*

*a. Defendants had a Duty to Disclose the Manipulation Scheme*

In the Complaint, MAZ alleges that First Choice represented in its Form 10-Ks that the market price of FCHS common stock could "be subject to wide fluctuations in response to many risk factors." (Doc. 1, ¶ 22). The Form 10-Ks attributed such fluctuations to several possible, hypothetical factors while omitting the actual, then-existing scheme to manipulate the price of FCHS stock by Romandetti and his co-conspirators. MAZ contends that First Choice had an obligation to include the market manipulation scheme as a risk factor. (*Id.* ¶ 55). Accordingly, the scheme's omission rendered the enumerated risk factors incomplete and misleading. M.J. Hoffman agreed.

Defendants object that "companies do not have a duty to disclose uncharged, unadjudicated wrongdoing." (Doc. 39, p 13). However, even if Defendants had no independent duty to disclose the scheme, Rule 10b-5 proscribes the telling of half-truths. The rule "prohibits not only literally false statements, but also any omissions of material fact 'necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.'" *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1305 (11th Cir. 2011) (quoting Rule 10b-5). Defendants put the cause of FCHS stock volatility at issue by publishing a list of risk factors, thereby creating an obligation to make the list complete and accurate. Their failure to include a known cause of the stocks' price fluctuations made the partial list of risk factors materially misleading.

Defendants further object to the Report's reliance on *In re Galena Biopharma, Inc. Securities Litigation*, 117 F. Supp. 3d 1145, 1181 (D. Or. 2015) ("After Galena chose to disclose a lengthy list of reasons why its stock price might fluctuate, it needed to include

in that list the alleged scheme that Galena was manipulating the stock price with the help of [stock promoters].”). Defendants’ argument is based on the Eleventh Circuit’s discussion in *In re Galectin Theraputics, Inc. Securities Litigation*, 843 F.3d 1257 (11th Cir. 2016). In *Galectin*, the court noted that *Galena* was “non-precedential,” and emphasized that the two cases had “materially different facts.” *Galectin*, 843 F.3d 1274 n.7. This is true—*Galena* and *Galectin* were factually distinguishable. However, the facts of the present case are far more analogous to *Galena* than to *Galectin*.[6] Moreover, Defendants’ own characterization of the *Galectin* holding is that “companies are *not always* required to disclose alleged stock promotional schemes.” (Doc. 39, p. 13) (emphasis added). The Court agrees, but believes the facts alleged in this case are egregious enough to require disclosure.

*b. The Bespeaks Caution Doctrine Does Not Apply*

The Report rejected Defendants’ argument that the risk factors associated with future financial conditions are the types of “forward-looking statements” subject to the judicially created “bespeaks caution” doctrine. (Doc. 37, pp. 24–26).[7] As explained by the Eleventh Circuit:

> The “bespeaks caution” doctrine . . . protect[s] statements in the nature of projections that are accompanied by meaningful cautionary statements and specific warnings of the risks involved, so as to “bespeak caution” to

---

6 Like the defendants in *Galena*, the Complaint alleges that Romanetti played a hands-on role in the promotion of First Choice stock (Doc. 1, ¶¶ 81–83) and later dumped—that is, sold—his own shares (*Id.* ¶ 59).

7 The Report also concluded that the PSLRA safe harbor is inapplicable because FCHS common stock was subject to the SEC’s “penny stock” rules. (*Id.* at p. 25); *see also Sec. & Exch. Comm’n v. Strategic Glob. Invs., Inc.*, 262 F. Supp. 3d. 1007, 1021 (S.D. Cal. 2017) (“Congress expressly excluded all issuers of penny stocks from the protections afforded by the [PSLRA] Safe Harbor provisions.”). Defendants do not object to this conclusion.

> investors that actual results may differ, thereby shielding the statements from § 10(b) and Rule 10b–5 liability. *See Saltzberg v. TM Sterling/Austin Assoc*., 45 F.3d 399 (11th Cir.1995) (per curiam) (holding that explicit cautionary language in private placement memorandum rendered alleged misstatements immaterial and made them not actionable under bespeaks caution doctrine).

*Bryant v. Avado Brands, Inc*., 187 F.3d 1271, 1276 n.7 (11th Cir. 1999).

As a preliminary matter, the Eleventh Circuit has not applied the bespeaks caution doctrine beyond statements in offering documents. *See La Grasta v. First Union Sec. Inc.*, 358 F.3d 840, 850 (11th Cir. 2004) ("'bespeaks caution' cases [] deal with forecasts or projections in offering documents"); *Saltzberg v. TM Sterling/ Austin Assocs.*, 45 F.3d 399, 400 (11th Cir. 1995) (per curiam). Plaintiff alleges materially misleading statements in FCHS's SOX certifications and Form 10-Ks—not offering documents. Therefore, it is unclear that the bespeaks caution doctrine is even relevant.

Additionally, the Report questioned the applicability of the doctrine "to the extent that MAZ alleges Defendants' knowledge of/involvement in the alleged stock manipulation scheme." (Doc. 37, p. 26) (citing *FindWhat*, 658 F.3d at 1299 ("[T]he inclusion of general cautionary language regarding a prediction [does] not excuse the alleged failure to reveal known material, adverse facts.")); *Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004) ("The doctrine of bespeaks caution provides no protection to someone who warns his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away.'")). When the risk disclosures were made, Romandetti was actively manipulating FCHS's stock—that is, he was aware of known, material, adverse facts. Accordingly, Defendants' argument that

*forward-looking* cautionary statements should immunize their failure to disclose *ongoing* fraud is, quite frankly, absurd.[8]

Notwithstanding the above considerations, the Report concluded that—even if the bespeaks caution doctrine applies—Defendants' risk disclosures were inadequate to trigger its protections because they did not forewarn about the market manipulation scheme. (Doc. 37, p. 25). Defendants respond that M.J. Hoffman "misinterpreted" the doctrine. (Doc. 39, p. 15). Both parties agree that precautionary forward-looking statements are protected only where an "investor has been warned of risks of a significance similar to that actually realized." *Harris v. Ivax Corp.*, 182 F.3d 799, 807 (11th Cir. 1999). According to Defendants, warnings that FCHS stock prices may experience "wide fluctuations" due to "factors unconnected to the Company's performance" were sufficiently specific because that is "exactly what Plaintiff alleges transpired." (Doc. 39, p. 15). This argument is not well taken. It defies reason to believe that such innocuous statements provide meaningful notice that FCHS was actively manipulating its stock prices. Thus, Defendants' risk disclosures did not warn of "risks of a significance similar to that actually realized," so the bespeaks caution doctrine affords them no protection.

### 3. *Plaintiff Adequately Alleges Reliance*

Defendants next object that, "The Complaint's conclusory reliance allegations are insufficient, and the Report's findings otherwise should be disregarded." (*Id.*, p. 19).

The Report's primary recommendation was that "the Court defer its determination regarding reliance." (Doc. 34, p. 35). Indeed, reliance is a fact-intensive inquiry not appropriate for a decision on a motion to dismiss, "'but one more appropriate for the fact-

8 The Court notes that Defendants did not object to the Report's analysis on this point.

finder after discovery has developed a sufficient evidentiary record." (*Id.* at p. 34) (quoting *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 449 (S.D.N.Y. 2010)). Neither Defendant objected to this recommendation.

Regardless, the Report also concluded that Plaintiff specifically pleads reliance in the Complaint. (Doc. 37, p. 35). The Court agrees. The Complaint alleges:

> Plaintiff purchased 250,859 shares of [FCHS] common stock at artificially inflated prices in reliance on Defendants' misleading statements due to omissions of material facts during the Class Period[;]
>
> Plaintiff and the other members of the Class relied on the statements described above during the Class Period in purchasing [FCHS] common stock at prices that were artificially inflated as a result of the misleading statements by Defendants[; and]
>
> Had Plaintiff and the other members of the Class been aware that the market price of [FCHS] common stock had been artificially inflated by Defendants' omissions of the material adverse information that Defendants did not disclose, they would not have purchased [FCHS] common stock at the artificially inflated prices that they did, or at all.

(Doc. 1, ¶¶ 17, 102–103).

Contrary to Defendants' objections, these allegations are not conclusory. Plaintiff alleges that it was aware of FCHS's statements and engaged in relevant transactions—namely, purchasing FCHS common stock—based on those specific representations. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011). Plaintiff "lists the alleged misrepresentations, states [that it] was ignorant of their falsity and believed them to be true, and notes several times that plaintiff relied on those misrepresentations when entering into the agreement[s]." *Skypoint Advisors, LLC v. 3 Amigos Prods. LLC*, No. 2:18-cv-00356, 2019 U.S. Dist. LEXIS 161566, at *28 (M.D. Fla. Sept. 23, 2019). At the pleading stage, this is sufficient to allege reasonable reliance. *Id.*

*4. Romandetti's Scienter Can be Imputed to FCHS*

The Report recommended that "the Court find at this stage of the case that MAZ has properly alleged that imputation of Romandetti's conduct to [FCHS] is proper." (Doc. 37, p. 34). "The scienter of a corporation is established by showing that the corporation's officers or directors acted with scienter." *ZPR Inv. Mgmt. v. SEC*, 861 F.3d 1239, 1252 (11th Cir. 2017); *see also Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 635 (11th Cir. 2010) ("Corporations have no state of mind of their own; rather, the scienter of their agents must be imputed to them."). Here, neither Defendant objects that Plaintiff adequately alleges that Romandetti—the Chairman and CEO of FCHS—acted with scienter. Therefore, Plaintiff has satisfied its burden of pleading FCHS's scienter.[9]

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. The Report and Recommendation filed October 10, 2019 (Doc. 37), is **ADOPTED** and **CONFIRMED** and made a part of this Order.

2. Defendant First Choice Healthcare Solutions, Inc.'s, Motion to Dismiss (Doc. 13) is **DENIED**.

3. Defendant Romandetti's Motion to Dismiss (Doc. 28) is **DENIED**.

---

[9] The Court agrees with the Report's conclusion that this case is factually inapposite to *Fries v. N. Oil & Gas, Inc.*, 285 F. Supp. 3d 706 (S.D.N.Y. 2018). Additionally, the Court rejects FCHS's argument that the "Complaint fails to allege (and the Report does not specify) any particular benefit purportedly received by [FCHS] from the underlying scheme." (Doc. 39, p. 22). A cursory reading of the Complaint and the Report reveals this to be untrue. The Complaint indicates that the scheme caused FCHS stock to increase from "$0.90 to $3.40 per share." (Doc. 1, ¶ 67). As the Report recognized, "'There are certainly plenty of 10(b) cases where the CEO's attempts to inflate his company's stock price are imputed to the corporation.'" (Doc. 37, p. 33) (quoting *In re Spear & Jackson Sec. Litig.*, 399 F. Supp. 2d 1350, 1361 (S.D. Fla. 2005)).

4. On or before Friday, February 28, 2020, Defendants shall **ANSWER** the Complaint.

**DONE AND ORDERED** in Orlando, Florida on February 14, 2020.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties