**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| MAZ PARTNERS LP, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>v.<br><br>FIRST CHOICE HEALTHCARE SOLUTIONS, INC. and CHRISTIAN ROMANDETTI, SR.,<br><br>     Defendants. | **Case No. 6:19-cv-00619-PGB-LRH** |

**LEAD PLAINTIFF MAZ PARTNERS LP'S UNOPPOSED MOTION FOR (1) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (2) PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS; AND (3) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS, AND INCORPORATED MEMORANDUM OF LAW**

Court-appointed Lead Plaintiff MAZ Partners LP ("MAZ" or "Lead Plaintiff"), on behalf of itself and all Settlement Class Members, hereby moves this Court pursuant to Federal Rule of Civil Procedure 23 and Local Rule 4.04 for entry of the Parties' agreed-upon [Proposed] Order Preliminarily Approving Settlement, Preliminarily Certifying Settlement Class, and Directing Notice to Settlement Class (the "Preliminary Approval Order"). If entered, the Preliminary Approval Order will, among other things,

(1) preliminarily approve the Stipulation of Settlement ("Stipulation")[1] and the proposed class action Settlement for $1,000,000 in cash, subject to Notice to the Settlement Class and later consideration of Lead Plaintiff's motion for final approval of the Settlement

---

[1] Unless otherwise noted, capitalized terms have the same meaning as in the Stipulation, which is attached hereto as Exhibit 1. The proposed Preliminary Approval Order is attached to the Stipulation as Exhibit A.

1

and any objections filed by Settlement Class Members;

(2) preliminarily certify the Settlement Class, and appoint Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel, for purposes of the Settlement;

(3) approve the form, content, and manner of the Notice to the Settlement Class; and

(4) schedule a hearing, and certain deadlines related thereto, on final approval of the Settlement and the proposed Plan of Allocation, and to consider Lead Counsel's and Lead Plaintiff's applications for Attorneys' Fees and Expenses and the Plaintiff PSLRA Award.

## INCORPORATED MEMORANDUM OF LAW

### I.    INTRODUCTION

Lead Plaintiff, on behalf of itself and all Settlement Class Members, respectfully submits this Memorandum in support of its unopposed motion for an order preliminarily approving the proposed Settlement of this Action embodied in the Stipulation. The proposed Settlement was reached after more than a year of litigation, and following well-informed and hard-fought arm's length negotiations by the Parties and experienced counsel, and with the assistance of an experienced mediator.

Based on a thorough understanding of the facts and the law, the Parties agreed to the proposed Settlement of $1 million in cash. If approved, the Settlement will fully resolve this Action on behalf of a "Settlement Class" of

> All Persons or entities who purchased or otherwise acquired [First Choice Healthcare Solutions, Inc. ("First Choice," "FCHS," or the "Company")] common stock during the Class Period [April 1, 2014, and November 14, 2018, both dates inclusive], and who did not sell all such securities prior to November 14, 2018, including [Lead] Plaintiff, and excluding: (i) Defendants; the officers, directors, and employees of First Choice during the Class Period (the "Excluded D&Os"); members of Defendants' and Excluded D&Os immediate families, legal representatives, heirs, agents, affiliates, successors or assigns; and any

2

entity in which Defendants, the Excluded D&Os, or their immediate families have or had a controlling interest; and (ii) Steward Health Care System LLC and its affiliates, successors, and assigns [("Steward")].

Also excluded from the Class are all putative Settlement Class Members who exclude themselves by filing a valid and timely request for exclusion in accordance with the Court's Preliminary Approval Order. All Persons excluded from the Settlement Class pursuant to this paragraph are referred to as "Excluded Persons." [Ex. 1 (Stipulation) ¶ A.38.]

The $1 million Settlement Amount represents approximately 20% of the estimated damages for the Settlement Class's claims, an extraordinary result considering that the average securities class action settlement represents less than 10% of estimated damages. Also, the $1 million Settlement Amount represents approximately 38% of the Company's market capitalization of $2.64 million on June 12, 2020, the last trading day prior to FCHS's filing its Chapter 11 voluntary bankruptcy petition in the United States Bankruptcy Court for the Middle District of Florida ("Bankruptcy Court") on June 15, 2020. *See In re: First Choice Healthcare Sols.*, No. 6:20-bk-3344-KSJ ("Bankruptcy Proceeding").

Lead Plaintiff respectfully submits that the Settlement appropriately balances Lead Plaintiff's objective of securing the highest possible recovery for the Settlement Class against the significant risk of a smaller recovery—*or no recovery*—if the Action continued. While Lead Plaintiff believes the merits of this case are strong, and is confident that it would achieve class certification (despite significant opposition from Defendants) and succeed at trial, Lead Plaintiff acknowledges that the litigation would be highly contested. At the same time, FCHS is facing serious financial challenges, and is presently in bankruptcy. Lead Plaintiff and Lead Counsel believe that the Settlement, which secures a significant recovery for the Settlement Class without further delay, is in the best interest of the Settlement Class Members, and

ultimately should be approved by the Court.

In deciding whether to grant preliminary approval to the Settlement and approve Notice to the Settlement Class, the Court must determine whether: (1) the Court will likely be able to approve the proposed Settlement; (2) the Court will likely be able to certify the Settlement Class; and (3) the proposed Notice provides the best notice practicable under the circumstances. As discussed below, all requirements for preliminary approval are met. Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order; preliminarily approve the proposed Settlement; preliminarily certify the Settlement Class; approve and direct Notice of the proposed Settlement to the Settlement Class; and set a schedule for settlement proceedings, including a hearing to consider final approval and the fairness of the proposed Settlement.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Lead Plaintiff's Allegations

On November 14, 2018, the U.S. Department of Justice filed a criminal indictment, and on November 15, 2018, the U.S. Securities & Exchange Commission commenced a civil action, against Christian Romandetti, Sr., the then-President, CEO, and Chairman of the Board of Directors of FCHS, for allegedly participating in, and benefitting from, an illegal stock manipulation scheme. ¶¶ 6, 56-67.[2] Romandetti was charged with securities fraud, wire fraud, and money laundering, among other violations of law. *Id.* These announcements were the first time FCHS investors learned of Romandetti's alleged market manipulation, after years of public statements providing innocuous reasons for the volatile nature of the market for FCHS

---

[2] Unless otherwise noted, citations to "¶_" refer to the paragraphs of Lead Plaintiff's Complaint (ECF 1).

stock.  ¶¶ 4, 7, 22, 26, 31-32, 36-37, 41-42.  On November 15, 2018, the price of FCHS common stock fell $0.66 per share, or nearly 65%, to close at $0.35 per share.  ¶¶ 11, 68-69.

Lead Plaintiff's allegations relate to the stock manipulation scheme allegedly perpetrated by Romandetti, which involved artificially inflating the market price and trading volume of FCHS shares and then selling substantial amounts of FCHS shares at inflated prices. *See, e.g.*, ¶¶ 3, 59, 78, 94.  Lead Plaintiff alleges that during the Class Period, Defendants issued numerous materially misleading statements that failed to disclose the stock manipulation scheme and Romandetti's involvement therein.  ¶¶ 21-22, 25-26, 30-32, 35-37, 40-42.  As a result, when the truth was revealed, FCHS stock plummeted in value, and MAZ and the other investors suffered significant damages.  ¶ 68.

## B.   History of the Litigation

Lead Plaintiff filed its Complaint on March 29, 2019.  ECF 1.  FCHS and Romandetti both moved to dismiss the Complaint.  Dkt. Nos. 13, 28.  Lead Plaintiff opposed Defendants' motions.  ECF 36.  In her report and recommendation dated October 16, 2019, Magistrate Judge Hoffman rejected the vast majority of Defendants' arguments, and recommended that "the Court DENY Defendants' Motions to Dismiss."  ECF 37 at 39.  The Magistrate Judge concluded that "MAZ has sufficiently pleaded that Defendants' alleged omission concerning the [stock manipulation] scheme was material" (*id*. at 18); "the complaint contains adequate allegations demonstrating that [FCHS] had a duty to disclose the alleged market manipulation scheme based on its alleged materially misleading statements" (*id*. at 30); and the Complaint sufficiently alleged that the Defendants' Sarbanes-Oxley Act ("SOX") certifications and risk factors in FCHS's Form 10-Ks concerning volatility and fluctuations in FCHS's stock price

5

were misleading (*id.* at 21-26).[3]  The Magistrate Judge also concluded that MAZ had alleged Romandetti acted with scienter (which neither Defendant had challenged) and that "MAZ has properly alleged that imputation of Romandetti's conduct to [FCHS] is proper."  *Id.* at 31, 34. The Magistrate Judge further concluded that MAZ's reliance allegations "are sufficient" and "because this case centers on Defendants' omissions, it appears that MAZ may be able to rely on the 'presumption of reliance' as stated in *Affiliated Ute*…"  *Id.* at 36.[4]

FCHS and Romandetti both filed objections to the Report (Dkt. Nos. 39, 41), which MAZ opposed (ECF 44).  On February 14, 2020, the District Court issued an Order adopting and confirming the Report, and denying the motions to dismiss.  ECF 45.

### C.      Summary of the Settlement Negotiations

With the discovery phase of the litigation commencing (Lead Plaintiff having served document requests), a phase which would involve significant effort by the Parties to collect and produce documents, take depositions, and prepare expert reports, the Parties agreed to conduct a mediation before an impartial third party.  The Parties participated in a mediation on May 6, 2020.  Ex. 1 (Stipulation) at 2.  With the assistance of experienced mediator Simone K. Lelchuk of Melnick ADR LLC and JAMS, the Parties were able to reach agreement on the material terms of the Settlement.  *Id.*  The Settlement was memorialized in a Memorandum of Understanding ("MOU") dated May 21, 2020.  Following execution of the MOU, the Parties negotiated and executed the more detailed Stipulation (Ex. 1).

---

[3] The Magistrate Judge found that certain statements alleged in the Complaint to be misleading were not properly alleged to be misleading or were not actionable.  ECF 27 at 19-20, 26-29.

[4] *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).

6

### D.   Bankruptcy Proceeding

As stated above, FCHS filed the Bankruptcy Proceeding on June 15, 2020. On November 25, 2020, the Bankruptcy Court issued an order that authorized FCHS to enter into a Settlement of this Action and lifted the automatic stay of this Action imposed by Section 362(a) of the Bankruptcy Code "solely to allow" the Parties to this Action "to seek approval of the Settlement Agreement and to perform thereunder consistent with its terms and the applicable rules." *See* ECF 61 (attaching copy of Bankruptcy Court Order).

## III.   THE PROPOSED SETTLEMENT

### A.   Class Definition

Under the proposed Settlement, the Settlement Class consists of all persons or entities who purchased or otherwise acquired FCHS common stock between April 1, 2014, and November 14, 2018, both dates inclusive (the "Class Period"), and who did not sell all such securities prior to November 14, 2018, including Lead Plaintiff. *See* Ex. 1 (Stipulation) ¶ A.38 and pp. 2-3, above.  Importantly, the Settlement Class includes not just purchasers on the open market, but also those who otherwise acquired FCHS common stock.  Based on FCHS's historical public filings, Lead Plaintiff believes that significant holders of FCHS common stock during the Class Period did not buy their shares on the open market.

In addition to excluding Defendants and those persons associated with Defendants who are typically excluded from similar settlements (Excluded D&Os and persons and entities associated with or related to Defendants and the Excluded D&Os), the Settlement also excludes Steward.  *See* Ex. 1 (Stipulation) ¶ A.38 and pp. 2-3, above.  In 2018, Steward entered into a strategic partnership with FCHS, which was formalized in a stock purchase agreement that

7

provided for, among other things, the acquisition of five million FCHS shares by Steward.[5] However, in February 2020, Steward brought an individual litigation against FCHS seeking to rescind that agreement, which would effectively cancel Steward's FCHS shares if the suit is successful. *See Steward Health Care Sys. v. First Choice Healthcare Sols.*, No. 2020-0131 (Del. Ch.). Consequently, Steward was excluded from the Settlement Class.

### B.      Monetary Relief for the Benefit of the Settlement Class

The Settlement provides for a $1 million payment in cash for the benefit of the Settlement Class. Ex. 1 (Stipulation) ¶ A.37. Defendants shall cause the Settlement Amount to be paid into the Escrow Account following preliminary approval of the Settlement. *See id.* ¶ C.1. The "Net Settlement Fund," which is the $1 million Settlement Amount, plus accrued interest, less (a) Attorneys' Fees and Expenses awarded to Plaintiff's Counsel; (b) reimbursement of "costs and expenses (including lost wages) directly relating to the representation of the class" to Lead Plaintiff, as permitted by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(4) (the "Plaintiff PSLRA Award"); (c) Notice and Administration Expenses, made up of the costs and expenses of notice to Settlement Class Members and the appropriate persons or entities under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), and costs and expenses of claim administration, shall be used to pay approved claims of the Settlement Class Members in accordance with a Plan of Allocation to be approved by the Court. Ex. 1 (Stipulation) ¶¶ C.2-3, C5.

---

[5] *See* www.sec.gov/Archives/edgar/data/0001416876/000157570518000031/0001575705-18-000031-index.html (last visited December 22, 2020).

## C.    Release of Claims

If the Settlement receives the Court's final approval, in exchange for the benefits conferred by the Settlement, Lead Plaintiff and Settlement Class Members will release claims relating to the subject matter of the Action.  The detailed, narrow release language is found in Paragraphs A34-35 and Section I of the Stipulation.

## IV.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

"The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." *Williams v. Bluestem Brands*, 2019 U.S. Dist. LEXIS 56655, at *2 (M.D. Fla. Apr. 2, 2019) (quoting Fed. R. Civ. P. 23(e)).  "Notice of the proposed settlement must be provided to all class members who would be bound by the proposal if it is shown that the court will likely be able to (1) approve the proposal as 'fair, reasonable, and adequate,' and (2) certify the class for purposes of judgment on the proposal." *Id.* (citing Fed. R. Civ. P. 23(e)(1)).  "Public policy strongly favors the pretrial settlement of class action lawsuits." *City of L.A. v. Bankrate, Inc.*, 2016 U.S. Dist. LEXIS 115071, at *14 (S.D. Fla. Aug. 24, 2016).

Under Rule 23(e)(2), a settlement warrants preliminary approval if it is "fair, reasonable, and adequate."  The Eleventh Circuit has set out six factors to be considered in determining whether a settlement is fair, reasonable and adequate:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bankrate*, 2016 U.S. Dist. LEXIS 115071, at *15 (quoting Rule 23(e) and *Bennett v. Behring*

*Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)).  Also, Rule 23 was amended effective December 1, 2018 "to add a mandatory but non-exhaustive set of similar [] approval criteria."  *Grant v. Ocwen Loan Servicing*, 2019 U.S. Dist. LEXIS 14673, at *13-14 (M.D. Fla. Jan. 29, 2019).

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account:  (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  The amendment does not displace the factors traditionally applied in the Eleventh Circuit, but was intended to focus the parties and court on the "core concerns" that should guide the approval decision.  Fed. R. Civ. P 23(e)(2) advisory committee's note to 2018 amendment; *see also Ocwen*, 2019 U.S. Dist. LEXIS 14673, at *14 (reviewing both Rule 23(e)(2) and considerations under *Bennett*).

This Court should grant preliminary approval because all Rule 23(e) and *Bennett* factors support the conclusion that the Settlement is fair, reasonable, and adequate.  As stated in the Declaration of Walter Schenker in Support of Lead Plaintiff's Motion ("MAZ Declaration," Ex. 2), Lead Plaintiff supports the settlement.

> **A.      The Likelihood of Success at Trial, the Range of Possible Recovery, and the Complexity, Expense, and Duration of Litigation All Support Preliminary Approval of the Settlement**

The Settlement provides exceptional relief, especially in light of the costs, risks, and delay of further litigation.  The Settlement provides for a monetary recovery of $1 million in cash for the Settlement Class.  Lead Plaintiff's damages consultant, using accepted methodologies, estimated that damages for the Settlement Class's claims (excluding Steward)

10

are approximately $4.877 million.  *See* Ex. 1.A-2 (Full Notice) at 2.  The Settlement represents approximately 20% of the Class's estimated damages, well above the average recovery in class action securities litigation.  *See*, *e.g.*, *Cabot E. Broward 2 LLC v. Cabot*, 2018 WL 5905415, at *5 (S.D. Fla. Nov. 9, 2018) ("The usual recovery in [securities class action settlements] is less than 10% of the class members' estimated losses."); Cornerstone Research, *Securities Class Action Settlements 2019 Review and Analysis* (reporting that the median settlement, as a percentage of Cornerstone's "Simplified Tiered Damages," for cases with damages of less than $25 million was 12.8% in 2019).[6]

While $1 million may not seem like a large number for a securities class action settlement, to put that number in context, the market capitalization of FCHS was only $2.64 million as of June 12, 2020, the last trading day prior to FCHS's filing for bankruptcy; thus, the Settlement Amount represents approximately 38% of First Choice's market cap, an extraordinary number.  Ex. 1.A-2 (Full Notice) at 1.

Moreover, if the litigation had continued, Lead Plaintiff and the Settlement Class Members would have faced numerous risks that could have precluded securing any recovery at all.  A class had not yet been certified, and although Lead Counsel is confident that it would have achieved class certification, Defendants argued strenuously during the course of litigation that the fraud on the market theory did not apply (meaning that a presumption of reliance would not apply, raising individual issues of reliance that would predominate over common issues) and that class certification was, therefore, inappropriate.  *See* Dkt. Nos. 13 at 19-22 and 39 at

---

[6]  Available at www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2019-Review-and-Analysis (last visited December 22, 2020).

16-21. Even if Lead Plaintiff did succeed in obtaining class certification, many hurdles would remain, including Defendants' likely summary judgment motion, a trial, and appeals. Lead Plaintiff is confident in the merits of the case, but the Settlement secures a substantial recovery now, without having to risk an unfavorable outcome later. The Settlement also avoids the expense and delay of continued litigation, a key consideration here given the relatively small size of the damages and FCHS's Bankruptcy Proceeding. *See, e.g.*, *Keegan v. Am. Honda Motor Co.*, 2014 WL 12551213, at \*10 (C.D. Cal. Jan. 21, 2014) (approving settlement and observing, "[w]hile it is possible that going to trial might have resulted in additional compensation for class members…, the settlement offers a guaranteed recovery for eligible class members without the risk or further expense of litigation").

Lead Plaintiff respectfully submits that this is an excellent result that further supports the fairness, reasonableness, and adequacy of the Settlement, especially given that Lead Plaintiff still faced significant hurdles in prosecuting this Action and collecting any judgment.

**B.      The Stage of Proceedings at Which the Settlement was Achieved Supports Preliminary Approval**

The stage of the proceedings also supports preliminary approval of the Settlement. As will be further detailed in the papers accompanying Lead Plaintiff's motion for final approval, Lead Plaintiff's decision to enter into the Settlement was based on its thorough understanding of the strengths and weaknesses of its claims and Defendants' defenses. Ex. 2 (MAZ Decl.) ¶¶ 5-18. This understanding was based on Lead Counsel's diligent prosecution of the Action, which included, among other things:  (i) conducting an extensive factual investigation, buttressed by governmental investigations and findings, and drafting the Complaint, which was subject to the heightened pleading standards of the PSLRA; (ii) consulting with relevant

experts; (iii) successfully opposing Defendants' Motions to Dismiss and Defendants' Objections to the Report and Recommendation of Magistrate Judge Hoffman that those Motions to Dismiss be denied; and (iv) preparing for, and participating in, a mediation session before a professional mediator. At the time the Settlement was reached, Lead Plaintiff and Lead Counsel had a clear view of the strengths and weaknesses of the claims and defenses.

### C.     The Proposed Settlement Was Negotiated at Arm's Length by Experienced and Informed Counsel

Courts accord considerable weight to the opinion of experienced and informed counsel in evaluating a proposed class action settlement. *See, e.g., Francisco v. Numismatic Guar. Corp. of Am.*, 2008 WL 649124, at *12 (S.D. Fla. Jan. 31, 2008) ("Counsel's conclusions that the [s]ettlement is fair, adequate and reasonable provides strong evidence that the settlement merits the Court's approval. Here, the Court gives 'great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation.'"). "Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *Hanley v. Tampa Bay Sports & Entm't*, 2020 U.S. Dist. LEXIS 11024, at *9-10 (M.D. Fla. Jan. 7, 2020) (citing *Manual for Complex Litigation*, Third, § 30.42 (West ed. 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.")); *see also Bankrate*, 2016 U.S. Dist. LEXIS 115071, at *14.

The Parties' settlement negotiations were at arm's length and facilitated by an experienced mediator. At Ms. Lelchuk's direction, the Parties submitted comprehensive mediation statements and reply mediation statements prior to the mediation. It was only

following hard-fought negotiations at the mediation concerning the perceived strengths and weaknesses of their respective cases that the Parties were ultimately able to reach agreement. *See, e.g., Holman v. Student Loan Xpress*, 2009 WL 4015573, at *5 (M.D. Fla. Nov. 19, 2009) (finding no fraud or collusion where the settlement is the product of "an arm's length, 'protracted and contentious' negotiation with a mediator"); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) (approving settlement that was "the product of informed, good-faith, arm's-length negotiations between the parties and their capable and experienced counsel, and [which] was reached with the assistance of a well-qualified and experienced mediator").

Second, the Parties and their counsel were well prepared for such negotiations and were knowledgeable about the strengths and weaknesses of the case prior to reaching the agreement to settle. The mediation followed two decisions by this Court concerning Defendants' motions to dismiss after extensive briefing – Magistrate Judge Hoffman's Report and Recommendation to deny the motion to dismiss (ECF 37), and this Court's Order adopting and confirming the Report and Recommendation (ECF 45). Moreover, counsel for the Parties have extensive experience litigating securities class actions. Because of the significant work performed in this case and their experience with similar litigation, counsel for the Parties were able to effectively gauge the strengths and weaknesses of their claims, the risks of continued litigation, and the adequacy of the Settlement.

### D. The Proposed Plan of Allocation is Reasonable

The proposed Plan of Allocation (Ex. 1.A-2 (Full Notice) at 7-11) is reasonable and treats all Settlement Class Members equally. Each Settlement Class Member's Recognized

14

Loss will be calculated in accordance with the PSLRA's "per share basis" requirement (15 U.S.C. § 78u-4(a)(4)) and limitation on damages (15 U.S.C. § 78u-4(e)). Each Settlement Class Member will receive its *pro rata* share of the Net Settlement Fund, based upon their Recognized Loss. Consequently, the proposed Plan of Allocation treats Settlement Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D).

> **E.    The Anticipated Requests for Attorneys' Fees and Expenses and the Plaintiff PSLRA Award are Reasonable**

The Notice will inform Settlement Class Members that (1) Plaintiff's Counsel will apply for an award of $250,000 in attorneys' fees (25% of the Settlement Amount); (2) Plaintiff's Counsel will ask the Court to reimburse it for costs and expenses incurred in the Action in an amount not to exceed $30,000; and (3) Lead Plaintiff will ask the Court to award it, pursuant to 15 U.S.C. § 78u–4(a)(4), reimbursement of "costs and expenses (including lost wages) directly relating to the representation of the class" (the Plaintiff PSLRA Award) in an amount not to exceed $5,000.

Attorneys' fees of 25% of the Settlement Amount and reimbursement of expenses in the amount of up to $30,000 are reasonable here, and are supported by Lead Plaintiff. Ex. 2 (MAZ Decl.) ¶ 19. Attorneys' fees of 25% of the Settlement Amount are also within the range of awards approved by courts in the Eleventh Circuit. *See, e.g.*, *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that courts in the Eleventh Circuit routinely approve fee awards of one-third of a common settlement fund); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir. 1999) (affirming attorneys' fee award of 33.3% to class counsel). The requested fee is appropriate in light of the substantial risks that Plaintiff's Counsel undertook in pursuing this Action, their litigation

15

efforts, and the excellent recovery obtained for the benefit of the Settlement Class.

The contemplated Plaintiff PSLRA Award is also reasonable. The Eleventh Circuit recently held that two Supreme Court decisions from the 1880s[7] prohibit granting incentive awards to class representatives. *Johnson v. NPAS Sols.*, 975 F.3d 1244, 1258-59 (11th Cir. 2020).[8] However, *Johnson* concerned a class action brought under the Telephone Consumer Protection Act. This Action alleges violations of the federal securities laws. The *Johnson* opinion explains that if "Congress doesn't like the result we've reached, they are free to … provide for incentive awards by statute." *Id.* at 1260. The PSLRA, which was enacted in 1995 and applies to this Action, specifically allows for "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). MAZ will only request the Court award it its reasonable costs and expenses (including lost wages) directly related to representation of the Settlement Class. Ex. 2 (MAZ Decl.) ¶¶ 20-23. Therefore, the prohibition in *Johnson* against incentive awards does not apply here.

Settlement Class Members will have an opportunity to review and comment on Lead Plaintiff's and Plaintiff's Counsel's requests for award of Attorneys' Fees and Expenses and the Plaintiff PSLRA Award. Lead Plaintiff's proposed schedule (below at pp. 29-30) asks the Court to set a schedule such that the motion for an award of Attorneys' Fees and Expenses and the Plaintiff PSLRA Award be filed *two weeks before* the deadline for Settlement Class

---

[7] *Trustees v. Greenough*, 105 U.S. 527 (1882), and *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885).

[8] Lead Plaintiff notes that the appeal in *Johnson* is ongoing. Petitions for rehearing *en banc* (with panel rehearing) were filed on October 22, 2020, and the Eleventh Circuit issued an order withholding issuance of the mandate on November 9, 2020.

Members to object to the Settlement.  This Motion therefore asks the Court to set a schedule that complies with the Eleventh Circuit's decision in *Johnson*.  975 F.3d at 1251.

*    *    *

Here, there are no procedural defects or improper, unfair, or inadequate substantive terms that raise questions about the propriety of the proposed Settlement.  This Court will likely be able to approve the proposed Settlement as fair, reasonable, and adequate.

## V.   CERTIFICATION OF THE SETTLEMENT CLASS FOR PURPOSES OF THE SETTLEMENT SHOULD BE GRANTED

"It is well established that '[a] class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue.'" *Hanley*, 2020 U.S. Dist. LEXIS 11024, at \*4 (quoting *Holman v. Student Loan Xpress*, 2009 U.S. Dist. LEXIS 113491, 2009 WL 4015573, at \*2 (M.D. Fla. Nov. 19, 2009)).

> In deciding whether to provisionally certify a settlement class, a court considers the same factors as in connection with a proposed litigation class—i.e., all Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied—except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial.

*Id.*  The Lead Plaintiff must also demonstrate that it has standing to raise the class claims. *Stewart v. Fla. Cmty. Law Grp.*, 2019 U.S. Dist. LEXIS 153147, at \*5-6 (M.D. Fla. Aug. 26, 2019).  Here, MAZ has standing, all Rule 23(a) factors of numerosity, commonality, typicality, and adequacy of representation are satisfied, and the requirements of Rule 23(b)(3) are met.

### A.    The Lead Plaintiff Has Standing

"To establish Article III standing, a plaintiff must show that:  (1) he suffered an injury in fact; (2) the injury at issue is fairly traceable to the defendant's alleged conduct; and (3) the injury is likely to be redressed by a favorable judicial decision."  *Id.* at \*6. (citing *Spokeo, Inc.*

17

*v. Robins*, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016)). "To have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but must also be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at *6 (quoting *Mills v. Foremost Ins.*, 511 F.3d 1300, 1307 (11th Cir. 2008)).

Lead Plaintiff clearly has standing. MAZ purchased shares of FCHS common stock at prices alleged to be artificially inflated, in reliance on Defendants' statements, alleged to be misleading due to omissions of material facts, Ex. 2 (MAZ Decl.) ¶ 3, and "[Lead] Plaintiff and the other [Settlement Class Members] relied on the statements described above during the Class Period in purchasing [FCHS] common stock at prices that were artificially inflated as a result of the misleading statements by Defendants." ¶ 102. When the truth was finally revealed, the price of FCHS common stock held by Lead Plaintiff and the other Settlement Class Members declined nearly 65%. ¶ 11. Lead Plaintiff has clearly shown that it and the Settlement Class suffered injuries traceable to the Defendants' conduct and that the injuries can be redressed by a favorable judicial decision.

## B.    Numerosity Is Established

"Generally, a class of less than twenty-one is inadequate, but more than forty suffices." *Andreas-Moses v. Hartford Fire Ins.*, 326 F.R.D. 309, 314 (M.D. Fla. 2018). Further, "[s]ecurities fraud actions based on public misrepresentation are generally considered to satisfy the numerosity requirement." *Bankrate,* 2016 U.S. Dist. LEXIS 115071, at *6 (citing cases). FCHS had between 16.7 million and 32.6 million shares of common stock outstanding during the Class Period, and Lead Plaintiff estimates that there are over 9.8 million shares of FCHS common stock eligible under the Plan of Allocation. Ex. 1.A-2 (Full Notice) at 1-2. While

the exact number of Settlement Class Members is not known at this time, given the number of shares outstanding, it is likely that the Settlement Class Members number in the hundreds, if not thousands, easily exceeding the minimum threshold for numerosity.

### C.     Commonality Is Established

The Rule 23(a)(2) commonality requirement is also satisfied.  "The commonality requirement demands only that there be questions of law or fact common to the class." *Bluestem Brands*, 2019 U.S. Dist. LEXIS 56655, at \*7 (quotation and citation omitted); s*ee Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2556 (2011) ("[E]ven a single [common] question will do.").  This Action raises numerous questions of law and fact common to the Settlement Class, including whether:  (i) Defendants' statements and omissions were materially false or misleading; (ii) Defendants' misrepresentations and omissions were made with scienter; (iii) the price of FCHS common stock was artificially inflated during the relevant time period; and (iv) Defendants' misrepresentations and omissions caused economic harm to Settlement Class Members.  ¶ 94.  "[L]ike many other similar securities cases in this Circuit, [] the commonality prong has been satisfied by allegations of a scheme to defraud investors through misrepresentations and omissions of information."  *Bankrate*, 2016 U.S. Dist. LEXIS 115071, at \*7 (quotation and citation omitted).  Thus, the "relatively light burden" of commonality is satisfied.  *Herman v. Seaworld Parks & Entm't*, 320 F.R.D. 271, 289 (M.D. Fla. 2017).

### D.     Typicality Is Established

Rule 23(a)(3)'s typicality requirement is satisfied because "the named plaintiff and the proposed class share claims that stem from the same event, practice or course of conduct and are based upon the same legal or remedial theory."  *Bluestem Brands,* 2019 U.S. Dist. LEXIS

56655, at *8 (citation and quotation omitted). Lead Plaintiff's claims are typical of those of the other members of the Settlement Class—MAZ purchased FCHS stock during the Class Period at prices allegedly inflated by Defendants' misconduct, and was harmed when the truth was revealed—and the proof that Lead Plaintiff would present to establish its claims would also prove other Settlement Class Members' claims. Typicality is therefore met. *See Bankrate*, 2016 U.S. Dist. LEXIS 115071, at *8 ("Here, Lead Plaintiff, like each of the proposed class members, purchased Bankrate common stock during the Settlement Class Period at prices that were allegedly inflated by misrepresentations and omissions. Lead Plaintiff's claims are, therefore, typical of the class.").

### E.    Adequacy Is Established

"To prove that the representative parties will fairly and adequately protect the interests of the class two components are reviewed—(1) whether plaintiff's counsel is qualified, experienced and generally able to conduct the proposed litigation and (2) whether plaintiff has interests antagonistic to the rest of the class." *Bluestem Brands,* 2019 U.S. Dist. LEXIS 56655, at *8-9; *see also Bankrate*, 2016 U.S. Dist. LEXIS 115071, at *8 (evaluating "whether the representatives will adequately prosecute the action.").

Based upon its purchases of FCHS common stock during the Class Period, and the losses suffered as a result of Defendants' misconduct, Lead Plaintiff's interests are directly aligned with (rather than "antagonistic to") the interests of other Settlement Class Members, who were injured by the same materially false and misleading statements as Lead Plaintiff. Lead Plaintiff also retained experienced counsel, received regular status updates from its lawyers, and participated in strategic decisions and the mediation. Ex. 2 (MAZ Decl.) ¶¶ 6-

20

15.  Moreover, MAZ is an institutional investor and was found adequate and certified as a class representative in *MAZ Partners LP v. Shear (In re PHC, Inc. S'holder Litig.)*, No. 11-11-49 (D. Mass.) ("*PHC Litigation*"), a securities class action litigation which was adjudicated through trial.  *See PHC Litigation*, ECF 234 (D. Mass. Jan. 14, 2016) and ECF 487 (D. Mass. Apr. 2, 2019) ("Walter Schenker, the principal of Plaintiff MAZ, effectively served as a class representative, and expended considerable time and effort prosecuting this Action, including producing discovery, sitting for a deposition, and testifying at trial.").

Lead Counsel, Wolf Popper LLP, is qualified and experienced, capable of vigorously prosecuting this Action, and satisfies the requirements of Rule 23(g).  *See* ECF 29-5 (Wolf Popper Firm Resume).  Indeed, Wolf Popper represented MAZ in the *PHC Litigation* at trial and on appeal.  Armed with their knowledge of, and experience with, litigating securities class actions, Lead Counsel developed this case and ultimately convinced Defendants and their insurers to settle on terms favorable to the Settlement Class.  The adequacy requirement is met.

### F.  The Requirements of Rule 23(b)(3) Are Met

"Rule 23(b)(3) is satisfied when it is shown that 'the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'"  *Bluestem Brands*, 2019 U.S. Dist. LEXIS 56655, at *9 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254-55 (11th Cir. 2004)).  This case meets Rule 23(b)(3)'s requirements.

#### 1.  Common Questions Predominate

As previously discussed, this Action raises numerous questions of law and fact

21

common to the Settlement Class.  The core liability issues here—such as falsity, materiality and loss causation—are issues whose proof can be made on a class-wide basis, and these common issues predominate over any individual issues.  Indeed, as the Supreme Court has noted, the predominance requirement is "readily met" in securities fraud cases.  *Amchem*, 521 U.S. at 625; *see also Bankrate*, 2016 U.S. Dist. LEXIS 115071, at \*9.

"Whether common questions of law or fact predominate in a securities fraud action often turns on the element of reliance.  Where plaintiffs are entitled to the presumption of reliance, common questions will predominate."  *Bankrate*, 2016 U.S. Dist. LEXIS 115071, at \*10 (quotation and citation omitted).  While Defendants have previously challenged whether Lead Plaintiff can plead or rely on the presumption of reliance on behalf of the Class, and thus whether this Action can properly be maintained as a class action (*see* ECF 19), Lead Plaintiff's allegations focus on the omission of material facts rendering Defendants' statements misleading.  As the Supreme Court acknowledged in its landmark *Affiliated Ute* decision, one cannot rely on something that was never disclosed.  Accordingly, a "presumption of reliance" is available when something should have been, but was not, disclosed:

> All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision. Th[e] obligation to disclose and th[e] withholding of a material fact establish the requisite element of [reliance].

406 U.S. at 153-54 (internal citations omitted); *see also Katz v. MRT Holdings*, 2008 U.S. Dist. LEXIS 114421, at \*13-14 (S.D. Fla. Oct. 24, 2008) (finding that the *Affiliated Ute* exception applied in case that primarily concerned the defendants' alleged failure to disclose an ongoing fraud).  Because the *Affiliated Ute* presumption of reliance applies, this Action does not involve individual questions of reliance that might predominate over common issues.  Instead, the issue

22

of reliance can be resolved in one stroke, with proof made on a class-wide basis.  With regard to this issue and other core liability issues, the proof Lead Plaintiff would present to establish its claims would also prove other Settlement Class Members' claims.  Thus, common issues predominate over any individualized issues.

Further, the manageability concerns that could result from individual issues of reliance are not necessarily relevant to the predominance analysis of class certification in connection with a settlement.  "A litigation class's failure to qualify for the fraud-on-the-market presumption typically renders trial unmanageable, precluding a finding that common issues predominate.  However,…'[b]y contrast, with a settlement class, the manageability concerns posed by numerous individual questions of reliance disappear.'"  *Stanaford v. Genovese*, 2015 U.S. Dist. LEXIS 110316, at \*14 (S.D. Fla. Aug. 17, 2015) (quoting and adopting *In re Am. Intern. Grp. Inc. Sec. Litig.*, 689 F.3d 229, 241 (2d Cir. 2014)); *see also id.* ("the predominance test is an easier standard to meet in the settlement context, while other requirements of Rule 23 require 'heightened scrutiny'" to protect absent class members from "unwarranted and overbroad class definitions.").

### 2. A Class Action is a Superior Method of Adjudicating Lead Plaintiff's Claims

A non-exhaustive list of relevant factors to determine the superiority of a class action include:  (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Bankrate*, 2016 U.S. Dist. LEXIS 115071, at \*11-12.  The class action device is the superior method for resolving the claims in this Action.  Courts have long recognized that the class

23

action is not only a superior method, but also may be the only feasible method, to fairly and efficiently adjudicate a controversy involving a large number of purchasers of securities. *See In re BellSouth Corp. Sec. Litig.*, 2006 WL 870362, at *4 (N.D. Ga. Apr. 3, 2006) (finding the class action to be superior method for litigating a federal securities action because "prosecution by individual shareholders would be prohibitive from both the individual plaintiff's and the court's perspectives"). "Due to the number of potential plaintiffs who purchased stock within the Settlement Period, separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Bankrate*, 2016 U.S. Dist. LEXIS 115071, at *12 (quotation and citation omitted). Lead Plaintiff is aware of only one other litigation against FCHS concerning the purchase of FCHS securities, that of Steward, who has been excluded from the Class. "Finally, due to the predominance of the claims, a class action is a more manageable means of adjudicating the numerous individual actions." *Id.*

Certification of the Settlement Class for settlement purposes is the superior method for resolving the claims of the Settlement Class. Without the settlement class device, Defendants could not obtain a class-wide release, and therefore would have had little, if any, incentive to agree to the Stipulation. Moreover, certification of the Settlement Class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner.

**G.     Lead Plaintiff Should be Appointed Class Representative, and Lead Counsel Should be Appointed Class Counsel**

All of the requirements of Rules 23 are satisfied, and this Court should preliminarily certify the Settlement Class for purposes of the Settlement. Lead Plaintiff respectfully requests that the Court, for the purposes of the Settlement, preliminarily appoint MAZ as Class Representative and appoint Wolf Popper as Class Counsel. *See, e.g., Bluestem Brands*, 2019

24

U.S. Dist. LEXIS 56655, at *10-11.[9]

**VI.    The Court Should Approve the Form, Content, and Method for Disseminating Notice to the Settlement Class**

Preliminary approval of the proposed Settlement permits notice to be given to Settlement Class Members of a hearing on final settlement approval, at which they and the Settling Parties may be heard with respect to final approval.  *See* Manual for Complex Litigation, Third, § 23.14 (West ed. 1995).  "The adequacy of class notice 'is measured by reasonableness.'"  *Bluestem Brands*, 2019 U.S. Dist. LEXIS 56655, at *11 (quoting *Faught v. Am. Home Shield*, 668 F.3d 1233, 1239 (11th Cir. 2011) (citing Rule 23(e)).  "The notice must provide the class members with 'information reasonably necessary to make a decision whether to remain a class member and be bound by the final judgment or opt out of the action.'"  *Id.* (quoting *Faught,* 668 F.3d at 1239).  Here, the proposed notice and claims administration procedures satisfy due process and provide adequate notice by providing "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

In order to limit costs expended from the Settlement Amount, Lead Plaintiff proposes to mail a Postcard Notice (Ex. 1.A-1) to all Settlement Class Members directing them to a settlement website and telephone number from which a detailed Full Notice (Ex. 1.A-2) and Claim Form (Ex. 1.A-4) will be available free of charge, either by download from the settlement website or by mail or email from the Claims Administrator.  A Summary Notice (Ex. 1.A-3) will also be published on *GlobeNewswire* or a similar wire service.

---

[9] The Court already appointed MAZ as the "Lead Plaintiff" on June 27, 2019.  ECF 35.

25

The proposed Notice program (i.e., the Postcard, Full and Summary Notices) provides Settlement Class Members with information in a fair, concise, and neutral way regarding: (1) the nature of the Action; (2) a summary of the substance of the Settlement terms; (3) the Settlement Class definition; (4) the existence of, and their rights with respect to, the Action, including instructions on how persons can exclude themselves from the Settlement Class, submit a Claim Form, object to the Settlement, and request to appear at the Final Approval Hearing; (5) the Final Approval Hearing date; (6) a statement that the Court has preliminarily approved the Settlement; (7) a statement that Settlement Class Members will release the Settled Claims unless they properly exclude themselves from the Settlement; (8) Plaintiff's Counsel's intended request for an award of Attorneys' Fees and Expenses, including the maximum amounts to be requested; (9) Lead Plaintiff's intended request for the Plaintiff PSLRA Award; (10) that taxes, attorneys' fees, costs and expenses, and notice and administration costs will be deducted from the Settlement Amount before payment to Settlement Class Members; and (11) instructions for obtaining a copy of the Notice and Claim Form.[10]  Under Rule 23(c)(2), notice by mail provides the necessary "individual notice to all members." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974).

---

[10] The Parties have agreed to amend the proposed Full Notice in the following non-substantive way (with additions underlined) in order to provide Settlement Class Members with the additional information that they may obtain a copy of FCHS's chapter 11 plan and disclosure statement from FCHS's bankruptcy counsel:

Copies of the Bar Date Order and FCHS' chapter 11 plan and disclosure statement may be obtained free of charge by contacting bankruptcy counsel for FCHS: Akerman LLP, Attn: Esther McKean, 420 S. Orange Ave., Suite 1200, Orlando, FL 32801, esther.mckean@akerman.com, 407-423-4000. Copies of the Bar Date Order and FCHS' chapter 11 plan and disclosure statement are also available for inspection during regular business hours at the office of the Clerk at the address given above. In addition, copies of the Bar Date Order and FCHS' chapter 11 plan and disclosure statement may be viewed on the Internet at the Bankruptcy Court's website (http://www.flmb.uscourts.gov/) (by following the directions for accessing the ECF system on such website).

The proposed Full Notice attached as Exhibit I.A-2 includes this additional language.

The proposed Full Notice (Ex. 1.A-2) provides more detailed information concerning the topics in the Postcard Notice, including the formula used to calculate payments to Settlement Class Members, and a description of the proposed plan of allocation.  The proposed Full Notice provides that objections may be mailed, in writing, and provides the appropriate address to which Settlement Class Members should send those objections.  It also provides information on how and where to submit requests for exclusion from the Settlement Class. The proposed Full Notice also informs Settlement Class Members of their right to appear at the Final Approval Hearing in person or through an attorney.

The proposed Full Notice also includes the information required by the PSLRA, including (1) the average per share amount of the Settlement Amount expected to be distributed to the Settlement Class, (2) the amount of Attorneys' Fees and Expenses to be requested, in total and on an average per-share basis, and a brief explanation supporting the fees and costs sought; (3) contact information for Lead Counsel; and (4) "a brief statement explaining the reasons why the parties are proposing the settlement." *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F)

The proposed Summary Notice (Ex. 1.A-4) also provides essential information about the Action and the Settlement, including an abbreviated description of the Action and the proposed Settlement and explains how to obtain a Full Notice and Claim Form, free of charge, from the Claim's Administrator.

Lead Plaintiff proposes that the notice and claims process be administered by A.B. DATA, LTD. ("A.B. Data" or the "Claims Administrator"), an independent settlement and claims administrator selected by Lead Plaintiff after a competitive bidding process.  If the Court preliminarily approves the Settlement, FCHS will provide the contact information of

potential Settlement Class Members to the Claims Administrator, to the extent FCHS has such information, for the purpose of identifying and giving notice to the Settlement Class, and the Claims Administrator will mail the Postcard Notice to all identified potential Settlement Class Members. *See* Ex. 1 (Stipulation) ¶ K.1. The Claims Administrator will also use reasonable efforts to give notice to brokerage firms and other nominees who purchased FCHS stock during the Class Period on behalf of other beneficial owners. These nominee purchasers will either forward the Postcard Notice or provide the names and addresses of the beneficial owners to the Claims Administrator, which will then promptly send the Postcard Notice by first class mail to such identified beneficial owners. The Claims Administrator will also cause the Summary Notice to be published on *GlobeNewswire* or a similar wire service. *Id.* The Claims Administrator will also publish the Notice and other materials on the settlement website. *Id.*

Courts in this Circuit have found comparable notice programs, combining individual notice supplemented with publication notice, sufficient to provide notice to Class Members. *See, e.g.*, *Mahoney v. TT of Pine Ridge, Inc.*, 2017 WL 9472860, at *3 (S.D. Fla. Nov. 20, 2017) (finding that notice to the class was reasonable and the best notice practicable under the circumstances where notice was accomplished through postcard notices, publication notice, and a settlement website); *Gevaerts v. TD Bank*, 2015 WL 6751061, at *4-5 (S.D. Fla. Nov. 5, 2015) (approving notice program that provided notice through direct mail postcard notice to identifiable class members, publication notice, and a more detailed "long form" notice available on a settlement website).

In sum, the means and forms of notice proposed here constitute valid and sufficient notice to the Settlement Class and the best notice practicable under the circumstances, and

comply fully with the requirements of Rule 23 and due process.  *See., e.g.*, *Bluestem Brands*, 2019 U.S. Dist. LEXIS 56655, at *11 (Rule 23(c)(2)(B) "requires the notice to state in plain, easily understood language the nature of the action, the definition of the certified class, the class claims and issues, class members' rights to enter an appearance through an attorney, class members' rights to exclude themselves and the time and manner for doing so, and the binding effect of a class judgment on members who are not excluded.").

A.B. Data's fees for administration of the Settlement are charged on a per-claim basis and expenses will be billed separately (including expenses for printing and mailing the Postcard Notice, publishing the Summary Notice, printing and mailing copies of the Notice, establishing and maintaining the settlement website, and establishing and operating the toll-free telephone helpline).  At this time, A.B. Data estimates that the notice and administration program will cost up to approximately $100,000 (including the cost of mailing CAFA notice). Because the fees and expenses for administering the Settlement are highly dependent on how many Postcard Notices, Full Notices, and Claim Forms are ultimately printed and mailed, the amounts that third-party record owners request as reimbursement for mailing notices, and the number of Claim Forms that are received, Lead Plaintiff and A.B. Data are not able to provide the Court with a firm cap on costs and expenses of administration at this time.  If the Settlement is approved, the Notice and Administration Costs will be paid from the Settlement Amount.

## VII.   PROPOSED SCHEDULE

Lead Plaintiff respectfully submits the following proposed schedule for the Court's review and approval, which summarizes the deadlines to be set in the proposed Preliminary Approval Order.

| Event | Date |
|---|---|
| Last day to complete mailing of Notice and Claim Form (the "Notice Date") | No later than 21 calendar days after entry of Preliminary Approval Order |
| Last day to publish Summary Notice | No later than 10 calendar days after the Notice Date |
| Last day for filing and serving papers in support of final approval of the proposed Settlement, and the applications for Attorneys' Fees and Expenses and the Plaintiff PSLRA Award | No later than 35 calendar days prior to the Final Approval Hearing |
| Last day for potential Settlement Class Members to request exclusion from the Settlement Class | Postmarked or received no later than 81 calendar days after entry of the Preliminary Approval Order |
| Last day for Settlement Class Members to submit comments in support of or in opposition to the proposed Settlement and the applications for Attorneys' Fees and Expenses and the Plaintiff PSLRA Award | Postmarked or received no later than 21 calendar days prior to the Final Approval Hearing |
| Last day for filing and serving papers in response to objections to the proposed Settlement, and the applications for Attorneys' Fees and Expenses and the Plaintiff PSLRA Award | No later than 7 calendar days prior to the Final Approval Hearing |
| Final Approval Hearing | At the Court's earliest convenience at least 110 days after entry of the Preliminary Approval Order Preliminary Approval. |
| Last day for Settlement Class Members to submit a Claim Form | Postmarked or received no later than 110 days after the Notice Date |

## VIII.   CONCLUSION

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter

the accompanying proposed Preliminary Approval Order.

## IX.   CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)

Pursuant to Local Rule 3.01(g), I hereby certify that on December 23-28, 2020, counsel

for MAZ conferred by email with counsel to Defendants.  On December 23, 2020, counsel for

FCHS informed counsel to MAZ that FCHS does not oppose this motion.  On December 28,

2020, counsel for Romandetti informed counsel to MAZ that he does not oppose this motion.

Dated: December 28, 2020                    Respectfully submitted,

                                            By**:** */s/ Joshua W. Ruthizer*
                                            Joshua W. Ruthizer
                                            Fla. Bar No. 92528
Ronald J. Cohen                             Chet B. Waldman
Fla. Bar No. 235504                         Granted Special Admission to Practice
RICE PUGATCH ROBINSON                       WOLF POPPER LLP
STORFER & COHEN, PLLC                       845 Third Avenue
101 NE 3rd Ave., Suite 1800                 New York, NY 10022
Fort Lauderdale, Florida 33301              Tel:  212-759-4600
Tel:  954-462-8000                          Fax: 212-486-2093
Fax: 954-462-4300                           jruthizer@wolfpopper.com
rcohen@rprslaw.com                          cwaldman@wolfpopper.com

*Local Counsel for MAZ Partners LP*         *Attorneys for Lead Plaintiff MAZ Partners LP*
*and the Proposed Class*                    *and Lead Counsel for the Proposed Class*

31

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 28, 2020, I filed the foregoing with the Court

via CM/ECF, which will serve a true and correct copy of the foregoing via email service on

counsel of record in this matter:

Fritz J. Scheller, Esq.
fscheller@flusalaw.com
FRITZ SCHELLER, PL
200 E. Robinson Street
Orlando, FL 32801
Tel: 407.792.1285
Fax: 407.513.4146

*Attorneys for Defendant Christian Romandetti, Sr.*

Brian P. Miller, Esq.
Brian.Miller@akerman.com
Samantha J. Kavanaugh, Esq.
Samantha.Kavanaugh@akerman.com
Ross E. Linzer, Esq.
Ross.Linzer@akerman.com
AKERMAN LLP
Three Brickell City Centre
98 SE 7th Street, Suite 1100
Miami, FL 33130
Tel: 305.374.5600
Fax: 305.374.5095

*Attorneys for Defendant First Choice Healthcare Solutions, Inc.*

*/s/ Joshua W. Ruthizer*
Joshua W. Ruthizer