**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MAZ PARTNERS LP, Individually and On
Behalf of All Others Similarly Situated,

            Plaintiff,

v.

FIRST CHOICE HEALTHCARE
SOLUTIONS, INC. and CHRISTIAN
ROMANDETTI, SR.,

            Defendants.

No. 6:19-cv-00619-PGB-LRH

### LEAD PLAINTIFF MAZ PARTNERS LP'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS, AND INCORPORATED MEMORANDUM OF LAW

Lead Plaintiff MAZ Partners LP ("MAZ" or "Lead Plaintiff"), on behalf of itself and all Settlement Class Members, hereby moves this Court pursuant to Federal Rule of Civil Procedure 23 and Local Rule 3.01 for (1) final approval of the Stipulation and Agreement of Settlement (ECF No. 64-1, "Stipulation") resolving the Action for a cash payment of $1 million for the benefit of the Settlement Class (the "Settlement"); (2) approval of the proposed "Plan of Allocation" of the proceeds of the Settlement; and (3) final certification of the Settlement Class.[1]

---

[1] Lead Plaintiff respectfully refers the Court to the accompanying Declaration of Chet B. Waldman in Support of Lead Plaintiff MAZ Partners LP's Motions for (1) Final Approval of Class Action Settlement and Plan of Allocation, and Final Certification of Settlement Class; and (2) An Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Waldman Decl."), filed herewith, for a detailed description of the case and the Settlement. Unless otherwise indicated, all capitalized terms have the same meanings as in the Stipulation.

## INCORPORATED MEMORANDUM OF LAW[2]

## I.    INTRODUCTION

The $1 million Settlement Amount represents approximately 20% of the Settlement Class's maximum estimated aggregate damages, an outstanding result given that the average securities class action settlement represents less than 10% of estimated damages. More impressive is that the $1 million Settlement Amount equates to approximately 38% of FCHS's market capitalization of $2.64 million on June 12, 2020, the last trading day prior to FCHS's filing its Chapter 11 voluntary bankruptcy petition in the United States Bankruptcy Court for the Middle District of Florida ("Bankruptcy Court") on June 15, 2020 (*In re: First Choice Healthcare Sols.*, No. 6:20-bk-3344-KSJ ("Bankruptcy Proceeding")). Waldman Decl. ¶ 8.

The Settlement was achieved after more than a year of litigation, following well-informed and hard-fought arm's length negotiations by the Parties and experienced counsel, aided by an experienced mediator. Lead Plaintiff initially filed its Complaint on March 29, 2019. ECF No. 1. Since then, Lead Plaintiff has successfully opposed Defendants' motions to dismiss. Magistrate Judge Hoffman's Report and Recommendation rejected the vast majority of Defendants' arguments, and recommended that the Court deny Defendants' motions to dismiss," (ECF Nos. 37 at 39), concluding that (a) "MAZ has sufficiently pleaded that Defendants' alleged omission concerning the [stock manipulation] scheme

---

[2] Unless otherwise indicated, all emphasis has been added, and all internal citations and quotation marks have been omitted.

was material" (*id.* at 18); (b) "the [C]omplaint contains adequate allegations demonstrating that [FCHS] had a duty to disclose the alleged market manipulation scheme based on its alleged materially misleading statements" (*id.* at 30); and (c) the Complaint sufficiently alleged that the Defendants' Sarbanes-Oxley Act ("SOX") certifications and risk factors in FCHS's Form 10-Ks concerning volatility and fluctuations in FCHS's stock price were misleading (*id.* at 21-26).[3] Lead Plaintiff also successfully opposed FCHS's and Romandetti's objections to Judge Hoffman's Report and Recommendation (ECF Nos. 39 and 41), securing the decisive denial of Defendants' motions to dismiss (ECF No. 45). Moreover, the Parties participated in a vigorous mediation session with the assistance of experienced mediator Simone K. Lelchuk of Melnick ADR LLC and JAMS, as well as multiple follow-up arms-length negotiations. Lead Plaintiff and its counsel also navigated the intricacies of Defendants' aforementioned Bankruptcy Proceeding. The Settlement marks the laudable result of diligent advocacy by Lead Plaintiff and Lead Counsel on behalf of the Settlement Class.

Aware of the risks of continued litigation efforts, Lead Plaintiff respectfully submits that the Settlement appropriately mitigates the significant risk of a smaller recovery—*or no recovery*— if the Action continued.  Lead Plaintiff maintains that its claims are meritorious. However, while confident in its ability to secure class certification on behalf of the Settlement Class and subsequently succeed at trial,

---

[3] Judge Hoffman also found that certain statements alleged in the Complaint to be misleading were not properly alleged to be misleading or were not actionable.  ECF No. 27 at 19-20, 26-29.

Lead Plaintiff recognizes that the litigation would be highly contested by Defendants.  Furthermore, FCHS filed its Bankruptcy Proceeding on June 15, 2020, critically threatening the resolution of this Action and any recovery for the Settlement Class. But for the Bankruptcy Court's November 25, 2020 Order authorizing FCHS to enter into the Settlement and lifting the automatic stay of this Action solely to allow Defendants "to seek approval of the Settlement Agreement and to perform thereunder consistent with its terms and the applicable rules," the Settlement Class Members likely would have recovered little or nothing for their investment in FCHS stock. *See* ECF No. 61. Lead Plaintiff and Lead Counsel believe that the Settlement, which secures a significant and immediate recovery for the Settlement Class, is in the best interest of the Settlement Class Members and should be granted final approval by the Court.

## II.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

Under Federal Rule of Civil Procedure 23(e), "the claims, issues, or defenses of a...class proposed to be certified for purposes of settlement – may be settled, voluntarily dismissed, or compromised only with the court's approval."

Within the Eleventh Circuit, "[p]ublic and judicial policy both strongly favor pretrial settlement of litigation. This policy is particularly compelling in class actions and other complex litigation." *M.D. v. Centene Corp.,* No. 1:18-cv-22372-JB, 2020 U.S. Dist. LEXIS 104495, at *11 (S.D. Fla. Jun. 12, 2020) (quoting *Lipuma v. Am. Express Co.,* 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005)). "[T]hey are a means of amicably resolving doubts and uncertainties and preventing

lawsuits." *Shiyang Huang v. Equifax Inc. (In re Equifax Customer Data Sec. Breach Litig.)*, No. 20-10249, 2021 U.S. App. LEXIS 16599, at *6 (11th Cir. June 3, 2021). "Because this Circuit expresses a strong preference towards settlement of class litigation, if compliant with the requirements of Rule 23, courts should approve a class settlement if the terms are 'fair, adequate, reasonable, and not the product of collusion.'" *Cook v. Gov't Emps. Ins. Co.,* Nos. 6:17-cv-891-ORL-40KRS, 6:17-cv-1755-PGB-40DCI, 2020 U.S. Dist. LEXIS 111956, at *16 (M.D. Fla. Jun. 22, 2020) (Byron, J.) (quoting *Leverso v. SouthTrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994)). Ultimately, "[t]he Court must guard against "the potential for a collusive settlement, a sellout of a highly meritorious claim, or a settlement that ignores the interests of minority class members. . . ." *In re Immucor Secs. Litig.*, No. 1:05-cv-2276-WSD, 2007 U.S. Dist. LEXIS 111135, at *4-5 (N.D. Ga. Sep. 26, 2007).

When considering approval of a class action settlement, Rule 23(e)(2) requires the Court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*See Cook*, 2020 U.S. Dist. LEXIS 111956, at *16; *In re Health Ins. Innovations Secs. Litig.*, No. 8:17-cv-2186-TPB-SPF, 2021 U.S. Dist. LEXIS 61051, at *8 (M.D. Fla. Mar. 23, 2021).

The Eleventh Circuit "has also instructed district courts to consider several additional factors called the *Bennett* factors:"

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Equifax*, 2021 U.S. App. LEXIS 16599, at *44 (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). "In weighing these factors, the Court may 'rely upon the judgment of experienced counsel for the parties,' and 'absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'" *Williams v. New Penn Fin., LLC*, No. 3:17-cv-570-J-25JRK, 2019 U.S. Dist. LEXIS 106268, at *7 (M.D. Fla. May 8, 2019) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)*); Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012); *Centene Corp.*, 2020 U.S. Dist. LEXIS 104495, at *12.

Here, Lead Counsel, Wolf Popper LLP, is qualified and competent, and demonstrably capable of vigorously prosecuting this Action. Experienced in the arena of complex class actions and armed with their knowledge of securities litigation, Lead Counsel's determination and diligence resulted in a settlement on

terms favorable to the Settlement Class.  Waldman Decl. ¶¶ 13, 126-132 and Exs. 3 (Wolf Popper Resume) and 2.A (Lorium PLLC Resume).

All of the Rule 23(e) and *Bennett* factors support the finding that the Settlement is fair, reasonable, and adequate to Settlement Class Members.  The Court should therefore finally approved the Settlement.

### A.  The Stage of Proceedings at Which the Settlement was Reached Demonstrates Adequate Representation of the Settlement Class and Supports Final Approval

In determining whether the class representatives and class counsel have adequately represented the class, as required by Rule 23(e)(2)(A), "[t]he Advisory Committee explained that this analysis is distinct from Rule 23(a)(4) and is meant to address whether the class representatives possessed sufficient information and knowledge of the claims, issues, and defenses prior to negotiating and settling the claims." *Cook*, 2020 U.S. Dist. LEXIS 111956, at *18.  This Court and other courts have found that the "Rule 23(e)(2)(A) 'adequacy' requirement overlaps with the preexisting *Bennett* 'stage of proceedings' factor."  *Cook*, 2020 U.S. Dist. LEXIS 111956, at *18; *see also Roth v. Geico Gen. Ins. Co.,* No. 16-cv-62942WPD; No. 18-cv-61361-WPD, 2021 U.S. Dist. LEXIS 23105, at *19 (S.D. Fla. Feb. 8, 2021) ("the question of adequate representation concerns whether the class representatives secured the information and knowledge of the relevant claims and defenses necessary to make an intelligent assessment of the pros and cons of potential settlement terms."); *Rigney v. Livingston Fin., LLC,* No. 6:12-cv-617-Orl-37TBS, 2014 U.S. Dist. LEXIS 196426, at *21 (M.D. Fla. Mar. 3, 2014) ("the Court evaluates

7

the stage of the proceedings at the time of the settlement, which determines whether plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation."); *Rodriguez v. Mears Destination Servs.,* No. 6:17-cv-1113-ORL-40DCI, 2018 U.S. Dist. LEXIS 229289, at *11 (M.D. Fla. Sep. 4, 2018) *(*finding "that counsel for both Parties aggressively and professionally pursued their claims and defenses in this case for nearly a year" supported final approval of the Settlement*.)*

Here, Lead Plaintiff entered the Settlement only after Lead Counsel's zealous prosecution of the Action.  By (a) conducting a factual investigation, buttressed by governmental investigations and findings; (b) drafting the Complaint, which was subject to the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (c) consulting with relevant experts, including a damages expert which gave Lead Plaintiff an awareness of the maximum potential recoverable damages; (d) successfully opposing Defendants' motions to dismiss and Defendants' objections to Judge Hoffman's Report and Recommendation that those motions to dismiss be denied; and (e) preparing for, and participating in, a mediation session before a professional mediator after preparing and exchanging comprehensive mediation statements detailing the Parties' respective views of the strengths and weaknesses of each one's case, Lead Plaintiff and Lead Counsel amassed a meaningful and all-encompassing understanding of the claims, issues, and defenses fundamental to this Action. Only then did Lead Counsel pursue the Settlement on behalf of the Settlement Class.

Therefore, the requirements of Rule 23(e)(2)(A) (the adequacy of the class representatives and class counsel) and the *Bennett* "stage of proceedings" factors support final approval of the Settlement.

## B. The Proposed Settlement Was Negotiated at Arm's Length

To evaluate whether the settlement was negotiated in good faith as required by Rule 23(e)(2)(B),

> the Court examines whether the settlement was achieved in good faith through arms-length negotiations, whether it was the product of collusion between the parties and/or their attorneys, and whether there was any evidence of unethical behavior or want of skill or lack of zeal on the part of class counsel.

*Centene Corp.,* 2020 U.S. Dist. LEXIS 104495, at *14; *Cook*, 2020 U.S. Dist. LEXIS 111956, at *17-18 (where the Court "directly observed the extensive and contested nature of the litigation, with significant and complex issues and positions being briefed and argued ... further demonstrate[d] a lack of collusion."). Moreover, courts may appropriately defer to the opinion of experienced and informed counsel in evaluating a proposed class action settlement. *See, e.g., Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677-CIV-MARTINEZ/BANDSTRA, 2008 U.S. Dist. LEXIS 125370, at *28 (S.D. Fla. Jan. 31, 2008) ("Counsel's conclusions that the [s]ettlement is fair, adequate and reasonable provides strong evidence that the settlement merits the Court's approval. Here, the Court gives 'great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation.'").

Here, the Parties' settlement negotiations were not only at arm's length, but facilitated by an experienced mediator, Simone K. Lelchuk of Melnick ADR LLC and JAMS, well known, experienced mediation firms.  After vigorously litigating Defendants' motions to dismiss, the Parties engaged in substantial mediation proceedings. At Ms. Lelchuk's direction, the Parties submitted comprehensive mediation statements and reply mediation statements, preceding an all-day mediation session concerning the perceived strengths and weaknesses of their respective cases.  Mediation and negotiations culminated in a Memorandum of Understanding and Stipulation that Lead Counsel considers to be in the best interests of the Settlement Class.  *See, Roth,* 2021 U.S. Dist. LEXIS 23105, at *21 ("[s]ettlements that are achieved with the assistance and under the supervision of a neutral mediation are presumed to have occurred at arm's length and to be free from collusion."); *New Penn Fin.,* 2019 U.S. Dist. LEXIS 106268, at *10 (noting that "the parties' settlement negotiations were overseen by Terrence M. White, an experienced mediator they selected, and occurred after substantial discovery," reflected "a good faith, arm's-length bargaining process.").

In addition, the Stipulation contains a cy-pres provision allowing that:

> If there is a balance remaining in the Net Settlement Fund and it is not economically feasible to distribute the balance to Authorized Claimants, then, Plaintiff may file a motion with the Court, with notice to all Parties, seeking permission to contribute any balance remaining in the Net Settlement Fund to one or more non-sectarian, not-for-profit organization(s) exempt under Section 501(c)(3) of the Internal Revenue Code designated by Class Counsel.

ECF No. 64-1 ¶ D.15.  This provision further evidences the good-faith negotiation

of the Parties and the absence of collusion. *See In re Health Ins. Innovations,* 2021

U.S. Dist. LEXIS 61051, at *22 ("one indication of a lack of fraud or collusion is the

lack of a reversion of settlement funds back to Defendants.")

The absence of collusion and the Parties' arm's-length negotiation (Rule

23(e)(2)(B)) further support final approval of the Settlement.

### C.  Adequacy of Relief Provided by the Settlement

Under Rule 23(e)(2)(C), the Court may approve the Settlement only after

considering whether

> the relief provided for the class is adequate, taking into account: (i) the
> costs, risks, and delay of trial and appeal; (ii) the effectiveness of any
> proposed method of distributing relief to the class, including the method of
> processing class-member claims; (iii) the terms of any proposed award of
> attorney's fees, including timing of payment; and (iv) any agreement
> required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C).

> These factors are analogous to several of the *Bennett* factors, which require
> courts to consider the likelihood of success and range of possible recovery
> for the class at trial, measured against the trial's anticipated complexity,
> cost, and duration. A plaintiff's likelihood of success at trial is weighed
> against the amount and form of relief contained in the settlement. Similarly,
> consideration of the possible recovery includes an evaluation of the
> settlement in its entirety.

*New Penn Fin.* 2019 U.S. Dist. LEXIS 106268, at *11; *see also Cook,* 2020 U.S.

Dist. LEXIS 111956, at *19-20.  "[A] district court may also rely upon the judgment

of experienced counsel for the parties." *Greco v. Ginn Dev. Co., LLC*, 635 F. App'x

628, 632 (11th Cir. 2015). Here, Lead Counsel steadfastly believes that the

Settlement is not only fair and equitable to the Class, but an excellent result under

the circumstances, and in the best interests of the Settlement Class Members. Waldman Decl. ¶ 163.  Accordingly, the Court should afford "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Numismatic Guar.*, 2008 U.S. Dist. LEXIS 125370, at *28.

### 1.  Costs, Risks, and Delay of Trial and Appeal

The Settlement provides the Settlement Class with an immediate cash benefit of $1 million, representing not only a substantial portion of their recoverable damages, but a high percentage of maximum damages for a securities class action. Continued litigation would have subjected Settlement Class Members to numerous risks that could have precluded securing any recovery at all. Waldman Decl. ¶ 84.  In light thereof, Lead Plaintiff respectfully submits that this is an exceptional result that further supports the fairness, reasonableness, and adequacy of the Settlement, especially given that Lead Plaintiff still faced significant hurdles in prosecuting this Action and collecting any judgment. *Id.* ¶ 89.

### 2.  The Likelihood of Success at Trial

Essentially, the Court has to determine "whether class members' potential recovery if ultimately successful on the merits, taking into account the risks of losing outright, is consistent with the relief provided by the proposed settlement agreement." *Roth*, 2021 U.S. Dist. LEXIS 23105, at *22.

Lead Plaintiff and the Settlement Class Members would have faced numerous risks that could have precluded securing any recovery at all despite the merit and validity of Lead Plaintiff's claims. From the outset, Defendants have

continually denied virtually each and every claim and allegation made by Plaintiff in the Action and any wrongdoing whatsoever. Generally, the Settlement allows the Settlement Class to circumvent the inevitable complexity, expense, and unpredictability of continued litigation.

The intricacies of securities class actions, such as this case, have readily been recognized as complicating one's likelihood of success at trial. *See In re Health Ins. Innovations*, 2021 U.S. Dist. LEXIS 61051, at *23 (given that "the complexity of securities class action litigation is notably difficult and notoriously uncertain," the Court found that it was "not certain that Lead Plaintiff would prevail at trial."); *Thorpe v. Walter Inv. Mgmt. Corp.*, No. 1:14-cv-20880-UU, 2016 U.S. Dist. LEXIS 144133, at *9 (S.D. Fla. Oct. 17, 2016) ("[a] securities case, by its very nature, is a complex animal.").

Additionally, Lead Plaintiff would have to prevail on its motion for class certification and prove that the Section 10(b) and Rule 10b-5 element of "reliance" on the misleading statements could be established for all members of the Settlement Class based on common facts and evidence. This would require proving that FCHS common stock traded in an efficient market such that a presumption of reliance applies, or that the presumption of reliance on omissions, as set forth in *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128 (1972), applies. Defendants have, and would, vehemently oppose Lead Plaintiff's reliance arguments.  Waldman Decl. ¶ 85; *see* ECF Nos. 13 at 19-22, 39 at 16-21.

Likewise, without the Settlement, Defendants would have certainly moved the Court for summary judgment before an eventual trial, and pursued appeals, during which Defendants would likely seek to prove that, among other things, the stock manipulation scheme was not material, and that Romandetti acted on his own behalf, not on behalf of FCHS.

Lastly, FCHS's pending Bankruptcy Proceeding would have undoubtedly posed a monumental threat to the Settlement Class's ability to obtain a future recovery on its member's claims.

Though confident in the merits of the case, Lead Plaintiff maintains that the Settlement secures a substantial and immediate recovery for the Settlement Class in lieu of the risks and costs of a lengthy and uncertain litigation, trial, and appeals, as well as the recoverability of any judgment obtained in their favor. Accordingly, final approval thereof is further warranted.

### 3. The Range of Possible Recovery and the Point On or Below the Range of Possible Recovery at Which a Settlement is Fair, Adequate and Reasonable.

"The second and third considerations of the *Bennett* test are easily combined." *Burrows v. Purchasing Power LLC*, No. 1:12-CV-22800-UNGARO/TORRES, 2013 U.S. Dist. LEXIS 189397, at *14 (S.D. Fla. Oct. 4, 2013). Both require that the Court consider "the range of possible recovery and the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable." *Id.* at *13-14. In so doing, the courts have found that "the relevant inquiry is whether the proposed Settlement affords relief that "falls within th[e]

14

range of reasonableness, [and] not whether it is the most favorable possible result of litigation." *Burrow v. Forjas Taurus S.A.*, No. 16-21606-Civ-TORRES, 2019 U.S. Dist. LEXIS 151734, at \*26 (S.D. Fla. Sep. 6, 2019). "Under both Rule 23 and *Bennett*, courts should estimate the potential recovery if ultimately successful versus the risks of losing outright, and determine whether the relief provided comports therewith." *Cook*, 2020 U.S. Dist. LEXIS 111956, at \*20.

This Settlement is an excellent result for Settlement Class Members considering the surrounding circumstances. The Settlement provides for a monetary recovery of $1 million in cash for the Settlement Class. Michael Marek, Lead Plaintiff's damages consultant, having used accepted methodologies, estimated that damages for the Settlement Class's claims are approximately $4.877 million. Waldman Decl. ¶ 135. The Settlement represents approximately 20% of the Class's estimated damages, well above the average recovery in class action securities litigation. *See, e.g., Cabot E. Broward 2 LLC v. Cabot,* No. 16-61218-CIV-DIMITROULEAS/SNOW, 2018 U.S. Dist. LEXIS 192706, at \*14-15 (S.D. Fla. Nov. 9, 2018) ("The usual recovery in [securities class action settlements] is less than 10% of the class members' estimated losses.").

Of somewhat greater import is that the $1 million Settlement was secured amidst FCHS's Bankruptcy Proceeding. FCHS had a market capitalization of $2.64 million as of June 12, 2020, the last trading day before FCHS filed its bankruptcy petition. Thus, the Settlement Amount represents a remarkable 38% of FCHS's market capitalization at the time of Settlement.  A comparison of the Settlement

Amount with the Settlement Class's range of possible recovery strongly supports final approval of the Settlement.

### 4. The Complexity, Expense, and Duration of Litigation

"[T]he more complex, expensive, and time consuming the future litigation, the more beneficial the settlement becomes as a matter of efficiency to the parties and the Court." *Centene Corp.*, 2020 U.S. Dist. LEXIS 104495, at *18.

As stated above, this Action faced many challenges. First and foremost, this Action involves the customary convolutions of complex class action litigation, including, but not limited to, class certification issues, and experienced and dedicated opposing counsel. The complexity of the Action is further exacerbated by the intricate demands of securities litigation. Lead Plaintiff would have to endure the burden of proving, amongst other things, loss causation, reliance, and scienter. Moreover, going forward, the interests of the Settlement Class and the progression of this Action would be overshadowed and dominated by the Bankruptcy Proceeding.

Without the Settlement, Lead Plaintiff would undoubtedly have incurred additional and likely significant fees and expenses litigating the Action, for an unknowable period of time, through fact, deposition, and expert discovery, the inevitable motion for summary judgment, trial, post-trial motions, and appeals, which ultimately would diminish any recovery for the Settlement Class Members.

Thus, the complexity, expense, and duration of continued litigation warrant final approval of the Settlement.

### 5. Effectiveness of Any Proposed Method of Distributing Relief to the Class

In its interpretation of Rule 23(e)(2)(C)(ii), a "simple and straightforward" claims' process and forms preliminarily approved by the Court has been found to support final approval of a settlement. *Roth*, 2021 U.S. Dist. LEXIS 23105, at *25. Here, in order for a Settlement Class Member to receive its *pro rata* share of the Net Settlement Fund, the Plan of Allocation has prescribed a simple, straightforward, and unambiguous method of distributing relief, requiring eligible Settlement Class Members to (a) download a Claim Form from the Settlement website (or request a copy from the Claims Administrator), (b) complete and sign the form, and mail the form to the Claims Administrator so that it is postmarked or received by June 25, 2021; and (c) include copies of documents evidencing membership in the Settlement Class (such as trading records or account statements showing the Settlement Class Members' transactions in FCHS common stock). This is a simple and straightforward claim process, and supports final approval of the Settlement.

### 6. The Terms of Lead Counsel's Proposed Award of Attorney's Fees, Including the Timing of Payment is Fair and Reasonable

Under Rule 23(e)(2)(C)(iii), the Court's analysis of the "terms of any proposed award of attorney's fees" is distinct from the Rule 23(h) analysis...and instead "addresses if and how the attorneys' fees impacted the terms of the settlement." *Roth,* 2021 U.S. Dist. LEXIS 23105, at *28; *see also id.* ("[t]he

question under Rule 23(e)(2)(C) is whether attorneys' fees impacted the substantive Settlement Agreement terms.").[4]

Here, the Settlement is not conditioned on an award of Attorneys' Fees and Expenses by the Court, supporting the adequacy and fairness of the Settlement. *See Burrow*, 2019 U.S. Dist. LEXIS 151734, at *27-28 ("that the relief available to Settlement Class Members was not conditioned on any amount of attorneys' fees being awarded by the Court further supports the adequacy and fairness of this Settlement."). And as of June 25, 2021, no Settlement Class Member has sought to comment on or contest the request for an award of Attorneys' Fees and Expenses. Waldman Decl. Ex. 1 (A.B. Data Decl.) ¶¶ 15-16.

The terms of the proposed award of attorney's fees here warrant final approval of the Settlement.

## D. The Substance and Amount of Opposition to the Settlement

"[T]he lack of opposition to [a] Settlement Agreement is significant evidence that the settlement terms are fair, adequate, and reasonable." *Cook,* 2020 U.S. Dist. LEXIS 111956, at *26; *see also Thorpe,* 2016 U.S. Dist. LEXIS 144133, at *10-

---

[4] As set forth in more detail in Lead Plaintiff's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, Lead Plaintiff requested an award of 25% of the Gross Settlement Fund in attorneys' fees (25% of the Settlement Amount plus interest earned thereon) and reimbursement of $29,895.11 in costs and expenses. These amounts are reasonable here and are supported by Lead Plaintiff. ECF No. 64-2 ¶ 19. Furthermore, at 25% of the Gross Settlement Fund, Lead Counsel's request is within the range of awards regularly approved by courts in the Eleventh Circuit. *See, e.g., Rodriguez*, 2018 U.S. Dist. LEXIS 229289, at *12 ("[t]he fees sought in this case are less than 24% of the Total Settlement Fund, which is reasonable under the circumstances and given the work performed and result achieved."); *Centene Corp.*, 2020 U.S. Dist. LEXIS 104495, at *23 ("[g]enerally, the benchmark for a reasonable class counsel fee is considered between twenty to thirty percent, i.e., twenty five percent. This benchmark may be adjusted up or down based on the individual circumstances of each case.")

11 ("[t]he overwhelmingly positive reaction of class members to a proposed settlement is a significant factor, and the absence of objections is excellent evidence of the settlement's fairness and adequacy.") While the deadlines for submitting objections to and requests for exclusions from the Settlement are July 12, 2021 and June 28, 2021, respectively, as of June 25, 2021, the Claims Administrator has not received any objections or requests for exclusion.  Waldman Decl. Ex. 1 (A.B. Data Decl.) ¶¶ 15-16.  Likewise,

> the opinions of Class Counsel and the Named Plaintiffs, all of whom believe [a] Settlement Agreement is in the best interests of Settlement Class Members, favors approval of [a] settlement.  Class Counsel are experienced and well-regarded class action litigators, and this Court is inclined to give weight to their opinions.

*Cook,* 2020 U.S. Dist. LEXIS 111956, at *26.   Lead Plaintiff supports the Settlement.   ECF No. 64-2 (MAZ Decl.) ¶¶ 15, 18.   Lead Counsel, with all its expertise in the field of securities class action litigation, steadfastly believes the Settlement to be eminently reasonable, and in the best interests of the Settlement Class. Waldman Decl. ¶¶ 8, 89.

Accordingly, the lack of opposition and the positive response to the Settlement by Lead Plaintiff, Lead Counsel, and the Settlement Class so far further support its approval.

### E.  The Proposal Treats Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) is meant to draw attention to concerns of inequitable treatment that may include "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and

whether the scope of the release may affect class members in different ways." *New Penn Fin.,* 2019 U.S. Dist. LEXIS 106268, at *17 (citing Rule 23(e)(2)(D) Advisory Committee's Note to 2018 Amendment).

Both the Settlement and the Plan of Allocation treat all Settlement Class Members equally and equitably. Each Settlement Class Member's Recognized Loss will be calculated in accordance with the PSLRA's "per share basis" requirement (15 U.S.C. § 78u-4(a)(4)) and limitation on damages (15 U.S.C. § 78u-4(e)). Each Settlement Class Member will receive its *pro rata* share of the Net Settlement Fund, based upon their Recognized Loss. *See* Waldman Decl. ¶¶ 15, 107 and § IV, below. This factor further justifies approval of the Settlement.

## III.  CERTIFICATION OF THE SETTLEMENT CLASS SHOULD BE FINALLY GRANTED

"A class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Burrows*, 2013 U.S. Dist. LEXIS 189397, at*3.

As this Court found in preliminarily certifying the Settlement Class, Lead Plaintiff has standing and all of the elements of Rule 23(a) and Rule 23(b)(3) have been met. ECF No. 67 ¶¶ 3-5. The analysis and supporting information has not changed since the Court preliminarily certified the Settlement Class. The Settlement Class should therefore be finally approved for the exact same reasons the Court preliminarily certified the Settlement Class.

## IV. THE PLAN OF ALLOCATION SHOULD BE GRANTED FINAL APPROVAL

The standard of Rule 23 "applies with as much force to the review of the allocation agreement as it does to the review of the overall settlement between plaintiffs and defendants." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). "[N]o overall settlement can be adjudged fair or unfair unless the allocation scheme is also examined…" *Id.* at 235. A Plan of Allocation is fair, reasonable, and equitable, if the Court

> finds and concludes that the formula for the calculation of the claims of Claimants as set forth in the Plan of Allocation mailed to Settlement Class Members provides a fair and reasonable basis upon which to allocate the proceeds of the Net Settlement Fund among Settlement Class Members with due consideration having been given to administrative convenience and necessity.

*Steinberg v. Opko Health*, No. 18-23786-CV-MARTINEZ-OTAZO-REYES, 2021 U.S. Dist. LEXIS 81402, at *18 (S.D. Fla. Apr. 28, 2021).

Here, the Plan of Allocation (Waldman Decl. Ex. 1.C (Full Notice) ¶ 9), designed by Lead Counsel and its damages expert, is intended to distribute the Settlement proceeds equitably among those Settlement Class Members who suffered economic losses as a proximate result of the alleged wrongdoing. *Id.* ¶ 108. The Plan of Allocation provides that each Settlement Class Member's Recognized Loss will be calculated in accordance with the PSLRA's "per share basis" requirement (15 U.S.C. § 78u-4(a)(4)) and limitation on damages (15 U.S.C. § 78u-4(e)). A "Recognized Loss Amount" will be calculated for each Settlement Class Member's purchase or acquisition of FCHS common stock during the Class Period

that is listed on the Claim Form and for which adequate documentation is provided. Such "Recognized Loss Amounts" will be aggregated across all of an Authorized Claimant's purchases or acquisitions of FCHS common stock during the Class Period to determine the total "Recognized Loss" for each Authorized Claimant. Each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund, calculated by the Authorized Claimant's Recognized Loss as compared against the total Recognized Loss of all Authorized Claimants.

The prescribed Plan of Allocation treats all Settlement Class Members indiscriminately, equally, and equitably. As such, it is patently fair, reasonable, and adequate, and further supports the final approval of the Settlement.

## V.  NOTICE TO THE SETTLEMENT CLASS SATISFIED RULE 23 AND DUE PROCESS

Pursuant to Rule 23(e)(1)(B) and Rule 23(c)(2)(B), a Court is required to "direct notice in a reasonable manner to all class members who would be bound" by the Settlement.  Specific to a Rule 23(b)(3) class, such as in this Action, the Court must also direct the best notice that is practicable under the circumstances to the Settlement Class, clearly and concisely stating: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion;[5] (vi) the time and manner for requesting exclusion; and (vii) the binding

---

[5] Pursuant to ¶ P.2 of the Stipulation (ECF No. 64-2), and in accordance with the provisions of the Preliminary Approval Order (ECF No. 67) and the Full Notice given pursuant thereto, if

effect of a class judgment on members under Rule 23(c)(3). *See In re Health Ins. Innovations,* 2021 U.S. Dist. LEXIS 61051, at *27-28; *Cook,* 2020 U.S. Dist. LEXIS 111956, at *14-15.

"The standard for the adequacy of a settlement notice in a class action is measured by reasonableness." *See* Fed. R. Civ. P. 23(e). "We have interpreted Rule 23 to require that class members be given 'information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt out of the action,' though the notice need not include 'every material fact' or be 'overly detailed.'" *Greco,* 635 F. App'x, at 633. "Additionally, due process requires that the notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *New Penn Fin.* 2019 U.S. Dist. LEXIS 106268, at *5; *Livingston Fin.,* 2014 U.S. Dist. LEXIS 196426, at *6.

The Notices to the Settlement Class were clear, concise, unambiguous, extensive, and comprehensive, as described in Lead Plaintiff's Unopposed Motion for (1) Preliminary Approval of Class Action Settlement; (2) Preliminary

---

Settlement Class Members in an amount greater than the amounts specified in a separate Supplemental Exclusion Agreement among the Parties (the "Supplemental Exclusion Agreement"), validly request exclusion from the Settlement Class (excluding any Requests for Exclusion that may have been validly retracted), Defendants have the option to terminate the Settlement. Such agreements are permissible and common in the securities class action settlements. *See In re Health Ins. Innovations*, No. 8:17-cv-2186-T-60SPF, 2020 U.S. Dist. LEXIS 231055, at *22 (M.D. Fla. Oct. 21, 2020) (quoting 7 Newberg on Class Actions § 22:59 (5th ed.)) (it is considered an allowed practice whereby "parties write a so-called 'blow up' agreement into a settlement, whereby the defendants are authorized to walk away from the settlement if too many class members opt out; parties attempt to keep the precise level at which the exit is authorized private so as not to encourage opt outs.")

Certification of the Settlement Class; and (3) Approval of Notice to the Settlement Class. ECF No. 64. Indeed, the Court authorized the mailing and publication of the various Notices. ECF No. 67. Notices substantially in the form approved by the Court were distributed in accordance with the Court's Preliminary Approval Order. Waldman Decl. Ex. 1 (A.B. Data Decl.) ¶¶ 2-14. The Claims Administrator mailed 7,679 Postcard Notices to potential Settlement Class Members and their nominees, and the Summary Notice was published via *PR Newswire* on March 30, 2021. *Id.* ¶¶ 9, 11.

A.B. Data also established a website designated for this Action, www.firstchoicesecuritieslitigation.com, comprised of pertinent information regarding the Action and downloadable copies of the Full Notice; the Claim Form; the Stipulation; Preliminary Approval Order; and other relevant Court filings, all as ordered by the Court. *Id.* ¶ 13. As of June 25, 2021, the Full Notice has been downloaded 296 times and the Claim Form has been downloaded 436 times.

The Postcard Notice similarly informed potential Class Members Claim Forms are to be received or postmarked by June 25, 2021, and directed Settlement Class Members to the Settlement website. As of June 25, 2021, A.B. Data has received 93 Claim Form submissions. *Id.* ¶ 17. A.B. Data will provide a supplemental declaration prior to the Settlement Hearing and will report on Claim Forms that were postmarked timely but received after execution of its June 25 declaration. *Id.*

The success and efficacy of Lead Plaintiff and Plaintiff's Counsel's efforts to serve Notice of the Settlement on Settlement Class Members warrants final approval of the Stipulation.

## VI.    CONCLUSION

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant its motion and enter the accompanying proposed Final Judgement and Order of Dismissal With Prejudice and proposed Order Approving Plan of Allocation of Net Settlement Fund.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)

Pursuant to Local Rule 3.01(g), counsel for Lead Plaintiff certifies that between June 24 and 28, 2021, counsel for Lead Plaintiff conferred by email with counsel to Defendants.  Defendants support final approval of the Settlement and take no position with respect to the Court's approval of the Plan of Allocation.

Dated: June 28, 2021                    Respectfully submitted,

By**:** */s/ Joshua W. Ruthizer*
Joshua W. Ruthizer
Fla. Bar No. 92528

Ronald J. Cohen                         Chet B. Waldman
Fla. Bar No. 235504                     **Granted Special Admission to Practice**
LORIUM PLLC                             WOLF POPPER LLP
101 NE 3rd Ave., Suite 1800             845 Third Avenue
Fort Lauderdale, Florida 33301          New York, NY 10022
Tel:  954-462-8000                      Tel:  212-759-4600
Fax: 954-462-4300                       Fax: 212-486-2093
rcohen@loriumlaw.com                    jruthizer@wolfpopper.com
                                        cwaldman@wolfpopper.com

*Local Counsel for MAZ Partners LP*
*and the Settlement Class*               *Attorneys for Lead Plaintiff MAZ*
                                         *Partners LP and Lead Counsel for the*
                                         *Settlement Class*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 28, 2021, I filed the foregoing with the Court via CM/ECF, which will serve a true and correct copy of the foregoing via email service on counsel of record in this matter:

Fritz J. Scheller, Esq.
fscheller@flusalaw.com
FRITZ SCHELLER, PL
200 E. Robinson Street
Orlando, FL 32801
Tel: 407.792.1285
Fax: 407.513.4146

*Attorneys for Defendant Christian Romandetti, Sr.*

Brian P. Miller, Esq.
Brian.Miller@akerman.com
Samantha J. Kavanaugh, Esq.
Samantha.Kavanaugh@akerman.com
Ross E. Linzer, Esq.
Ross.Linzer@akerman.com
AKERMAN LLP
Three Brickell City Centre
98 SE 7th Street, Suite 1100
Miami, FL 33130
Tel: 305.374.5600
Fax: 305.374.5095

*Attorneys for Defendant First Choice Healthcare Solutions, Inc.*

*/s/ Joshua W. Ruthizer*
Joshua W. Ruthizer