**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| MAZ PARTNERS LP, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>v.<br><br>FIRST CHOICE HEALTHCARE SOLUTIONS, INC. and CHRISTIAN ROMANDETTI, SR.,<br><br>     Defendants. | **Case No. 6:19-cv-00619-PGB-LRH** |

**LEAD PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES, AND INCORPORATED MEMORANDUM OF LAW**

MAZ Partners LP ("Lead Plaintiff" or "MAZ") moves this Court, pursuant to Federal Rules of Civil Procedure 23(e) and 23(h),[1] for an Order granting: (i) an award of attorneys' fees to Plaintiff's Counsel constituting 25% of the Gross Settlement Fund (or $250,000, plus interest earned at the same rate as the

---

[1] Lead Plaintiff respectfully submits that the requirements of Local Rule 7.01 are not applicable. First, the rule "requires a party claiming post-judgment attorney's fees to obtain an order determining entitlement before providing a supplemental motion on amount." *Arch Specialty Ins. Co. v. Highlands at Hunter's Green Condo. Ass'n*, No. 8:19-cv-1971-T-23SPF, 2021 U.S. Dist. LEXIS 29942, at *3 n.2 (M.D. Fla. Feb. 16, 2021). Lead Plaintiff does not request post-judgment attorneys' fees. In addition, this Court has already issued an order directing Lead Plaintiff and Lead Counsel to file a motion for an award of Attorneys' Fees and Expenses. ECF No. 67 (Preliminary Approval Order) ¶ 19. Further, the second motion concerning amount "may be deemed unnecessary if the amount of the requested fees or expenses is not contested." *Donnelly v. Saul*, No. 8:20-cv-614-CPT, 2021 U.S. Dist. LEXIS 83704, at *3 (M.D. Fla. May 3, 2021). As of June 25, 2021, no Settlement Class Member has objected to the Settlement or application for Attorneys' Fees and Expenses. *See* § II.B.6, below.

$1,000,000 Settlement Amount)[2] representing a negative 0.27 multiplier of Plaintiff's Counsel's[3] lodestar; and (ii) reimbursement of litigation expenses in the amount of $29,891.11 that Plaintiff's Counsel[4] reasonably and necessarily incurred in prosecuting and resolving this litigation (the "Action") (the "Motion for Attorneys' Fees").  Lead Plaintiff also moves this Court, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(4), for an Order reimbursing Lead Plaintiff $5,000 for costs and expenses (including lost wages) incurred in the prosecution of this Action and directly related to the representation of the Settlement Class (a "Plaintiff PSLRA Award").

This Motion is supported by the Incorporated Memorandum of Law, the Declaration of Chet B. Waldman, Esq. in Support of Lead Plaintiff MAZ Partners LP's Motions for (1) Final Approval of Class Action Settlement and Plan of Allocation, and Final Certification of Settlement Class; and (2) an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Waldman Decl."), and exhibits thereto, and all other pleadings, briefs, and documents filed to date in this Action.

---

[2] The "Gross Settlement Fund" is the $1 million "Settlement Amount" plus interest earned thereon.

[3] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated October 8, 2020 (ECF No. 64-1, the "Stipulation").

[4] Plaintiff's Counsel is comprised of Court-appointed Lead Counsel Wolf Popper LLP and local counsel Ronald J. Cohen of Lorium PLLC f/k/a Rice Pugatch Robinson Storfer & Cohen PLLC.

**INCORPORATED MEMORANDUM OF LAW[5]**

## I.      BACKGROUND

### A.  Statement of Facts

For a detailed Statement of Facts, Lead Plaintiff respectfully refers the Court to the Waldman Declaration and Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation, and Final Certification of Settlement Class, and Incorporated Memorandum of Law ("Final Approval Motion"), filed simultaneously herewith.

### B.  Procedural History

This case presented complex and challenging issues throughout.  Below is a detailed statement of the efforts of Lead Counsel to achieve significant results in this case for Lead Plaintiff and the Settlement Class.

The Action began with Lead Plaintiff filing its Complaint for Violations of the Federal Securities Laws and Demand for Jury Trial against First Choice Healthcare Solutions, Inc. ("FCHS," "First Choice" or the "Company") and Christian Romandetti, Sr. ("Romandetti") (collectively "Defendants") in this Court on March 29, 2019 on behalf of a proposed class consisting of:

> All persons other than Defendants who purchased or otherwise acquired First Choice common stock from April 1, 2014 through November 14, 2018, both dates inclusive.

---

[5] Unless otherwise indicated, all emphasis has been added, and all internal citations and quotation marks have been omitted.

(ECF No. 1, "Complaint").   The Complaint alleges that Defendants violated Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 ("Exchange Act") and SEC Rule 10(b)-5, promulgated thereunder, because they misrepresented facts by omitting material information regarding (i) manipulative trading in the Company's stock; (ii) the integrity of FCHS's management; as well as (iii) the strength of FCHS's internal controls and Compliance program.   MAZ sought damages and interest for the proposed class members, attorneys' fees, and other equitable relief.  ECF No. 1.  On April 30, 2019 and May 22, 2019, FCHS and Romandetti moved to dismiss the Complaint, respectively.  ECF Nos. 13, 28.

On May 10, 2019, MAZ filed an unopposed motion for a 14-day extension of time to respond to FCHS's motion to dismiss, and an opposed motion to (a) dismiss without prejudice or stay briefing of FCHS's motion to dismiss until after a Lead Plaintiff was appointed pursuant to the PSLRA, (b) establish an orderly procedure to comply with the PSLRA, and (c) in the alternative, grant a 30-day enlargement of time to respond to FCHS's motion to dismiss.  ECF Nos. 19, 20.  On May 13, 2019, Romandetti filed his response/objections to these motions.  ECF No. 21.  On the same day, the Court issued an Order staying the motion to dismiss and case management deadlines, and directing the Parties to appear at an in-person hearing on all other issues.  ECF No. 23.  On May 21, 2019, FCHS filed its response in opposition to the opposed motion for stay.  ECF No. 25.  On May 29, 2019, the Court heard argument and issued an Order granting a 30-day extension to respond

4

to the motions to dismiss (until June 28, 2019), and denying the remainder of the two motions to stay/for an enlargement of time as moot.  ECF No. 30, 33.

On May 28, 2019, Lead Plaintiff filed its motion for appointment as Lead Plaintiff and approval of its selection of counsel as "Lead Counsel."  ECF No. 29. On June 12, 2019, Magistrate Judge Hoffman issued a Report and Recommendation that MAZ be appointed as Lead Plaintiff and Wolf Popper LLP be appointed as Lead Counsel.  ECF No. 34.  The Court later issued an Order adopting and confirming Judge Hoffman's Report and Recommendation.  ECF No. 35.

On June 28, 2019, Lead Plaintiff filed its opposition to Defendants' Motions to Dismiss.  ECF No. 36.  On October 16, 2019, Judge Hoffman, in a Report and Recommendation, rejected the vast majority of Defendants' motion to dismiss arguments and recommended the denial of Defendants' motions to dismiss in their entirety ("Motion to Dismiss R&R").  *See* ECF Nos. 37.  On October 30, 2019, FCHS filed its objections to the Motion to Dismiss R&R and on November 7, 2019, Romandetti filed his objections to the Motion to Dismiss R&R. ECF Nos. 39, 41. On November 21, 2019, Lead Plaintiff filed its opposition to Defendants' objections to the Motion to Dismiss R&R. ECF No. 44.  On February 14, 2020, the District Court issued an Order adopting and confirming the Motion to Dismiss R&R, and denying both motions to dismiss.  ECF No. 45.

On February 28, 2020 and March 3, 2020, FCHS and Romandetti filed their respective Answers to the Complaint.  ECF Nos. 48, 49.  On March 17, 2020, the

parties filed a joint Case Management Report with a proposed case schedule. ECF No. 53. On March 21, 2020, the Court entered a Case Management and Scheduling Order. ECF No. 55.

Just as the case was entering the discovery phase, and after Lead Plaintiff had served document requests, the Parties agreed to enter into mediation. On May 6, 2020, after the preparation of substantial mediation statements and replies, the Parties engaged in a full-day remote videoconference mediation before Simone K. Lelchuk, a professional mediator with Melnick ADR LLC and JAMS, and conducted extensive arm's-length negotiations to settle the case. The mediation ended with an agreement in principle to settle and release all claims asserted against the Defendants in the Action in return for a cash payment to the Settlement Class of $1 million to be paid entirely by FCHS's Director and Officer Liability Insurance Policy (the "D&O Policy"). Waldman Decl. ¶ 64.

## C. The Settlement

On May 21, 2020, the Lead Plaintiff entered into a Memorandum of Understanding ("MOU") with Defendants agreeing to settle the Action for a monetary payment of $1,000,000 ("Settlement Amount") in cash, on behalf of the following "Settlement Class:"

> All persons or entities who purchased or otherwise acquired First Choice common stock during the Class Period, and who did not sell all such securities prior to November 14, 2018, including Lead Plaintiff, and excluding: (i) Defendants; the officers, directors, and employees of First Choice during the Class Period (the "Excluded D&Os"); members of Defendants' and Excluded D&Os immediate families, legal representatives, heirs, agents, affiliates, successors or assigns; and any entity in which Defendants, the Excluded D&Os, or their immediate families have or had a

6

controlling interest; and (ii) Steward Health Care System LLC and its affiliates, successors, and assigns.

ECF No. 64-1 (Stipulation) ¶ A.38. The "Class Period" is the period between April 1, 2014 and November 14, 2018, both dates inclusive (the original class period set forth in the Complaint). *Id.* ¶ A.9.

On May 28, 2020, Lead Plaintiff filed a Joint Notice of Settlement informing the Court that a settlement was reached and the MOU was signed. ECF No. 58.

On June 15, 2020, after the Parties had executed the MOU and while the Parties were negotiating the terms of the Stipulation, FCHS filed a voluntary petition for Bankruptcy pursuant to Chapter 11 in the United States Bankruptcy Court for the Middle District of Florida ("Bankruptcy Court"). Simultaneously, FCHS filed a Suggestion of Bankruptcy with this Court. ECF No. 60. Consequently, this Action was automatically stayed under Section 362(a)(3) of the Bankruptcy Code.

After the Bankruptcy Proceeding was commenced, the Parties continued to negotiate the terms of the Settlement Agreement (defined below). In particular, the filing of the Bankruptcy Proceeding raised the issue of whether Settlement Class Members who decided to exclude themselves from the Settlement (opt-out), if any, would have the right to bring their own individual claims against FCHS, as those stockholders would have to make those claims in the Bankruptcy Proceeding. As a result, Lead Plaintiff negotiated terms such that Settlement Class Members who excluded themselves from the Settlement would be able to file proofs of claims

7

against FCHS in the Bankruptcy Proceeding. *See* Waldman Decl. Ex. 1.A (Full Notice) ¶ 15.

On October 9, 2020, after a delay due to the many complexities raised by the Bankruptcy Proceeding in addition to the more standard complexities involved in agreeing to the detailed terms in a securities class action settlement, Lead Counsel, on behalf of Lead Plaintiff and the Settlement Class, entered into the Stipulation setting forth the detailed terms of the Parties' settlement of the Action (the "Settlement"). ECF No. 64-1 (Stipulation).

Because of the Bankruptcy Proceeding, and because payment of the Settlement Amount would be made from FCHS's D&O Policy, FCHS needed Bankruptcy Court approval to enter into the Settlement Agreement. Also, the Bankruptcy Court had to lift the automatic stay to allow the Parties to seek approval of the Settlement Agreement in this Court.

On November 25, 2020, after motions, briefing and appearances in the Bankruptcy Court attended by Lead Counsel, the Bankruptcy Court lifted the stay, approved the Defendants' entry into the Settlement Agreement, and allowed the Parties to seek approval of, and carry out, the Settlement Agreement. *See* ECF No. 61. Thereafter, on December 28, 2020, Lead Plaintiff filed its motion for preliminary approval of the Settlement. ECF No. 64.

On March 1, 2021, the Court preliminarily approved the Settlement ("Preliminary Approval Order"), certified the Settlement Class and directed notice be sent to the Settlement Class. ECF No. 67. As detailed in the Waldman

Declaration (at ¶¶ 90-105), Lead Plaintiff has complied with the Court's Preliminary Approval Order, including mailing out Postcard Notices to all potential Settlement Class Members and their nominees and publishing the Summary Notice electronically over *PR Newswire* within the stipulated timeframe. *See also* Waldman Decl. Ex. 1 (Declaration of Eric J. Miller Regarding (a) Mailing of Postcard Notice of Proposed Class Action Settlement; (b) Publication of Summary Notice; and (c) Report on Requests for Exclusions Received ("A.B. Data Decl.").

## II. LEAD PLAINTIFF'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES SHOULD BE GRANTED

### A. Class Counsel are Entitled to an Award of a Reasonable Percentage of the Gross Settlement Fund as Attorneys' Fees

It has been well recognized by the Eleventh Circuit that when a substantial benefit for the members of a settlement class has been obtained, attorneys' fees may be awarded from a common fund based upon a reasonable percentage of the fund. *See Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771, 774 (11th Cir. 1991); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Indeed, courts in this Circuit have held that the median range of reasonable awards is between 20% - 30% of the Gross Settlement Fund, with 25% being considered as the "benchmark." *See Camden I* at 774. In an analysis of the "reasonableness" of a fee application, courts consider various factors, most notably the *Johnson* and *Camden I* factors (detailed below). *See Camden I* at 775 (quoting *H. Newberg, Attorney Fee Awards* § 2.07 at 47 "To avoid the problems and criticisms of a common fund fee award

9

being summarily granted as a percentage of the fund recovered without any findings supporting its reasonableness...courts are now supporting their percentage awards with particular findings showing factors considered.")

### B. The Johnson Factors Support That the Requested Fee is Fair and Reasonable

The Eleventh Circuit has directed Courts to use the twelve *Johnson* factors, among other pertinent factors, to assess the reasonableness of a fee request. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 20-10249, 2021 U.S. App. LEXIS 16599, at *57-58 (11th Cir. June 3, 2021); *see also Thorpe v. Walter Inv. Mgmt. Corp.,* No. 1:14-cv-20880-UU, 2016 U.S. Dist. LEXIS 144133, at *24-25 (S.D. Fla. Oct. 17, 2016) (*quoting Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974))). The twelve *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases.

*Equifax*, 2021 U.S. App. LEXIS 16599, at *59 n.22 (quoting *Camden I*, 946 F.2d at 772 & n.3). "The *Johnson* factors also include a handful of additional factors this Court added in *Camden I*":

> the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the

class by the settlement, and the economics involved in prosecuting a class action.

*Id.* (citing *Camden I*, 946 F.2d at 775).  Having endorsed these factors, the *Camden I* court noted that their *application* may "undoubtedly vary" from case-to case.  *Id.* at *62.

An application of the aforementioned factors demonstrates the reasonableness of the Motion for Attorneys' Fees in this Action.  While some of the *Johnson* factors are not relevant to this case, some others are merged and addressed in a single point below.

### 1.   The Time and Labor Required Support the Requested Fee

Through March 1, 2021 (the date the Court entered the Preliminary Approval Order), Plaintiff's Counsel spent 1,341.90 hours litigating and reaching a settlement, resulting in a lodestar of $935,366.50.[6]  Waldman Decl. ¶ 147 and Ex. 3 (Cohen Decl.).[7]  These hours demonstrate that Plaintiff's Counsel devoted the necessary time and effort to aggressively litigate the Action by, among other things, drafting a detailed complaint; defeating Defendants' motions to dismiss and successfully opposing Defendants' objections to the Motion to Dismiss R&R; successfully opposing FCHS's attempts to have its motion to dismiss heard before

---

[6] Plaintiff's Counsel's lodestar is calculated by multiplying the total number of hours with the current hourly rate of the attorneys.  *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986).  These hourly rates are comparable to the accepted rates in other similar securities litigation.  *See* Waldman Decl. ¶ 123.

[7] Declaration of Ronald Cohen, Esq., local counsel in this Action, in support of the Lead Plaintiff's Motion for Attorneys' Fees and Litigation Expenses, which is attached as Exhibit 3 to the Waldman Declaration.

11

the Court appointed a lead plaintiff; mediating with the Defendants to secure the best possible benefit for the Settlement Class; and finally negotiating and finalizing the detailed Settlement Agreement and exhibits thereto. Further, the pleading, briefing, and work related to the Bankruptcy Proceeding required by the highly complex and technical matters in this case often required the careful attention of experienced senior attorneys at Wolf Popper and Lorium PLLC could not be left solely to junior attorneys or staff.  A review of the time and effort expended by Plaintiff's Counsel is an indicia that the requested fee is justified.

Further, the lodestar cross check analysis demonstrates that the fee sought is reasonable.  *See Pinto v. Princess Cruise Lines*, Ltd., 513 F. Supp. 2d 1334, 1343 (S.D. Fla. 2007) ("Some courts use the lodestar method as a cross-check of the percentage of the fund approach.").  The requested fee of 25% results in a negative multiplier of 0.27 to Plaintiff's counsel's lodestar,[8] *i.e.* significantly less than Plaintiff's Counsel's lodestar, which further demonstrates the requested fee's reasonableness.  *See In re Health Ins. Innovations Sec. Litig.*, No. 8:17-cv-2186-TPB-SPF, 2021 U.S. Dist. LEXIS 61051, at *40 (M.D. Fla. Mar. 23, 2021) (quoting *In re Netbank, Inc. Secs. Litig.,* No. 1:07-cv-2298-TCB, 2011 U.S. Dist. LEXIS 162835, at *13 (N.D. GA Nov. 9, 2011)) ("fact that counsel recovered a fraction of their lodestar "further confirms that the awarded fee is wholly proper"")); *In re Citrix Data Breach Litig.*, No. 19-61350-CIV-ALTMAN/Hunt, 2021 U.S. Dist.

---

[8] This is calculated by dividing 25% of the $1 million Settlement Amount by Plaintiff's Counsel's total lodestar of $935,366.50.

LEXIS 112272, at *10 (S.D. Fla. June 11, 2021) ("a fee award that results in a negative lodestar multiplier of 0.78—is both fair and reasonable").

### 2. The Amount Involved and Results Achieved for the Settlement Class Support the Requested Fee

According to the U.S. Supreme Court, the "most critical factor [in determining attorneys' fees] is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). The Settlement in this Action provides for an exceptional monetary recovery of $1,000,000 in cash in light of the maximum possible recoverable damages, particularly given that the $1,000,000 Settlement Amount represented almost 38% of FCHS's total market cap at the time of settlement. Moreover, the Settlement Amount represents approximately 20% of the Settlement Class's estimated damages,[9] which is well above the average recovery in securities class action litigation. *See, e.g., Cabot E. Broward 2 LLC v. Cabot*, No. 16-61218-CIV-DIMITROULEAS/SNOW, 2018 U.S. Dist. LEXIS 192706, at *14-15 (S.D. Fla. Nov. 9, 2018) ("The usual recovery in [securities class action settlements] is less than 10% of the class members' estimated losses."); *see also* Cornerstone Research, *Securities Class Action Settlements 2020 Review and Analysis* (reporting that the median settlement, as a percentage of Cornerstone's "Simplified Tiered Damages," for cases with damages of less than $25 million was

---

[9] The estimated damages for the Settlement Class in this case were approximately $4.877 million. This was calculated by Lead Plaintiff's damages consultant in the context of Mediation, using accepted methodologies. *See* Waldman Decl. Ex. 1.A (Full Notice) at p. 2.

19.7% in 2020).[10] Moreover, the timely settlement is made more impressive because it not only avoided several years of costly litigation, but also eliminated the potential risk of non-recovery, which was especially high considering that between the time the MOU and Settlement Agreement was signed, FCHS filed for bankruptcy. All these factors weigh strongly in favor of the requested fee.

**3. The Likelihood of Success at Trial, High Level of Complexity, Expense and Duration of the Litigation Support the Requested Fee**

It is respectfully submitted that this Settlement is an exceptional outcome for the Settlement Class given the numerous risks that this Action was fraught with. Firstly, the class had not been certified, and Defendants vehemently argued that class certification was inappropriate because the market for FCHS, a stock listed on the OTC market, was not efficient, which if true would mean that the fraud on the market theory presuming reliance on a class-wide basis would not apply (raising individual issues of reliance that would predominate over common issues). Secondly, even if a class was certified, Lead Plaintiff would have had to survive Defendants' likely summary judgment motion, trial, and appeals. Thirdly, there was a very real risk to recovery given FCHS's Bankruptcy Proceeding and the expense and delay of continued litigation in a matter where damages were relatively small.

---

[10]    Available    at    www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis (last visited June 18, 2021).

14

Further, this case "by its very nature, [was] a complex animal." *See Walter Inv. Mgmt. Corp.*, No. 1:14-cv-20880-UU, 2016 U.S. Dist. LEXIS 144133, at *9 (Oct. 14, 2016). It involved all the novel and complex legal questions that are "endemic to § 10(b) litigation, including proving scienter, materiality, causation, and damages." *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992). It was also not a highly desirable case, on its face and Lead Plaintiff was the only movant to seek appointment as lead plaintiff, suggesting that the strength of the case was not apparent and/or the maximum recoverable damages were small.

Given the complexity, expense and risks involved the fee requested is reasonable.

### 4.  The Case Carried a High Risk of Non-Payment and Lead Counsel was Precluded From Other Employment

Another important *Johnson* factor is whether the attorneys worked on a contingent basis. In *Behrens v. Wometco Enterprises, Inc.*, the court observed that:

> A contingency fee arrangement often justifies an increase in the award of attorneys' fees. . . . If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

Plaintiff's Counsel took the case on contingency, expended 1,341.90 hours without any certainty of payment and assumed a serious risk of nonpayment given the potential size of the damages, the serious criminal allegations against Defendant Romandetti, which threatened any Directors' and Officers' Liability

15

("D&O") insurance coverage, and the Company's precarious financial condition despite all the effort. The risks inherent in this Action made it a very real possibility that Plaintiff's Counsel were not going to get compensated at all. In undertaking such responsibility, Lead Counsel was obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, and that funds were available to compensate staff and to cover the considerable litigation costs that a case like this requires. The risks undertaken by counsel in this matter and the economic considerations of litigating a complex securities class action such as this one favor approval of the requested fee award.

Further, Lead Counsel forgave other employment opportunities in order to dedicate the time necessary to successfully litigate this case. Therefore, this factor also weighs in favor the requested fee.

### 5. The Skill, Experience, and Ability of the Attorneys Involved Support the Requested Fee

When considering this factor in context of a request for an award of attorneys' fees, courts have often considered two important factors: (1) the skill of the plaintiff's attorneys involved, *see David v. Am. Suzuki Motor Corp.*, No. 08-CV-22278-GOLD/McALILEY, 2010 U.S. Dist. LEXIS 146073, at *28-29 n. 15 (S.D. Fla. Apr. 15, 2010); and (2) their experience, reputation and ability to litigate complex class actions such as this. *See Camden I*, 946 F.2d at 772 n. 3; *see also Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-cv-3066-JEC, 2012 U.S. Dist. LEXIS 196030, at *10 (N.D. Ga. Oct. 26, 2012) ("The appropriate fee

16

should also reflect the degree of experience, competence, and effort required by the litigation.").

Lead Counsel is highly skilled and experienced in litigating complex securities class actions. Throughout, they have exerted diligent, skillful, and concerted effort to secure the best recovery for the Settlement Class. As described herein, Plaintiff's Counsel, drafted a detailed and well-researched complaint; defeated both Defendants' motions to dismiss and opposed Defendants' objections to Judge Hoffman's Report and Recommendation; effectively mediated the case before a professional mediator at a strategic time – a decision based on a thorough understanding of the strengths and weaknesses of the claims and defenses; successfully obtained considerable financial relief for the Settlement Class under the circumstances; and sought preliminary approval of the Settlement, maneuvering through an uncertain period of FCHS's Bankruptcy Proceeding. Had counsel not been highly skilled, the Settlement Class may not have received such an exceptional outcome given the risks in the case.

In addition, Plaintiff's Counsel successfully faced a highly skilled defense counsel team from Akerman LLP, a large and prestigious national law firm with significant experience defending class actions such as this. *See In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001) ("Additionally, in assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced."); *see also Ressler*, 149 F.R.D. at 654.

These factors support the reasonableness and fairness of the requested fee.

17

### 6. The Positive Reaction of the Settlement Class Supports the Requested Fee

The Settlement Notice advised the Settlement Class both of the Settlement terms and the attorneys' fees that will be requested.  It also advised members to file any objections with the Court before July 12, 2021.  As of June 25, 2021, no objections have been received.  Waldman Decl. Ex. 1 (A.B. Data Decl.) ¶ 16.  Should there be any objections in the future, Lead Plaintiff will respond to them.

### 7. The Requested Fee is Fair and Reasonable Compared to Similar Actions

The requested fee of 25% of the Gross Settlement Fund is well within, if not slightly below, the range of fees awarded in similar securities class action cases. Courts within and outside the Eleventh Circuit, have considered one-third of a common fund to be within the range of reasonableness.  *See Ressler*, 149 F.R.D. at 655-656 (reviewing several cases and arriving at a finding that "[a]wards of 30% or more of a settlement fund are not uncommon in § 10(b) common fund cases such as this.").  Even in cases where the common fund was between $750,000 and $5,000,000, fee awards of one-third of the settlement fund are common.  For example:

| Comparable class actions within the Eleventh Circuit and nationwide | Settlement Amount | Fee Award |
|---|---|---|
| *Ressler v. Jacobson*, 149 F.R.D. 651, 652 (M.D. Fla. 1992) | $775,000 | 30% |
| *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1366 (N.D. Ga. 2019) | $925,000 | 33% |

| Comparable class actions within the Eleventh Circuit and nationwide | Settlement Amount | Fee Award |
|---|---|---|
| *In re Health Ins. Innovations Sec. Litig.,* 2021 U.S. Dist. LEXIS 61051, at *6 (M.D. Fla. Mar. 23, 2021), report and recommendation adopted, 2021 U.S. Dist. LEXIS 60100 (M.D. Fla. Mar. 30, 2021) | $2.8 million | 33.33% |
| *Pinto v. Princess Cruise Lines, Ltd.,* 513 F. Supp. 2d 1334, 1336 (S.D. Fla. 2007) | $4.25 million | 30% |
| *Weiss v. Blech (In re Blech Sec. Litig.),* Master File No. 94 Civ. 7696 (RWS), 2000 U.S. Dist. LEXIS 6920, at *16 (S.D.N.Y. May 22, 2000) | $800,000 | 30% |

*See also* NERA, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (reporting that the median attorneys' fees as a percentage of the settlement value (in cases where settlement value was below $5 million) was 30% from 2011-2020).[11]

Plaintiff's Counsel's fee request of 25% is therefore *below* the median fee award, an indicia that it is reasonable.

### 8. Lead Plaintiff's Endorsement Supports Approval of the Requested Fee

In PSLRA cases, courts have considered that the endorsement of a requested fee by a properly appointed lead plaintiff "enjoys a presumption of reasonableness." Here, MAZ, "a sophisticated institutional investor that was directly involved in the prosecution and resolution of the claims and who has a substantial interest in ensuring that any fees paid to Plaintiff's Counsel are duly

---

[11] *See* Janeen McIntosh and Svetlana Starykh, "Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review" (NERA Jan. 25, 2021) at 23, fig 19; available at www.nera.com/publications/archive/2021/recent-trends-in-securities-class-action-litigation--2020-full-y.html (last visited June 25, 2021).

earned and not excessive" has approved the requested fee. *See* ECF No. 64-2 (MAZ Decl.) ¶ 19; *see also City of St. Clair Shores Gen. Emps.' Ret. Sys. v. Lender Processing Servs.*, Inc., No. 3:10-cv-01073-TJC-JBT, 2014 U.S. Dist. LEXIS 194116, at *4-6 (M.D. Fla. Mar. 4, 2014). Thus, this factor also supports approval of the requested fee.

### 9. Time Required to Reach a Settlement Supports the Requested Fee

The Settlement in this Action was efficiently negotiated by Plaintiff's Counsel but not before Defendants' motions to dismiss were fully adjudicated, an expert damages analysis in connection with the Mediation had been prepared, mediation and reply mediation statements by the Parties had been exchanged, and the serious financial distress the Company was under was becoming apparent. From the time the Action was filed (on March 29, 2019) until the MOU was signed (on May 20, 2020), 1 year and 2 months had passed. The settlement negotiations after the mediation themselves were swift and efficient, lasting a period of two weeks (from May 6, 2020 to May 20, 2020). However, it is beyond dispute that Lead Plaintiff and its counsel were sufficiently apprised of the strengths and weaknesses of the claims brought at the time the Settlement was reached. Consequently, this factor also weighs in favor of the fee request. *See Muransky v. Godiva Chocolatier*, 2016 U.S. Dist. LEXIS 126810, (S.D. FL. Sept. 16, 2016) *9 (in approving a settlement and fee request the Court noted that "[r]egarding the fact that a relatively small amount of work was performed because a settlement was

reached early in the proceedings, the undersigned believes that the considerable savings of time and money achieved by a settlement promotes judicial economy, and counsel should not be penalized for achieving this benefit.").

## C. Plaintiff's Counsel's Litigation Expenses are Fair, Reasonable and Were Necessary to Achieve the Benefit Obtained

It is well-established that "[P]laintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action" and courts have routinely approved the payment of such expenses. *See Behrens*, 118 F.R.D. at 549. As long as "adequate documentation" is submitted, reasonable and necessary out-of-pocket expenses may be recovered. *See Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1258 (S.D. Fla. 2016). To date, Plaintiff's Counsel have incurred $29,895.11 in litigation expenses.[12] The largest of these expenses were expert witness fees ($4,800) and online legal research fees ($15,685), without which Plaintiff's Counsel could not have prosecuted this Action. Plaintiff's Counsel further incurred $4,500 in fees for the mediation. These and other incurred costs and expenses (such as mail, telephone, Court fees, travel, and photocopying) were reasonable and necessary to successfully prosecute the Action and were incurred with no guarantee of recovery for the benefit of Settlement Class members.[13] *See also* Waldman Decl. ¶¶ 151-154.

---

[12] This includes a partial estimate of expenses for Lead Counsel's travel to the Settlement Hearing since flights and hotel expenses have already been incurred and included in the expense number.

[13] These costs and expenses do not include Notice and Administration Expenses, such as the cost of providing notice, the fees of the Claims Administrator, and Tax and Tax Expenses Pursuant to the Stipulation. $50,000 from the Gross Settlement Fund could be paid to the Notice and

Moreover, the requested expense reimbursement of $29,895.11 is less than the $30,000 upper limit provided for in the Notice, and as of June 25, 2021, no potential Settlement Class Members have objected to the requested expense reimbursement.

### D. Lead Plaintiff's Requested PSLRA Award is Fair and Reasonable

The PSLRA specifically allows for "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). Here, Lead Plaintiff seeks a Plaintiff PSLRA Award of $5,000 for the costs and expenses it incurred, including lost wages, directly related to the representation of the class. ECF No. 64-2 (MAZ Decl.) ¶¶ 20-21.

While courts have routinely approved such awards to compensate lead plaintiffs for their services and risks incurred on behalf of the class, *see, e.g.*, *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 695-96 (N.D. Ga. 2001), the Eleventh Circuit recently held that two older Supreme Court decisions, in general, prohibited the granting of incentive awards to class representatives. *See Johnson v. NPAS Sols.*, 975 F.3d 1244 (11th Cir. 2020). However, *Johnson* does not apply to situations where awards are prescribed under a statute, like the PSLRA award. *Id.* at 1260 ("[If] Congress doesn't like the result we've reached, they are free to

---

Administration Account without further Order of the Court in order to pay initial Notice and Administration Expenses. *See* ECF No. 64-1 (Stipulation) ¶¶ A.22-23; ECF No. 67 (Preliminary Approval Order) ¶ 8. Lead Plaintiff will ask the Court to allow any additional Notice and Administration Expenses when it files a motion for distribution of the Net Settlement Fund after the Claims process is complete.

amend Rule 23 or to provide for incentive awards by statute."). Therefore, the

recent *Johnson* decision does not bar a PSLRA reimbursement award to the Lead

Plaintiff in this Action.

The reimbursement award sought by Lead Plaintiff, amounting to 50% of

the total lost wages spent by Mr. Walter Schenker, the principal of the general

partner of MAZ, is reasonable and appropriate in light of the dozens of hours he

spent working with Counsel on this matter.[14] As a portfolio manager at a hedge

fund, the substantial time devoted to this Action took Mr. Schenker away from his

highly complicated and time-consuming day job for MAZ.  ECF No. 64-2 (MAZ

Decl.) ¶ 20.

## III.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court

grant its motion and award (i) attorneys' fees of 25% of the Gross Settlement Fund

(or $250,000, plus interest earned at the same rate as the Settlement Amount); (ii)

reimbursement of litigation expenses in the amount of $29,895.11; and (iii) a

Plaintiff PSLRA Award of $5,000.

---

[14] Mr. Schenker estimates that he devoted more than 40 hours to this Action that he would have other otherwise have spent working on behalf of MAZ, including by reviewing drafts and final copies of pleadings, court filings, and discovery requests, and attending the full-day mediation. ECF No. 64-2 (MAZ Decl.) ¶ 20.  Mr. Schenker is not paid by the hour, but he estimates his hourly rate to be $250 per hour.  ECF No. 64-2 (MAZ Decl.) ¶ 21.  This hourly rate for Mr. Schenker was approved by the Chief Judge of the District of Massachusetts in a case brought by MAZ styled:  *In re: PHC, Inc. Shareholder Litigation,* No. 11-11049-PBS, ECF No. 487 ¶ 12  (D. Mass. Apr. 2, 2019) (Saris, J.) (awarding MAZ a $25,000 service award).

## LOCAL RULE 3.01 (g) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Lead Plaintiff certifies that between June 24 and 28, 2021, counsel for Lead Plaintiff conferred by email with counsel to Defendants.  Defendants take no position on this motion.

Dated: June 28, 2021

Ronald J. Cohen
Fla. Bar No. 235504
LORIUM PLLC
101 NE 3rd Ave., Suite 1800
Fort Lauderdale, Florida 33301
Tel: 954-462-8000
Fax: 954-462-4300
rcohen@loriumlaw.com

*Local Counsel for MAZ Partners LP
and the Settlement Class*

Respectfully submitted,

By: */s/ Joshua W. Ruthizer*
Joshua W. Ruthizer
Fla. Bar No. 92528
Chet B. Waldman
Granted Special Admission to Practice
WOLF POPPER LLP
845 Third Avenue
New York, NY 10022
Tel:  212-759-4600
Fax: 212-486-2093
jruthizer@wolfpopper.com
cwaldman@wolfpopper.com

*Attorneys for Lead Plaintiff MAZ
Partners LP and Lead Counsel for the
Settlement Class*

24

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 28, 2021, I filed the foregoing with

the Court via CM/ECF, which will serve a true and correct copy of the foregoing via

email service on counsel of record in this matter:

Fritz J. Scheller, Esq.
fscheller@flusalaw.com
FRITZ SCHELLER, PL
200 E. Robinson Street
Orlando, FL 32801
Tel: 407.792.1285
Fax: 407.513.4146

*Attorneys for Defendant Christian Romandetti, Sr.*

Brian P. Miller, Esq.
Brian.Miller@akerman.com
Samantha J. Kavanaugh, Esq.
Samantha.Kavanaugh@akerman.com
Ross E. Linzer, Esq.
Ross.Linzer@akerman.com
AKERMAN LLP
Three Brickell City Centre
98 SE 7th Street, Suite 1100
Miami, FL 33130
Tel: 305.374.5600
Fax: 305.374.5095

*Attorneys for Defendant First Choice Healthcare Solutions, Inc.*

/s/ Joshua W. Ruthizer
Joshua W. Ruthizer