**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| MAZ PARTNERS LP, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>FIRST CHOICE HEALTHCARE SOLUTIONS, INC. and CHRISTIAN ROMANDETTI, SR.,<br><br>    Defendants. | **No. 6:19-cv-00619-PGB-LRH**<br><br>**Class Action** |

**LEAD PLAINTIFF MAZ PARTNERS LP'S MOTION FOR APPROVAL OF DISTRIBUTION OF NET SETTLEMENT FUND AND INCORPORATED MEMORANDUM OF LAW**

Lead Plaintiff MAZ Partners LP ("MAZ" or "Lead Plaintiff"), on behalf of itself and all Settlement Class Members, hereby submit this Motion for Approval of Distribution of Net Settlement Fund and Incorporated Memorandum of Law and moves this Court, pursuant to Federal Rule of Civil Procedure 23 and Local Rule 3.01, to enter a distribution order (the "Distribution Order") to (1) approve the Claims Administrator A.B. Data, Ltd.'s ("A.B. Data") administrative determinations regarding the acceptance and rejection of claims submitted in connection with the Settlement[1] of the above-captioned action ("Action"); (2)

---

[1] Capitalized terms not defined herein shall have the same meanings as given in the Stipulation and Agreement of Settlement, dated October 8, 2020 (ECF No. 64-1), or the Declaration of Eric J. Miller in Support of Lead Plaintiff's Motion for Approval of Distribution of Net Settlement Fund ("Miller Decl." or "Miller Declaration"), attached hereto as Exhibit 1.

1

direct distribution of the Net Settlement Fund, after deduction of the payments requested herein, to Settlement Class Members whose Proof of Claim and Release Forms have been accepted; (3) approve the plan for re-distribution and/or donation of any funds remaining in the Net Settlement Fund following the distribution to Settlement Class Members; (4) direct payment out of the Settlement Fund to A.B. Data in the amount of $34,069.15, for the balance of its fees and expenses incurred and to be incurred in connection with the administration and distribution of the Net Settlement Fund; (5) authorize the destruction of paper copies of Proof of Claim and Releases ("Claim Form"), and all related paper documents, one year after distribution of the Net Settlement Fund, and authorize the destruction of electronic files containing claim records three years after distribution of the Net Settlement Fund; (6) bar claims other than for willful misconduct or fraud against persons involved in the claims administration and distribution process; (7) bar Settlement Class Members from making further claims against the Net Settlement Fund beyond the amount allocated to them; and (8) for such other and further relief as this Court deems appropriate. If the Court enters the Distribution Order, Authorized Claimants will receive their pro rata share of the Settlement Fund in accordance with the Plan of Allocation. The proposed plan for distributing the Net Settlement Fund is set forth in the accompanying Miller Declaration (Exhibit 1).

Pursuant to Local Rule 3.01(g) and the Court's individual preferences, no proposed order has been submitted with this motion. Lead Counsel will submit a proposed order should the Court request one.

## INCORPORATED MEMORANDUM OF LAW[2]

### I. INTRODUCTION

On October 8, 2020, the Parties entered into the Stipulation and Agreement of Settlement. On March 1, 2021, the Court entered the Order Preliminarily Approving Class Action Settlement, Preliminarily Certifying Settlement Class, and Directing Notice to Settlement Class ("Preliminary Approval Order," ECF No. 67). Pursuant to the Preliminary Approval Order, a Postcard Notice of Proposed Class Action Settlement ("Postcard Notice") was mailed to all potential Settlement Class Members and their nominees by First-Class Mail; a Summary Notice of Proposed Class Action Settlement ("Summary Notice") was published on *PR Newswire* a national wire service; and a Settlement Website[3] was created, where potential Settlement Class Members could download copies of the Notice of Proposed Class Action Settlement (the "Full Notice"), Claim Form, and relevant Court documents. ECF No. 71-1 (Mailing Declaration) ¶¶2-14. The Postcard Notice and Settlement Notice provided summary information concerning the Settlement and directed potential Settlement Class Members to the Settlement Website and Full Notice for

---

[2] Unless otherwise indicated, all emphasis has been added, and all internal citations and quotation marks have been omitted.

[3] www.firstchoicesecuritieslitigation.com.

more information. A.B. Data mailed an aggregate of 7,874 Postcard Notices to potential Settlement Class Members and nominees, the Full Notice was downloaded 296 times, and the Claim Form was downloaded 436 times. *Id*.; Ex. 1 (Miller Decl.) ¶¶4, 6.

On August 2, 2021, the Court granted Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and entered a Final Judgment (ECF No. 80), an Order Approving Plan of Allocation of Net Settlement Fund (ECF No. 79), and an Order Awarding Attorneys' Fees and Litigation Expenses and Lead Plaintiff PSLRA Award (ECF No. 81).

The Stipulation provides for the Settlement of this Action on behalf of a "Settlement Class" consisting of those persons or entities who purchased or otherwise acquired FCHS common stock between April 1, 2014 and November 14, 2018, inclusive (the "Class Period") and did not sell all of those shares before November 14, 2018, and were damaged thereby. ECF No. 64-1 (Stipulation) ¶A.38. In connection with the Settlement, Lead Counsel retained A.B. Data, an independent settlement and claims administrator, to disseminate notice of the proposed Settlement to potential Settlement Class Members, process the Claim Forms submitted by Settlement Class Members, and to effectuate the distribution of the Net Settlement Fund to the Settlement Class Members who submitted acceptable Claim Forms. A.B. Data has extensive experience handling the administration of complex settlements of securities class actions. The Court

4

approved the selection of A.B. Data in the Preliminary Approval Order dated March 1, 2021. ECF No. 67 (Preliminary Approval Order) ¶8.

As set forth in the Miller Declaration (Ex. 1), A.B. Data, under the direction of Lead Counsel, disseminated the Postcard Notice, Summary Notice, Full Notice, and Claim Form to potential Settlement Class Members through mailings, publication, and the Settlement Website; received and processed the Claim Forms; and calculated Recognized Loss amounts consistent with the Court-approved Plan of Allocation. *See generally*, Ex. 1 (Miller Decl.). A.B. Data has completed the processing of 142 Claim Forms that were received through May 31, 2022. *Id.* ¶¶9, 34. Of those 142 Claim Forms, A.B. Data has determined that 61 claims were timely filed and valid, 3 claims were untimely filed but otherwise valid, and 78 claims were ineligible and should be wholly rejected. *Id.* ¶¶28, 34-37 and Exs. C-1 through C-3.

A.B. Data has completed the processing of Claim Forms, including Claims submitted after the June 25, 2021 submission deadline, and related work. Accordingly, the cash in the Net Settlement Fund is now available for distribution to Authorized Claimants in accordance with the Plan of Allocation.

## II.   CLAIMS ADMINISTRATION

Under the terms of the Stipulation, a $1,000,000.00 Settlement Amount was established for the benefit of the Settlement Class for the settlement of this Action. Pursuant to the Stipulation, the Notice, and the Preliminary Approval Order, all Settlement Class Members wishing to participate in the Settlement were required to submit Claim Forms by mail, postmarked or received no later than

June 25, 2021. ECF No. 64-1 (Stipulation) ¶D.4-5; ECF No. 67 (Preliminary Approval Order) ¶9. As set forth in the Miller Declaration, A.B. Data reviewed and processed 142 Claim Forms submitted by potential Settlement Class Members. Ex. 1 (Miller Decl.) ¶34. A.B. Data has now prepared detailed reports listing: (i) all valid Claim Forms by Authorized Claimants; (ii) all Claim Forms that were submitted after the claims submission deadline but are otherwise valid; and (iii) rejected Claim Forms with the rejection reasons (including claims that had a Recognized Loss of zero). *See id.* ¶¶34-37 and Exs. C-1 through C-3.

The Claim Forms submitted in paper form were opened, prepared assigned a unique Claim Form number, and scanned. *Id.* ¶9. This process included unfolding documents, removing staples, copying documents with nonconforming sizes, sorting documents, and scanning documents. The information from each Claim Form, including the claimant's name, address, and account number/information from the supporting documentation, and purchase/acquisition transactions, sale transactions, and holdings listed on the Claim, was entered into a database developed by A.B. Data to process Claim Forms. *Id.* A.B. Data evaluated and processed all Claim Forms and supporting documentation to determine, among other things, whether the claimant purchased or otherwise acquired FCHS common stock during the Class Period and did not sell all such securities prior to November 14, 2018, whether the transaction information entered on the Claim Form was supported by the documentation, and

whether the Claims had been submitted by, or on behalf of, excluded persons or a Settlement Class Member requesting exclusion. *Id*. ¶¶9, 17-18.

Much of A.B. Data's efforts in handling the administration involved claimant communications, so that all claimants had sufficient opportunity to cure any deficiencies and file a complete Claim Form. As demonstrated by the Miller Declaration, to the extent that a Claim Form was determined to be defective or ineligible, A.B. Data sent the claimant a deficiency letter describing the defect(s) or condition(s) of ineligibility in their Claim Form and advising what was necessary to do to cure any "curable" deficiency. *Id*. ¶¶20-21. A.B. Data made substantial efforts, by way of Deficiency Notices and Transaction Reports, to provide claimants, using both paper Claim Forms and Electronic Claims, a fair opportunity to cure deficiencies. *Id*.; Ex. 1 (Miller Decl.) Ex. A (Sample Deficiency Notice).

A.B. Data sent 43 Deficiency Notices to claimants in an effort to inform the claimants of their ineligibility or defective claim and the steps necessary to correct the deficiencies. *Id*. ¶21. The Deficiency Notices advised claimants that the submission of the appropriate information and/or trade documentation required to complete the Claim had to be sent within 20 days from the date of the letter, or the Claim would be recommended for either full or partial rejection. *Id*. A.B. Data also emailed a total of 10 Transaction Reports concerning deficiencies in a total of 55 electronically filed claims, and mailed rejection letters to 11 claimants who were excluded from the Class. *Id*. ¶23 n.2. Recipients of Transaction Reports and

7

rejection letters also had an opportunity to respond in order to resolve issues with the respective claims.

A.B. Data has completed the processing of the 142 Claim Forms that were received through May 31, 2022, and has determined that 64 are acceptable in whole or part, and that 78 should be wholly rejected because they are either ineligible, wholly deficient, or have no Recognized Loss when calculated in accordance with the Court-approved Plan of Allocation. *Id.* ¶¶34-35. A.B. Data received 3 Claim Forms that were postmarked after the Court-approved claim filing deadline of June 25, 2021, and were, apart from their late submission, otherwise eligible. *Id.* ¶28.

The Stipulation provides that "Class Counsel shall have the right, but not the obligation, to accept late-submitted claims so long as distribution of the Net Settlement Fund is not materially delayed." ECF No. 64-1 (Stipulation) ¶D.7. A District Court overseeing a settlement distribution has the discretion to accept late claims under Federal Rule of Civil Procedure 23. *See McPhail v. First Command Fin. Planning, Inc.*, No. 05cv179-IEG-JMA, 2009 U.S. Dist. LEXIS 26544, at \*26 (S.D. Cal. Mar. 30, 2009) (citing *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir.1977)); *Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir.1972) ("Until the fund created by the settlement is actually distributed, the court retains its traditional equity powers.... to protect unnamed, but interested persons.").

Lead Counsel believes that, when the equities are balanced, it would be unfair to prevent an otherwise valid claim from participating in the Net Settlement

Fund solely because it was submitted shortly after the deadline, but while all claims were still being processed. No delay has resulted from the provisional acceptance of these untimely claims, and accepting these claims will not have a material impact on the distributions that claimants with timely and valid claims will receive. Ex. 1 (Miller Decl.) ¶28. Accordingly, Lead Counsel respectfully requests that the Court approve the administrative determination to accept the otherwise-eligible claims submitted after the June 25, 2021 deadline.

However, there must be a final cut-off date after which no more claims may be accepted so that there may be a proportional distribution of the Net Settlement Fund. As other federal courts have observed, "there is no question that in the distribution of a large class action settlement fund, a cutoff date is essential and at some point the matter must be terminated." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001) (citing *In re Gypsum Antitrust Cases*, 565 F.2d at 1127); *see In re Taser Int'l, Inc., Sec. Litig.*, No. CV-05-115-PHX-SRB, 2009 U.S. Dist. LEXIS 148972, at *15 (D. Ariz. July 14, 2009) (barring late claims filed after the final cutoff date decided in the Court's order "because of the practical need for a final cutoff date for the efficient distribution of settlement funds."). Acceptance of any claim received after preparation of this application would necessarily require a delay in the distribution. Ex. 1 (Miller Decl.) ¶29. Accordingly, it is respectfully requested that the Court enter an order directing that no Claim Forms or responses received after May 31, 2022 would be accepted for payment in the initial distribution. If six months after the initial distribution, monies remain

9

in the fund and it is economically feasible to make an additional distribution, Class

Counsel, in consultation with A.B. Data, will consider whether it is equitable that

claims received after May 31, 2022, and are otherwise eligible in whole or in part,

should be eligible for payment in such a re-distribution.

## III.   CLAIMS ADMINISTRATOR'S FEES AND EXPENSES

Pursuant to the terms of A.B. Data's agreement with Lead Counsel to act as

the Claims Administrator for the Settlement, A.B. Data was responsible for several

actions, including: dissemination of the Postcard Notice to potential Settlement

Class Members and their nominees by first-class mail, publishing the Summary

Notice on a national wire service, establishing the Settlement Website and

publishing the Full Notice and Proof of Claim and Release Form in a form available

for download on the Settlement Website, processing submitted Claim Forms, and

the allocation and distribution of the Net Settlement Fund. *See generally*, ECF No.

64-1 (Stipulation) ¶¶D.1-2, K.1. Additionally, in the Final Judgment, the Court

retained continuing and exclusive jurisdiction over the Action and the Parties,

including the administration and distribution of the Net Settlement Fund. ECF No.

80 (Final Judgment) ¶14.

As set forth in the Miller Declaration, A.B. Data's total outstanding fees and

expenses for its work performed and to be performed on behalf of the Class in

connection with the distribution of the Net Settlement Fund total $84,069.15. Ex.

1 (Miller Decl.) ¶38 and Ex. D. The Stipulation allows for $50,000 to be paid to

A.B. Data without further order of the Court, and that any additional amounts may

be approved by the Court. ECF No. 64-1 (Stipulation) ¶A.22. Lead Plaintiff requests that the Court authorize the payment of an additional $34,069.15 to A.B. Data from the Net Settlement Fund, representing the balance of its fees and expenses for its work performed on behalf of the Class. Ex. 1 (Miller Decl.) ¶38.

## IV.    DISTRIBUTION OF NET SETTLEMENT FUND

Lead Plaintiff now respectfully moves the Court for an order approving A.B. Data's determinations concerning the acceptance and rejection of the Claim Forms and approving the proposed plan for distribution of the Net Settlement Fund, as set forth in the Miller Declaration (the "Distribution Plan"). Lead Plaintiff also requests that the Court authorize the distribution of the balance of the Net Settlement Amount — after deduction of the fees and expenses previously awarded and requested herein, as well as payment or withholding of current and estimated future Notice and Administration Expenses (such as Taxes and Tax Expenses) — to the Settlement Class Members whose claims have been accepted. *Id.* ¶39; *see also* ECF No. 64-1 (Stipulation) ¶¶D.3, D.14.

Pursuant to the proposed Distribution Plan, A.B. Data will conduct an initial distribution (the "Initial Distribution") of the available balance of the Net Settlement Fund. Ex. 1 (Miller Decl.) ¶39(a). In the Initial Distribution, A.B. Data will calculate award amounts to all Authorized Claimants as if the entire Net Settlement Fund, after deducting the payments previously allowed and requested herein, and after the payment of (or withholding for the payment of) any estimated Notice and Administration Expenses, were to be distributed now by calculating

11

their *pro rata* share of the fund in accordance with the Plan of Allocation. *Id.* ¶¶37, 39(a). Pursuant to the terms of the Plan of Allocation, A.B. Data will eliminate any Authorized Claimant whose award amount calculates to less than $10.00. ECF No. 64-1 (Stipulation) Ex. A-2 (Full Notice) pp. 7-10; Ex. 1 (Miller Decl.) ¶39(a). Such Claimants will not receive any distribution from the Net Settlement Fund.

A.B. Data will then prepare checks for the distribution. Ex. 1 (Miller Decl.) ¶39(b). Lead Plaintiff proposes that the Initial Distribution checks bear the notation, "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF DISTRIBUTION," so as to encourage Authorized Claimants to promptly cash their payments. *Id.* A.B. Data will make reasonable efforts to locate new addresses for Authorized Claimants whose checks are returned as undeliverable. *Id.* footnote 3. A.B. Data will issue replacements to an Authorized Claimant who damages, loses, or requires a new check. *Id.* Authorized Claimants who do not cash their distribution checks within the time allotted or on the conditions set forth in footnote 3 of the Miller Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to all such stale-dated checks will be subject to re-distribution if Lead Counsel, in consultation with A.B. Data, determines that it is economically feasible to conduct a re-distribution. *Id.* ¶39(c).

Pursuant to the Distribution Plan, if any balance is remaining in the Net Settlement Fund after six (6) months from the Initial Distribution, the remaining funds will be re-distributed on a *pro rata* basis to all Authorized Claimants who

cashed their distribution payment and whose additional distribution payment calculates to more than $10.00, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such redistribution (the "Second Distribution"). *Id.* ¶39(d). If cost effective, re-distributions shall be repeated until the balance in the Net Settlement Fund is no longer economically feasible to distribute. *Id.*; *see also* ECF No. 64-1 (Stipulation) ¶D.15.

Finally, if any balance remains in the Net Settlement Fund that is no longer economically feasible to re-allocate, the remaining funds shall be contributed to a non-sectarian, non-profit organization(s), to be recommended by Lead Counsel and approved by the Court. Ex. 1 (Miller Decl.) ¶39(f); *see also* ECF No. 64-1 (Stipulation) ¶D.15.

## V.    RELEASE OF CLAIMS

Additionally, in order to allow for the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the claims' processing, or involved in the administration or taxation of the Settlement Fund, be released and discharged from any and all claims arising from such involvement beyond the amount paid or allocated to them. Accordingly, Lead Plaintiff respectfully requests that the Court bar any such claims, other than claims for willful misconduct or fraud, against all such persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted in

connection with the Settlement, or otherwise involved in the administration or taxation of the Settlement Fund, or the Net Settlement Fund, and that all such persons be released and discharged from any and all claims arising out of such involvement. Such a release is authorized by the Stipulation. *See* ECF No. 64-1 (Stipulation) ¶F.4 ("No Settlement Class Member shall have any claim against Plaintiff, Class Counsel, or the Claims Administrator based on, or in any way relating to, the distributions from the Net Settlement Fund that have been made substantially in accordance with this Stipulation and any applicable orders of the Court.").

Lead Plaintiff also respectfully requests that Court bar all Settlement Class Members, whether or not they are to receive payment from the Net Settlement Fund, from making any further claim against the Net Settlement Fund beyond the amount allocated to them as provided in any distribution orders entered by the Court. *See, e.g.,* ECF No. 64-1 (Stipulation) ¶D.12 ("Payment pursuant to this Stipulation shall be deemed final and conclusive against all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but are otherwise bound by all of the terms of the Order and Final Judgment entered in the Action and the releases provided for herein, and will be barred from bringing any action against the Released Parties concerning the Settled Claims.").

Courts have repeatedly approved similar releases in connection with the distribution of settlement proceeds. *See, e.g.*, *In re Miva, Inc.,* No. 2:05-cv-00201-

JES-DNF, 2015 U.S. Dist. LEXIS 187447, at *8-9 (M.D. Fla. Sep. 23, 2015) ("[A]ll persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Class Members, whether or not they have claimed against, they received, or they are to receive payment from the Net Settlement Fund, are barred from making any further claims against the Net Settlement Fund or Plaintiffs."); *Pritchard v. Apyx Med. Corp.*, No. 8:19-cv-00919-SCB-AEP, 2021 U.S. Dist. LEXIS 114196, at *5 (M.D. Fla. June 15, 2021 (approving substantially similar language in order authorizing distribution of settlement proceeds).

## VI.    RETENTION OF CLAIM FORMS AND OTHER DOCUMENTS

Lead Plaintiff also requests that the Court permit A.B. Data to destroy any paper copies of the Claim Forms, and all supporting paper documents, one year after the final distribution, and any electronic copies of the same three years after all funds have been distributed. Ex. 1 (Miller Decl.) ¶39(g).

## VII.   CONCLUSION

For all the foregoing reasons, it is respectfully submitted that Lead Plaintiff's Motion for Approval of Distribution of Net Settlement Fund should be granted, and the Court should issue an order:

1.    Approving A.B. Data's administrative determinations, as set forth in the Miller Declaration, regarding the acceptance and rejection of

15

claims submitted in connection with the Settlement, including the acceptance of 3 late filed but otherwise eligible claims;

2. Directing distribution of the Net Settlement Fund, after deduction of payments requested herein, and withholding of current and future estimated Notice and Administration Expenses, as set forth in the Miller Declaration;

3. Approving the plan for re-distribution and/or donation of any funds remaining in the Net Settlement Fund following the distribution to Settlement Class Members, as set forth in the Miller Declaration;

4. Directing payment from the Net Settlement Fund to A.B. Data of $34,069.15, in addition to the previously authorized $50,000, for A.B. Data's costs and expense of administration of the Settlement;

5. Authorizing the destruction of paper copies of Claim Forms and related paper documents one year after distribution of the Net Settlement Fund, and destruction of electronic files containing claim records three years after distribution;

6. Barring claims, other than claims for willful misconduct or fraud, against all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted in connection with the Settlement, or otherwise involved in the administration or taxation of the Settlement Fund, or the Net Settlement Fund arising out of such involvement, and releasing and

discharging all such persons from any and all claims arising out of such involvement,

7. Barring all Settlement Class Members, whether or not they are to receive payment from the Net Settlement Fund, from making any further claim against the Net Settlement Fund beyond the amount allocated to them as provided in any distribution orders entered by the Court; and

8. Such other and further relief the Court deems appropriate.

Pursuant to Local Rule 3.01(g) and the Court's individual preferences, no proposed order is submitted herewith. Lead Counsel will submit a proposed order to the Court should it request one.

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)**

Pursuant to Local Rule 3.01(g), counsel for Lead Plaintiff respectfully submits that no conference with Defendants concerning this motion was necessary. Pursuant to the Stipulation, which was approved by the Court, "[n]either the Defendants nor Defendants' Counsel shall have any rights with regard to, or liability, obligation or responsibility for, the administration of the Gross Settlement Fund or Net Settlement Fund or the distribution of the Net Settlement Fund, and shall not comment thereon or on the Claims Administrator's determinations relating to submitted Claims or who is an Authorized Claimant." ECF No. 64-1 (Stipulation) ¶D.2.

Dated: June 14, 2022

Respectfully submitted,

By**:** */s/ Joshua W. Ruthizer*
Joshua W. Ruthizer
Fla. Bar No. 92528
Ronald J. Cohen                 Chet B. Waldman
Fla. Bar No. 235504             Granted Special Admission to Practice
LORIUM PLLC                     WOLF POPPER LLP
101 NE 3rd Ave., Suite 1800     845 Third Avenue
Fort Lauderdale, Florida 33301  New York, NY 10022
Tel: 954-462-8000               Tel: 212-759-4600
Fax: 954-462-4300               Fax: 212-486-2093
rcohen@loriumlaw.com            jruthizer@wolfpopper.com
                                cwaldman@wolfpopper.com

*Local Counsel for MAZ Partners LP*
*and the Settlement Class*        *Attorneys for Lead Plaintiff MAZ*
                                  *Partners LP and Lead Counsel for the*
                                  *Settlement Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 14, 2022, I filed the foregoing with the Court via CM/ECF, which will serve a true and correct copy of the foregoing via email service on counsel of record in this matter.


*/s/ Joshua W. Ruthizer*
Joshua W. Ruthizer